UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- X

ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE NEW
JERSEY INSURANCE COMPANY, ALLSTATE NEW JERSEY PROPERTY AND
CASUALTY INSURANCE COMPANY, ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY AND NORTHBROOK INDEMNITY COMPANY,

**Plaintiffs,**

-against-

FOTIMA ABUTOVA, IVAN BATIASHVILI, SAM (SEMYON) BLINDER, MICHAEL
BORUKHOV, YURIY DENISOV, KONSTANTIN DZHAGINOV, ALEKSANDR
FIRAYNER, VLADIMIR GEYKHMAN, MOYSEY IFRAIMOV, VLADIMIR
KAMINSKY, ARIEL KANDHOZOV A/K/A ARIEL KANDHOROV AND ARIEL
KAND, RUSLAN KAPUSTA, GABRIEL KOHEN, ALEXANDER KONVISER,
SERGEY LAZAREV, DANIEL LYANDRES, OLGA MULLAKANDOVA, VLADIMIR
NAZAROV, YEVGENY (EUGENE) NEMETS, SERGE OGAN, SEMYON
POGREBIZHSKY, YEVGENY SPEKTOR, INNA TKACHENKO, MAKSYM
TKACHENKO, RENATA TKACHENKO, IOSIF VALDMAN, DAVID ZILBER, NISA
ZULUNOV, ADVANCED MEDICAL SUPPLY INC., B & Y SURGICAL SUPPLIES
INC., BIG APPLE ORTHO PRODUCTS, INC., EXCEL MEDICAL SUPPLIES, INC.,
FIVE BORO MEDICAL EQUIPMENT, INC., G & A MEDICAL SUPPLY LLC,
GOLDSTAR EQUIPMENT INC., HEALTH AID MEDICAL SUPPLY INC., IG
MEDICAL SUPPLY, LLC, INFINITY MEDICAL SUPPLY INC. D/B/A KUN
MEDICAL SUPPLY, LENDER MEDICAL SUPPLY INC., LONGEVITY MEDICAL
SUPPLY, INC., MULTI SERVICE OF NY INC., NEW WAY MEDICAL SUPPLY,
CORP., NEXT CENTURY ENTERPRISES, INC., ORTHOPLUS PRODUCTS, INC.,
OS ORTHO SERVICES INC., PREMIER DME CORP., PRODME, INC.,
QUALITY SERVICE SUPPLIES INC., SIX STAR SUPPLY, INC., SOHO MEDICAL
SUPPLIES INC., SVP MEDSUPPLY INC., TAM MEDICAL SUPPLY CORP., TSM
MEDICAL SUPPLY & ORTHOCARE INC., ULTIMATE HEALTH PRODUCTS INC.,
ULTRA ORTHO PRODUCTS INC., UNLIMITED MEDICAL SUPPLY SERVICES
INC., V+B MAGIC RECOVERY SUPPLY INC., VIP MEDICAL SUPPLIES, INC.,
VLADENN MEDICAL SUPPLY CORP., MARGARITA AKMALOVA, SHIMON
INDICTOR, OLEG SIMAKOV, VADIM ZALOGIN, MICHAEL ZAVRAZHIN, A TO
Z WHOLESALE INC., AMERICAN MOBILITY MEDICAL, INC., ANY CHOICE
SUPPLY, INC., DEVONIAN INC., EASY HILL WHOLESALE MEDICAL SUPPLY
INC., IDEL INTERNATIONAL TRADING INC., IG&NAT SERVICES, INC.,
IMPREZZA NYC INC., MAJOR MARKET MERCHANDISE INC., MEM
WHOLESALE INC., MIKOS TRADING, INC., MIKS TRADING, INC., NEW STEP
SERVICES INC., ONE STOP WHOLESALE, INC., ROPA INC., VZ GROUP INC.,
JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20,

**Defendants.**

--------------------------------------------------------------------- X

CIVIL ACTION

NO:_____

COMPLAINT

(TRIAL BY
JURY
DEMANDED)

Plaintiffs Allstate Insurance Company,  Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company (collectively "Plaintiffs"), by their attorneys, Stern & Montana, LLP, for their Complaint against Defendants Fotima Abutova ("Abutova"), Ivan Batiashvili ("Batiashvili"), Sam (Semyon) Blinder ("Blinder"), Michael Borukhov ("Borukhov"), Yuriy Denisov ("Denisov"), Konstantin Dzhaginov ("Dzhaginov"), Aleksandr Firayner ("Firayner"), Vladimir Geykhman ("Geykhman"), Moysey Ifraimov ("Ifraimov"), Vladimir Kaminsky ("Kaminsky"), Ariel Kandhozov a/k/a Ariel Kandhorov and Ariel Kand ("Kandhozov"), Ruslan Kapusta ("Kapusta"), Gabriel Kohen ("Kohen"), Alexander Konviser ("Konviser"), Sergey Lazarev ("Lazarev"), Daniel Lyandres ("Lyandres"), Olga Mullakandova ("Mullakandova"), Vladimir Nazarov ("Nazarov"), Yevgeny (Eugene) Nemets ("Nemets"), Serge Ogan ("Ogan"), Semyon Pogrebizhsky ("Pogrebizhsky"), Yevgeny Spektor ("Spektor"), Inna Tkachenko ("I. Tkachenko"), Maksym Tkachenko ("M. Tkachenko"), Renata Tkachenko ("R. Tkachenko"), Iosif Valdman ("Valdman"), David Zilber ("Zilber"), Nisa Zulunov ("Zulunov")  (collectively "**Retail Owners**"), Advanced Medical Supply Inc. ("Advanced Medical Supply"), B & Y Surgical Supplies Inc. ("B & Y Surgical Supplies"), Big Apple Ortho Products, Inc. ("Big Apple Ortho Products"), Excel Medical Supplies, Inc. ("Excel Medical Supplies"), Five Boro Medical Equipment, Inc. ("Five Boro Medical Equipment"), G & A Medical Supply LLC ("G & A Medical Supply"), Goldstar Equipment Inc. ("Goldstar Equipment"), Health Aid Medical Supply Inc. ("Health Aid Medical Supply"), IG Medical Supply, LLC. ("IG Medical Supply"), Infinity Medical Supply Inc. d/b/a Kun Medical Supply ("Kun Medical Supply"), Lender Medical Supply Inc. ("Lender Medical Supply"), Longevity Medical Supply, Inc. ("Longevity Medical Supply"), Multi Service of NY Inc. ("Multi Service of

2

NY"), New Way Medical Supply, Corp. ("New Way Medical Supply"), Next Century Enterprises, Inc. ("Next Century Enterprises"), OrthoPlus Products, Inc. ("OrthoPlus Products"), OS Ortho Services Inc. ("OS Ortho Services"), Premier DME Corp. ("Premier DME"), ProDME, Inc. ("ProDME"), Quality Service Supplies Inc. ("Quality Service Supplies"), Six Star Supply, Inc. ("Six Star Supply"), Soho Medical Supplies Inc. ("Soho Medical Supplies"), SVP Medsupply Inc. ("SVP Medsupply"), TAM Medical Supply Corp. ("TAM Medical Supply"), TSM Medical Supply & Orthocare Inc. ("TSM Medical Supply & Orthocare"), Ultimate Health Products Inc. ("Ultimate Health Products"), Ultra Ortho Products Inc. ("Ultra Ortho Products"), Unlimited Medical Supply Services Inc. ("Unlimited Medical Supply Services"), V+B Magic Recovery Supply Inc. ("V+B Magic Recovery Supply"), VIP Medical Supplies, Inc. ("VIP Medical Supplies"), Vladenn Medical Supply Corp. ("Vladenn Medical Supply") (collectively **"Retailers**;" Retail Owners and Retailers are collectively referred to as **"Retail Defendants"**), Margarita Akmalova ("Akmalova"), Shimon Indictor ("Indictor"), Oleg Simakov ("Simakov"), Vadim Zalogin ("Zalogin"), Michael Zavrazhin ("Zavrazhin") (collectively **"Wholesale Owners"**), A to Z Wholesale Inc. ("A to Z Wholesale"), American Mobility Medical, Inc. ("American Mobility Medical"), Any Choice Supply, Inc. ("Any Choice Supply"), Devonian Inc. ("Devonian"), Easy Hill Wholesale Medical Supply Inc. ("Easy Hill Wholesale Medical Supply"), IDEL International Trading Inc. ("IDEL International Trading"), IG&NAT Services, Inc. ("IG&NAT Services"), Imprezza NYC Inc. ("Imprezza NYC"), Major Market Merchandise Inc. ("Major Market Merchandise"), MEM Wholesale Inc. ("MEM Wholesale"), Mikos Trading, Inc. ("Mikos Trading"), MIKS Trading, Inc. ("MIKS Trading"), New Step Services Inc. ("New Step Services"), One Stop Wholesale, Inc. ("One Stop Wholesale"), ROPA Inc. ("ROPA"), VZ Group Inc. ("VZ Group") (collectively **"Wholesalers**;" Wholesalers and Wholesale Owners are collectively referred to as **"Wholesale Defendants"**), John Does 1 through 20 and ABC

Corporations 1 through 20 (collectively the Retail Defendants and Wholesale Defendants are referred to herein as "Defendants") allege as follows:

## PRELIMINARY STATEMENT

1.     On information and belief, from at least 2000 and continuing through the date of the filing of this Complaint, Defendants engaged in separate, but fundamentally similar massive schemes to defraud automobile insurance companies, including Plaintiffs, through New York State's No-fault system.

2.     This action seeks to recover more than $2.2 million that Defendants stole from Plaintiffs through the submission of thousands of false and/or fraudulent insurance claims for durable medical equipment ("DME") and/or orthotic devices.  As used herein, (i) "DME" generally refers to equipment and/or supplies used for medical purposes by individuals in their homes, including, among other things, cervical pillows, cervical traction units, cold/hot water circulating pumps, EMS units, hot/cold packs, infrared heat lamps, lumbar cushions, massagers, mattresses and whirlpools; and (ii) "orthotic devices" generally refers to items that are used to support a weak or deformed body member or to restrict or eliminate movement for medical purposes.  Such items include, but are not limited to, ankle braces, back braces, cervical collars, knee braces, shoulder braces and wrist braces.

3.     At all relevant times mentioned herein, each and every DME and/or orthotic device supplied by the Retailers was provided pursuant to a predetermined course of treatment, irrespective of medical necessity, based on illicit kickback and/or other financial compensation agreements between and among one or more of the Defendants and the No-fault Clinics, as defined below.

4.     To execute the scheme to defraud alleged herein, the Retail Owners, through one or more of the Retailers, entered into separate arrangements with one or more of the Wholesale

Defendants and one or more medical clinics operating in the New York metropolitan area that bill No-fault insurers for medical services (hereinafter "No-fault Clinics") and one or more of the Wholesale Defendants.

5. On information and belief, pursuant to these agreements and in exchange for kickbacks and/or other financial compensation, the No-fault Clinics, which are not named as defendants in this action, ensured that (i) their associated doctors and/or chiropractors prescribed large amounts of virtually identical DME and/or orthotic devices to their patient population pursuant to a predetermined course of treatment irrespective of medical necessity, with the prescribed items being dictated by the Retailers; and (ii) the prescriptions were sufficiently generic so that the nature, quality and cost of any DME and/or orthotic device could not be verified based on the description of the prescribed item alone. By way of example and not limitation that DME and/or orthotic devices were prescribed pursuant to a predetermined course of treatment irrespective of medical necessity, in connection with claims 0185046554 and 0180159139, one or more of the No-fault Clinics prescribed car seats to claimants who admittedly did not have cars and thus could not use the prescribed car seats.

6. On information and belief, pursuant to similar agreements, and in exchange for kickbacks and/or other financial compensation, including, but not limited to, a share in the profits of the scheme to defraud, the Wholesale Defendants provided the Retailers with inexpensive DME and/or orthotic devices, along with fraudulent wholesale invoices that grossly inflated the amounts the Retailers paid for the DME and/or orthotic devices. Other times, the Wholesale Defendants provided the Retailers with fraudulent wholesale invoices that reflected DME and/or orthotic devices that were never actually provided to Retailers. In fact, irrespective of whether any DME and/or orthotic devices were actually provided to Retailers, the wholesale invoices typically reflected prices that were up to 20 times the actual prices that the Retailers

paid to the Wholesale Defendants.

7. On information and belief, to create the illusion that the Retailers paid the grossly inflated prices on the wholesale invoices, as more fully alleged in the "Money Laundering Scheme" section below, the Retailers issued checks to the Wholesale Defendants and other purported wholesalers for the full amounts reflected on the wholesale invoices. The Retailers then used those checks to demonstrate to Plaintiffs, and others, that they had paid the false wholesale invoice amounts. In reality, on information and belief, the Wholesale Defendants converted the checks they received from the Retailers to cash and secretly returned to the Retailers up to approximately 98% of the wholesale invoice amounts. These covert cash transactions were facilitated through various clandestine arrangements among the Retailers, the Wholesale Defendants, check brokers, check cashers and/or others unknown to Plaintiffs.

8. On information and belief, through these transactions, the Retailers were able to surreptitiously obtain cash, which then was used for, among other things, kickbacks to the No-fault Clinics from which the Retailers purchased prescriptions for DME and/or orthotic devices.

9. On information and belief, after obtaining the prescriptions from the No-fault Clinics and the inflated invoices from the Wholesale Defendants, the Retail Owners, through their respective Retailers, generated and submitted bills to Plaintiffs, among others, knowingly misrepresenting the actual amounts they paid for the DME and/or orthotic devices as well as the quality of the items purportedly provided.

10. On information and belief, in order to prevent Plaintiffs from determining the appropriate charges associated with any such DME and/or orthotic device or whether the specific DME and/or orthotic device billed was medically necessary, the documents submitted to Plaintiffs by the Retail Owners through their respective Retailers in support of their fraudulent claims, including the wholesale invoices, deliberately omitted and/or misrepresented basic

6

information about the DME and/or orthotic devices, including, but not limited to, the manufacturer, make, model, size, features and/or functions of the item and/or included information that was meaningless in determining the kind and quality of any specific DME and/or orthotic device.

11. On information and belief, the Retail Owners, through their respective Retailers, routinely purchased basic, low-quality and inexpensive items from the Wholesale Defendants, but submitted documents, including, but not limited to, inflated wholesale invoices, to insurers, including Plaintiffs, that failed to accurately reflect the actual purchase price of each item.

12. On information and belief, in support of their claims for reimbursement, and to facilitate the fraud described herein, the Retailer Owners, through their respective Retailers, generated delivery receipts that included a space for the patient's signature to document receipt of each item for which the Retail Owners, through their respective Retailers, billed Plaintiffs.

13. On information and belief, the Retailers, working with the No-fault Clinics that prescribed the DME and/or orthotic devices, in some instances, arranged for the patients to sign the delivery receipts in blank, thereby allowing the Retail Owners, through their respective Retailers, to fill in the delivery receipt with whatever DME and/or orthotic devices the Retailers wanted to bill to insurers without the patient's actual confirmation that they received the items identified therein. By way of example and not limitation, in connection with claims 0217895282 and 0198991192, one or more No-fault Claimants confirmed that they signed blank forms.

14. On information and belief, in other instances, where the patient did not sign the delivery receipt, the Retailers, working with the No-fault Clinics, arranged for the No-fault patient's signature to be forged on the delivery receipt, thereby falsely representing that the patient acknowledged receipt of the billed for DME and/or orthotic devices. By way of example and not limitation, in connection with claims 0182352187, 0206599556, 0216260497

7

0235992799 0183683747, 0248883811 and 0205266505, one or more No-fault Claimants confirmed that the signatures on the delivery receipts submitted to Plaintiffs were forged.

15.    On information and belief, in these and other ways, Defendants' schemes to defraud operated in a fundamentally similar manner.  By way of further example and not limitation, of Defendants' nearly identical parallel schemes to defraud, every Retailer submitted the same type of documentation in support of their claims for reimbursement, including, but not limited to, substantially similar delivery receipts and assignment of benefits forms, containing the same typos, misspellings and stray marks.  By way of example and not limitation, Exhibit "1" in the accompanying Compendium of Exhibits is a spreadsheet containing a representative sample of claims submitted by one or more of the Retailers containing substantially similar delivery receipts and/or assignment of benefits forms that were obviously based on a shared template.

16.    On information and belief, in carrying out the scheme to defraud, Defendants stole in excess of $2,200,000.00 from Plaintiffs by submitting, causing to be submitted or facilitating the submission of fraudulent claims for persons who allegedly sustained injuries covered by the New York State Comprehensive Motor Vehicle Insurance Reparations Act, Ins. Law §§ 5101, et seq. (popularly known as the "No-fault Law").

## STATUTORY/REGULATORY SCHEME

17.    Pursuant to the No-fault Law, Plaintiffs are required to pay, *inter alia*, for health service expenses that are reasonably incurred as a result of injuries suffered by occupants of their insured motor vehicles or pedestrians (hereinafter "Claimants" or "No-fault Claimants"), injuries which arise from the use or operation of such motor vehicles in the State of New York. Claimants can also assign these benefits to doctors and other properly licensed healthcare providers, including DME retailers, enabling them to bill insurance companies directly for their

services. As described herein, Defendants exploited this system by obtaining such assignments and billing Plaintiffs for DME and/or orthotic devices that were never provided, not provided as billed or, if provided, were of inferior quality relative to what was represented in the bills submitted to Plaintiffs to have been provided and/or were otherwise medically unnecessary and provided pursuant to a predetermined course of treatment in which virtually all Claimants received substantially similar DME and/or orthotic devices. Exhibit "2" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to the Retailers notwithstanding that the DME and/or orthotic devices purportedly provided to Claimants were provided based upon a predetermined course of treatment irrespective of medical necessity.

18.     On information and belief, the Retailers are ostensibly DME supply companies that bill for medical supplies provided to, among others, individuals covered under the No-fault Law.  In exchange for their services, the Retailers accepted assignments of benefits from Claimants and submitted claims for payment to No-fault insurance carriers, in general, and to Plaintiffs, in particular.

19.     In purported compliance with the No-fault Law and 11 N.Y.C.R.R. 65 *et seq*., the Retailers submitted proof of their claims to Plaintiffs using the claim form prescribed by the New York State Department of Financial Services (f/k/a the Department of Insurance) (known as a "Verification of Treatment by Attending Physician or Other Provider of Health Service" or "NYS form NF-3") or a substantially similar form.

20.     Pursuant to Section 403 of the New York State Insurance Law, the claim forms submitted to Plaintiffs by the Retailers contained the following warning at the foot of the page:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any

fact material thereto, commits a fraudulent insurance act, which is a
crime…

21.     Pursuant to the No-fault Law and implementing regulations, as well as the

applicable policies of insurance, Plaintiffs were required to promptly process claims within 30

days of receipt of proof of claim.

22.     Section 5108 of the No-fault Law circumscribes the amount that a licensed

healthcare provider or other authorized person, such as a DME provider, may recover for health

service related expenses. In particular, under this section, such persons are only entitled to

reimbursement of necessary medically related expenses in accordance with the applicable fee

schedules adopted by the Superintendent of Financial Services (f/k/a the Superintendent of

Insurance).

23.     Pursuant to the New York Department of Financial Services' Regulation 68,

which implemented the No-fault Law, payment for medical expenses must be in accordance with

fee schedules promulgated under Section 5108 of the Insurance Law.  11 N.Y.C.R.R. § 65-3.

24.     Effective October 6, 2004, the Department of Financial Services, through the

Superintendent's promulgation and amendment to Regulation 83 (11 N.Y.C.R.R. § 68 *et. seq.*),

established a fee schedule for the reimbursement of durable medical equipment and medical

supplies by adopting the New York State Medicaid fee schedules for durable medical equipment,

medical/surgical supplies, orthopedic footwear and orthotic and prosthetic appliances.

25.     The Amendment to Regulation 83, which has been in effect at all relevant times

mentioned herein, provides:

> [The] maximum permissible charge for the purchase of durable
> medical equipment, medical/surgical supplies, orthopedic footwear
> and orthotic and prosthetic appliances is the fee payable for such
> equipment and supplies under the New York State Medicaid
> program at the time such equipment and supplies are provided. If
> the New York State Medicaid program has not established a fee
> payable for the specific item, then the fee payable, in accordance

> with Medicaid rules, shall be the lesser of: (1) the acquisition cost
> (i.e. the line item cost from a manufacturer or wholesaler net of
> any rebates, discounts or other valuable considerations, mailing,
> shipping, handling, insurance costs or any sales tax) to the provider
> plus 50%; or (2) the usual and customary price charged to the
> general public.

11 N.Y.C.R.R. § 68 (Appendix 17-C, Part F).

26.     On or about April 16, 2008, the Department of Financial Services adopted the 30th

Amendment to Regulation 83, which repealed Part F of Appendix 17-C.  Notwithstanding the

foregoing, pursuant to N.Y. INS. LAW 5108(a), the charges a provider of health service may

submit to insurers are limited by the fee schedules established by the Workers' Compensation

Board.

27.     Effective July 11, 2007, the Workers' Compensation Board established a fee

schedule by also adopting the New York State Medicaid fee schedules for durable medical

equipment (the "Fee Schedule"), medical/surgical supplies, orthopedic footwear and orthotic and

prosthetic appliances and that Fee Schedule was in effect at all relevant times herein. *See* 12

N.Y.C.R.R. § 442.2 .

28.     At all relevant times mentioned herein, providers of DME are entitled to

reimbursement in amounts set forth in the Fee Schedule.  In instances where an item of DME is

not set forth in the Fee Schedule, the provider is entitled to reimbursement in an amount equal to

the *lesser* of either the acquisition cost of the medical equipment to the provider, plus 50% or the

usual and customary price charged to the public. *See* 11 N.Y.C.R.R. § 68 (Appendix 17-C, Part

F) and 12 N.Y.C.R.R. § 442.2.

29.     Pursuant to Section 5108(c) of the No-fault Law, "no provider of

health . . . services may demand or request any payment in addition to the charges authorized

pursuant to this section."

30.     At all relevant times mentioned herein, nearly each and every bill mailed by the

11

Retail Owners, through their respective Retailers, to Plaintiffs sought reimbursement in excess of the amounts authorized by the No-fault Law by materially misrepresenting the DME and/or orthotic devices provided, if provided at all, as well as the cost and quality of the billed for DME and/or orthotic devices. To the extent the DME and/or orthotic devices were provided at all, each item was a basic, low-quality piece of medical equipment for which the Retailers' wholesale cost was a mere fraction of the amount they charged Plaintiffs and/or was medically unnecessary because it was provided pursuant to a predetermined course of treatment, irrespective of medical need.

31.    At all times relevant herein, the Defendants exploited the No-fault Law through the utilization of various deceptive billing tactics engineered to maximize the amount of reimbursement from insurers, in general, and Plaintiffs, in particular, through the submission of fraudulent billing documents that misrepresented the nature, quality and cost of items that both are and are not listed on the relevant fee schedule ("Fee Schedule items" and "Non-Fee Schedule items," respectively) purportedly provided to Claimants.

32.    On information and belief, in numerous instances, the Retail Owners, through their respective Retailers, intentionally submitted documents containing measurements that they falsely represented pertained to the No-fault Claimant under whose policy they were seeking reimbursement. In reality, the measurements reflected in the documents submitted to Plaintiffs were entirely artificial and contrived, a fact confirmed through the No-fault Claimants' examinations under oath ("EUO"). By way of example and not limitation, in connection with claim 0188318919, Defendant Nemets, through Longevity Medical Supply, submitted a measurement form representing that the waist size for a certain No-fault Claimant was thirty-three (33) inches, when in reality, the No-fault Claimant testified during the course of an EUO that no-one had ever taken his measurements prior to giving him any DME and/or orthotic

device and that his waist size was forty (40) inches. By way of further example and not limitation, in connection with claims 0188318919, 0203658851, 0184710663, 4736613896, 0187445655, 0183576354 and 0186527180, one or more No-fault Claimants testified during the course of an EUO that no one had ever taken their measurements prior to giving them any DME and/or orthotic devices, although the delivery receipt submitted by one or more Retailers to Plaintiff in support of their claim for reimbursement lists a "LSO APL Control, Custom Fitted" device among the items purportedly delivered to the No-fault Claimant(s).

33.     As set forth in the "Non-Fee Schedule Scheme to Defraud" below, the Retail Owners, through their respective Retailers, routinely submitted bills to Plaintiffs for Non-Fee Schedule items wherein the Retailers misrepresented that (i) the DME and/or orthotic devices purportedly provided were reimbursable under the relevant Fee Schedule in existence at the time, when, in fact, the Retailers were utilizing codes that were not recognized by, or otherwise listed in, the relevant Fee Schedule ("phantom codes"); (ii) the charges reflected on the Retailers' bills were in accordance with 12 N.Y.C.R.R. § 442.2, when, in fact, the charges were grossly inflated; and/or (iii) the DME and/or orthotic devices purportedly provided were reimbursable pursuant to the Fee Schedule, when they were not. In doing so, the Retail Owners, through their respective Retailers, deliberately misrepresented the amounts that they were entitled to receive under the No-fault Law.

34.     In addition, as set forth in the "Fee Schedule Scheme to Defraud" below, the Retail Owners, through their respective Retailers, also routinely submitted fraudulent bills to Plaintiffs for (i) DME and/or orthotic devices that were never provided, including, but not limited to, expensive custom-fabricated or custom-fit DME and/or orthotic devices; and/or (ii) DME and/or orthotic devices for which the Retailers billed Plaintiffs in excess of the relevant fee schedule in existence at the time.

35. On information and belief, the Retailers and Wholesalers alike were created for the purpose of participating in the fraudulent billing of insurance companies under the No-fault Law.

36. Every aspect of Defendants' fraudulent scheme was motivated by money, without regard to the grave harm inflicted on the public at large by the Defendants, who, to the extent that they provided any DME and/or orthotic devices at all, provided No-fault Claimants with inferior, low-quality items, potentially compromising their health.

37. The duration, scope and nature of the Defendants' illegal conduct bring this case well within the realm of criminal conduct to which the Racketeer Influenced and Corrupt Organizations Act ("RICO") applies. Defendants did not engage in sporadic acts of fraud – although that would be troubling enough – rather, they adopted fraudulent blueprints as their business plans and used them to participate in systematic patterns of racketeering activity. Every facet of Defendants' operations, from securing prescriptions for DME and/or orthotic devices pursuant to a predetermined course of treatment, to obtaining inflated wholesale invoices for inexpensive, low quality items, to generating bills that contained codes not recognized under the relevant fee schedule in existence at the time or that misrepresented the nature, quality and cost of DME and/or orthotic devices purportedly provided, was carried out for the purpose of committing fraud.

## NATURE OF THE ACTION

38. This action is brought pursuant to:

    i)    The United States Racketeer Influenced and Corrupt Organizations Act ("RICO"); 18 U.S.C. §§ 1961, 1962(c) and 1964(c); and

    ii)   New York State common law.

## NATURE OF RELIEF SOUGHT

39.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs seek treble damages, which they sustained as a result of the Defendants' schemes to defraud and acts of mail fraud in connection with their use of the facilities of the No-fault system to fraudulently obtain payments from Plaintiffs for DME and/or orthotic devices they allegedly provided to individuals covered by Plaintiffs under New York State's No-fault Law.

40.     As a result of Defendants' actions alleged herein, Plaintiffs were defrauded of an amount in excess of $2,200,000.00, the exact amount to be determined at trial, in payments which Defendants received for fraudulently billing Plaintiffs for DME and/or orthotic devices that were never provided or, if provided, not provided as billed and/or provided pursuant to a predetermined course of treatment, irrespective of medical need.

## THE PARTIES

A.     **Plaintiffs**

41.     Plaintiff Allstate Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

42.     Plaintiff Allstate Fire and Casualty Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

43.     Plaintiff Allstate Indemnity Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

44.     Plaintiff Allstate New Jersey Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in

Northbrook, Illinois.

45.     Plaintiff Allstate New Jersey Property and Casualty Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

46.     Plaintiff Allstate Property and Casualty Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

47.     Plaintiff Northbrook Indemnity Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

48.     Plaintiffs are duly organized and licensed to engage in the writing of automobile insurance policies in the State of New York and provide automobile insurance coverage to their policyholders under and in accordance with New York State law.

**B.     The Individual Retail Owner Defendants**

49.     Fotima Abutova ("Abutova") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Lender Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

50.     Ivan Batiashvili ("Batiashvili") is a natural person residing in the State of New York, is a principal, officer and/or director of Retailer IG Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

51.     Semyon Blinder, a/k/a Sam Blinder ("Blinder") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer B & Y Surgical Supplies and, at all times relevant herein, operated, managed and/or controlled its activities.

52.     Michael Borukhov ("Borukhov") is a natural person residing in the State of New

York, is the principal, officer and/or director of Retailer Multi Service of NY and, at all times relevant herein, operated, managed and/or controlled its activities.

53. Yuriy Denisov ("Denisov") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Big Apple Ortho Products and, at all times relevant herein, operated, managed and/or controlled its activities.

54. Konstantin Dzhaginov ("Dzhaginov") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer OrthoPlus Products and, at all times relevant herein, operated, managed and/or controlled its activities.

55. Aleksandr Firayner ("Firayner") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Five Boro Medical Equipment and, at all times relevant herein, operated, managed and/or controlled its activities.

56. Vladimir Geykhman ("Geykhman") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Advanced Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

57. Moysey Ifraimov ("Ifraimov") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Quality Service Supplies and, at all times relevant herein, operated, managed and/or controlled its activities.

58. Vladimir Kaminsky ("Kaminsky") is a natural person residing in the State of New York, is a principal, officer and/or director of Retailer Premier DME and, at all times relevant herein, operated, managed and/or controlled its activities.

59. Ariel Kandhozov a/k/a Ariel Kandhorov and Ariel Kand ("Kandhozov") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Six Star Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

60.     Ruslan Kapusta ("Kapusta") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailers Next Century Enterprises and VIP Medical Supplies and, at all times relevant herein, operated, managed and/or controlled their activities.

61.     Gabriel Kohen ("Kohen") is a natural person residing in the State of New York, is a principal, officer and/or director of Retailers G & A Medical Supply and Goldstar Equipment and, at all times relevant herein, operated, managed and/or controlled their activities.

62.     Alexander Konviser ("Konviser") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer ProDME and, at all times relevant herein, operated, managed and/or controlled its activities.

63.     Sergey Lazarev ("Lazarev") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer SVP Medsupply and, at all times relevant herein, operated, managed and/or controlled its activities

64.     Daniel Lyandres ("Lyandres") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailers Infinity Medical Supply, d/b/a Kun Medical Supply and TSM Medical Supply & Orthocare and, at all times relevant herein, operated, managed and/or controlled their activities.

65.     Olga Mullakandova ("Mullakandova") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Unlimited Medical Supply Services and, at all times relevant herein, operated, managed and/or controlled its activities.

66.     Vladimir Nazarov ("Nazarov") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Vladenn Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

67.     Yevgeny Nemets, a/k/a Eugene Nemets ("Nemets") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Longevity Medical

Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

68.     Serge Ogan ("Ogan") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer OS Ortho Services and, at all times relevant herein, operated, managed and/or controlled its activities.

69.     Semyon Pogrebizhsky ("Pogrebizhsky") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Soho Medical Supplies and, at all times relevant herein, operated, managed and/or controlled its activities.

70.     Yevgeny Spektor ("Spektor") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Excel Medical Supplies and, at all times relevant herein, operated, managed and/or controlled its activities.

71.     Inna Tkachenko ("I. Tkachenko") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer New Way Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

72.     Maksym Tkachenko ("M. Tkachenko") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer TAM Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

73.     Renata Tkachenko ("R. Tkachenko") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Health Aid Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

74.     Iosif Valdman ("Valdman") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer V+B Magic Recovery Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

75.     David Zilber ("Zilber") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailers Ultimate Health Products and Ultra Ortho

Products and, at all times relevant herein, operated, managed and/or controlled their activities.

76. Nisa Zulunov ("Zulunov") is a natural person residing in the State of New York, is a principal, officer and/or director of Retailer IG Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

**C.   The Individual Wholesale Owner Defendants**

77. Margarita Akmalova ("Akmalova") is a natural person residing in the State of New York, is the principal, officer and/or director of Wholesaler American Mobility Medical and, at all times relevant herein, operated, managed and/or controlled its activities.

78. Shimon Indictor ("Indictor") is a natural person residing in the State of New York, is the principal, officer and/or director of Wholesaler IDEL International Trading Inc. and, at all times relevant herein, operated, managed and/or controlled its activities.

79. Oleg Simakov ("Simakov") is a natural person residing in the State of New York, is the principal, officer and/or director of Wholesalers Easy Hill Wholesale Medical Supply and A to Z Wholesale and, at all times relevant herein, operated, managed and/or controlled their activities.

80. Vadim Zalogin ("Zalogin") is a natural person residing in the State of Florida, is the principal, officer and/or director of Wholesaler VZ Group and, at all times relevant herein, operated, managed and/or controlled its activities.

81. Michael Zavrazhin ("Zavrazhin") is a natural person residing in the State of New York, is the principal, officer and/or director of Wholesalers Devonian Inc., Major Market Merchandise and MEM Wholesale and, at all times relevant herein, operated, managed and/or controlled their activities.

**D.   The Corporate Retailer Defendants**

82. On information and belief, Advanced Medical Supply, Inc. ("Advanced Medical

Supply") was incorporated on August 10, 2006, and until its corporate dissolution on or about April 25, 2012, purported to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 442-D Lorimer Street #248, Brooklyn, New York 11206. Advanced Medical Supply was operated, managed and/or controlled by Defendant Geykhman and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

83. On information and belief, B & Y Surgical Supplies Inc. ("B & Y Surgical Supplies") was incorporated on October 5, 2006, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 6 Bay 50th Street, Brooklyn, New York 11214. B & Y Surgical Supplies is operated, managed and/or controlled by Defendant Blinder and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

84. On information and belief, Big Apple Ortho Products, Inc. ("Big Apple Ortho Products") was incorporated on June 15, 2012, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 1133 Broadway, Ste. 706, New York, New York 10010. Big Apple Ortho Products is operated, managed and/or controlled by Defendant Denisov and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

85. On information and belief, Excel Medical Supplies, Inc. ("Excel Medical Supplies") was incorporated on January 22, 2008, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 271 Avenue U, Brooklyn, New York 11223. Excel Medical Supplies is operated, managed and/or controlled by Defendant Spektor and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

86.     On information and belief, Five Boro Medical Equipment Inc. ("Five Boro Medical Equipment") was incorporated on March 1, 2011, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 8025 7th Avenue, Brooklyn, New York 11228. Five Boro Medical Equipment is operated, managed and/or controlled by Defendant Firayner and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

87.     On information and belief, G & A Medical Supply LLC ("G & A Medical Supply") was incorporated on October 10, 2006, and until it merged with another entity that is not named as a defendant in this action on or about January 31, 2012, purported to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 150 49th Street, Brooklyn, New York 11232. G & A Medical Supply was operated, managed and/or controlled by Defendant Kohen and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

88.     On information and belief, Goldstar Equipment Inc. ("Goldstar Equipment") was incorporated on July 13, 2011, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 87-58 Bay 16, Brooklyn, NY 11214. Goldstar Equipment is operated, managed and/or controlled by Defendant Kohen and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

89.     On information and belief, Health Aid Medical Supply Inc. ("Health Aid Medical Supply") was incorporated on July 21, 2009, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 2259 65th Street, Brooklyn, New York 11204. Health Aid Medical Supply is operated, managed and/or controlled by Defendant R. Tkachenko and submitted fraudulent claims to Plaintiffs for

reimbursement of DME and/or orthotic devices under the No-fault Law.

90.     On information and belief, IG Medical Supply LLC ("IG Medical Supply") was incorporated on May 3, 2011, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 23-29 Steinway Street, Astoria, New York 11105. IG Medical Supply is operated, managed and/or controlled by Defendants Zulunov and Batiashvili and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

91.     On information and belief, Infinity Medical Supply Inc., d/b/a Kun Medical Supply ("Kun Medical Supply") was incorporated on May 11, 2010, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 1572 Dahill Road, Brooklyn, New York 11204. Kun Medical Supply is operated, managed and/or controlled by Defendant Lyandres and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

92.     On information and belief, Lender Medical Supply Inc. ("Lender Medical Supply") was incorporated on April 10, 2009, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 4406 3rd Avenue, Brooklyn, New York 11220. Lender Medical Supply is operated, managed and/or controlled by Defendant Abutova and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

93.     On information and belief, Longevity Medical Supply, Inc. ("Longevity Medical Supply") was incorporated on August 31, 2010, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 7323 20th Avenue, Brooklyn, New York 11204. Longevity Medical Supply is operated, managed and/or controlled by Defendant Nemets and submitted fraudulent claims to Plaintiffs for

reimbursement of DME and/or orthotic devices under the No-fault Law.

94.     On information and belief, Multi Service of NY Inc. ("Multi Service of NY") was incorporated on June 2, 2008, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 120-19 Jamaica Avenue, Richmond Hill, New York 11418. Multi Service of NY is operated, managed and/or controlled by Defendant Borukhov and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

95.     On information and belief, New Way Medical Supply, Corp. ("New Way Medical Supply") was incorporated on August 26, 2010, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 2106 East 23rd Street, 1st Floor, Brooklyn, NY 11229. New Way Medical Supply is operated, managed and/or controlled by Defendant I. Tkachenko and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

96.     On information and belief, Next Century Enterprises, Inc. ("Next Century Enterprises") was incorporated on November 6, 2007, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 2221 Avenue U, Suite 2, Brooklyn, New York 11229. Next Century Enterprises is operated, managed and/or controlled by Defendant Kapusta and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law..

97.     On information and belief, OrthoPlus Products Inc. ("OrthoPlus Products") was incorporated on January 27, 2011, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 6119 17th Avenue, Brooklyn, New York 11204. OrthoPlus Products is operated, managed and/or controlled by Defendant Dzhaginov and submitted fraudulent claims to Plaintiffs for reimbursement of

DME and/or orthotic devices under the No-fault Law.

98. On information and belief, OS Ortho Services Inc. ("OS Ortho Services") was incorporated on October 4, 2010, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 2350-A 80th Street, Brooklyn, New York 11214. OS Ortho Services is operated, managed and/or controlled by Defendant Ogan and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

99. On information and belief, Premier DME Corp. ("Premier DME") was incorporated on March 23, 2010, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 4750 Bedford Avenue, # 7K, Brooklyn, New York 11235. Premier DME is operated, managed and/or controlled by Defendant Kaminsky and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

100. On information and belief, ProDME, Inc. ("ProDME") was incorporated on May 17, 2010, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 6 Bay 50th Street, Brooklyn, New York 11214. ProDME is operated, managed and/or controlled by Defendant Konviser and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

101. On information and belief, Quality Service Supplies Inc. ("Quality Service Supplies") was incorporated on September 23, 2009, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 399 Ocean Parkway, Ste LA, Brooklyn, New York 11218. Quality Service Supplies is operated, managed and/or controlled by Defendant Ifraimov and submitted fraudulent claims to

Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

102.    On information and belief, Six Star Supply, Inc. ("Six Star Supply") was incorporated on April 10, 2009, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 63-16 Austin Street, Rego Park, New York 11374. Six Star Supply is operated, managed and/or controlled by Defendant Kandhozov and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

103.    On information and belief, Soho Medical Supplies Inc. ("Soho Medical Supplies") was incorporated on March 4, 2008, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 2407 East 22nd Street, Brooklyn, NY 11235. Soho Medical Supplies is operated, managed and/or controlled by Defendant Pogrebizhsky and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

104.    On information and belief, SVP Medsupply Inc. ("SVP Medsupply") was incorporated on May 24, 2011, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 2176 64 Street, Brooklyn, NY 11204. SVP Medsupply is operated, managed and/or controlled by Defendant Lazarev and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

105.    On information and belief, TAM Medical Supply Corp. ("TAM Medical Supply") was incorporated on February 1, 2012, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 1818 Gravesend Neck Rd., 1 Fl., Brooklyn, NY 11229. TAM Medical Supply is operated, managed and/or controlled by Defendant M. Tkachenko and submitted fraudulent claims to

Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

106. On information and belief, TSM Medical Supply & Orthocare Inc. ("TSM Medical Supply & Orthocare") was incorporated on October 26, 2010, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 2414 65th Street, Brooklyn, New York 11204. TSM Medical Supply & Orthocare is operated, managed and/or controlled by Defendant Lyandres and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

107. On information and belief, Ultimate Health Products Inc. ("Ultimate Health Products") was incorporated on October 29, 2010, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 174 Bay 29th Street, Suite B, Brooklyn, New York 11214. Ultimate Health Products is operated, managed and/or controlled by Defendant Zilber and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

108. On information and belief, Ultra Ortho Products Inc. ("Ultra Ortho Products") was incorporated on August 10, 2011, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 29 Van Sicklens Street, Brooklyn, New York 11223. Ultimate Ortho Products is operated, managed and/or controlled by Defendant Zilber and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

109. On information and belief, Unlimited Medical Supply Services Inc. ("Unlimited Medical Supply Services") was incorporated on September 25, 2007, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 765 Patterson Avenue, Staten Island, New York 10306. Unlimited

Medical Supply Services is operated, managed and/or controlled by Defendant Mullakandova and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

110. On information and belief, V+B Magic Recovery Supply Inc. ("V+B Magic Recovery Supply") was incorporated on October 4, 2000, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 6416 24th Avenue, Brooklyn, New York 11204. V+B Magic Recovery Supply is operated, managed and/or controlled by Defendant Valdman and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

111. On information and belief, VIP Medical Supplies, Inc. ("VIP Medical Supplies") was incorporated on November 19, 2010, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 196 Highlawn Avenue, Brooklyn, NY 11223. VIP Medical Supplies is operated, managed and/or controlled by Defendant Kapusta and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

112. On information and belief, Vladenn Medical Supply Corp. ("Vladenn Medical Supply") was incorporated on August 18, 2008, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 2855 Cropsey Avenue, First Floor, Brooklyn, New York 11224. Vladenn Medical Supply is operated, managed and/or controlled by Defendant Nazarov and submitted fraudulent claims to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

E.     **The Corporate Wholesale Defendants**

113. On information and belief, A to Z Wholesale Inc. ("A to Z Wholesale") was incorporated on September 23, 2009, and is a wholesale DME supply company authorized to do

business in the State of New York, with its principal place of business located at 118 Olympia Boulevard, Staten Island, New York 10305. A to Z Wholesale is operated, managed and/or controlled by Defendant Simakov and, on information and belief, supplies Retailer Lender Medical Supply and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

114.    On information and belief, American Mobility Medical Inc. ("American Mobility Medical") was incorporated on March 9, 2009, and is a wholesale DME supply company authorized to do business in the State of Florida, with its principal place of business located at 3363 NE 163 Road Street, Suite # 804, Sunny Isles, Florida 33160. American Mobility Medical is operated, managed and/or controlled by Defendant Akmalova and, on information and belief, supplies Retailers Premier DME, Next Century Enterprises and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

115.    On information and belief, Any Choice Supply Corp. ("Any Choice Supply") was

incorporated on May 4, 2010, and is a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 2940 West 5th Street, Apt. 2G, Brooklyn, New York 11224. Any Choice Supply is operated, managed and/or controlled by Defendant John Doe 1 and, on information and belief, supplied Retailer OS Ortho Services and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

116.    On information and belief, Devonian Inc. ("Devonian") was incorporated on September 26, 2005, and until its corporate dissolution on or about August 5, 2010, purported to be a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 2294 East 14th Street, Brooklyn, New York 11235. Devonian was operated, managed and/or controlled by Defendant Zavrazhin and, on information and belief, supplied Retailer V+B Magic Recovery Supply and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

117.    On information and belief, Easy Hill Wholesale Medical Supply Inc. ("Easy Hill Wholesale Medical Supply") was incorporated on August 13, 2009, and is a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 2407 East 22nd Street, Brooklyn, New York 11235. Easy Hill Wholesale Medical Supply is operated, managed and/or controlled by Defendant Simakov and, on information and belief, supplies Retailer Lender Medical Supply and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

118.    On information and belief, IDEL International Trading Inc. ("IDEL International Trading") was incorporated on September 8, 2000, and is a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 5620 1st Avenue, 4th Floor, Brooklyn, New York 11220 and 5726 1st Avenue, 2nd Floor, Brooklyn, New York 11220. IDEL International Trading is operated, managed and/or controlled by Defendant Indictor and, on information and belief, supplies Retailers Health Aid Medical Supply, SVP Medsupply and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of one or more of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer

or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

119. On information and belief, IG&NAT Services, Inc. ("IG&NAT Services") was incorporated on February 25, 2010, and is a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 4701 New Utrecht Avenue, Brooklyn, New York 11219. IG&NAT Services is operated, managed and/or controlled by Defendant John Doe 2 and, on information and belief, supplies Retailer ProDME and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

120. On information and belief, Imprezza NYC Inc. ("Imprezza NYC") was incorporated on August 16, 2012, and is a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 2103 Avenue Z, Brooklyn, New York 11235. Imprezza NYC is operated, managed and/or controlled by Defendant John Doe 3 and, on information and belief, supplies Retailer Big Apple Ortho Products, SVP Medsupply and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices

purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

121. On information and belief, Major Market Merchandise Inc. ("Major Market Merchandise") was incorporated on August 10, 2007, and, until its corporate dissolution on or about December 13, 2010, was a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 2369 81st Street, Brooklyn, New York 11214. Major Market Merchandise was operated, managed and/or controlled by Defendant Zavrazhin and, on information and belief, supplied Retailer V+B Magic Recovery Supply and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

122. On information and belief, MEM Wholesale Inc. ("MEM Wholesale") was incorporated on July 20, 2010, and is a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 2369 81st Street, Brooklyn, New York 11214. MEM Wholesale is operated, managed and/or controlled by Defendant Zavrazhin and, on information and belief, supplies Retailer Longevity Medical Supply, V+B Magic Recovery Supply and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the

Retailers. These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

123. On information and belief, Mikos Trading, Inc. ("Mikos Trading") was incorporated on June 6, 2005, and until its corporate dissolution on or about September 06, 2007, purported to be a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 1865 Bath Avenue, Brooklyn, New York 11214. Mikos Trading was operated, managed and/or controlled by Defendant John Doe 4 and, on information and belief, supplied Retailer B & Y Surgical Supplies, Soho Medical Supplies and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement

124. On information and belief, MIKS Trading, Inc. ("MIKS Trading") was incorporated on May 15, 2007, and until its corporate dissolution on or about January 29, 2010, purported to be a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 1865 Bath Avenue, Brooklyn, New York 11214. MIKS Trading was operated, managed and/or controlled by Defendant John Doe 5 and, on information and belief, supplied Retailer B & Y Surgical Supplies and other retailers

unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

125.    On information and belief, New Step Services Inc. ("New Step Services") was incorporated on August 5, 2008, and, until its corporate dissolution on or about April 13, 2011, was a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 3525 Kings Highway, Brooklyn, New York 11234. New Step Services was operated, managed and/or controlled by Defendant John Doe 6 and, on information and belief, supplied Retailer B & Y Surgical Supplies and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

126.    On information and belief, One Stop Wholesale, Inc. ("One Stop Wholesale") was incorporated on November 18, 2010, and is a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 309 Sand Lane, 2nd Floor Front, Staten Island, NY 10305. One Stop Wholesale is owned, controlled, and/or

operated by John Doe 7 and, on information and belief, supplies Retailers Goldstar Equipment, and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices actually provided to the Retailers. These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

127. On information and belief, ROPA Inc. ("ROPA") was incorporated on August 17, 2007, and until its corporate dissolution on or about July 27, 2011, purported to be a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 1811 Stillwell Avenue, Brooklyn, New York 11223. ROPA was operated, managed and/or controlled by Defendant John Doe 8 and, on information and belief, supplied Retailer Excel Medical Supplies and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

128. On information and belief, VZ Group Inc. ("VZ Group") was incorporated on September 18, 2008, and is a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 1816 Gravesend Road,

Brooklyn, New York 11232. VZ Group is operated, managed and/or controlled by Defendant Zalogin and, on information and belief, supplies Retailer Ultimate Health Products and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

F.      **The John Doe Defendants**

129.    John Doe 1 is the principal, officer and/or director of Wholesaler Any Choice Supply and, at all times relevant herein, operated, managed and/or controlled its activities

130.    John Doe 2 is the principal, officer and/or director of Wholesaler IG&NAT Services and, at all times relevant herein, operated, managed and/or controlled its activities.

131.    John Doe 3 is the principal, officer and/or director of Wholesaler Imprezza NYC and, at all times relevant herein, operated, managed and/or controlled its activities

132.    John Doe 4 is the principal, officer and/or director of Wholesaler Mikos Trading and, at all times relevant herein, operated, managed and/or controlled its activities.

133.    John Doe 5 is the principal, officer and/or director of Wholesaler MIKS Trading and, at all times relevant herein, operated, managed and/or controlled its activities.

134.    John Doe 6 is the principal, officer and/or director of Wholesaler New Step Services and, at all times relevant herein, operated, managed and/or controlled its activities.

135.    John Doe 7 is the principal, officer and/or director of Wholesaler One Stop Wholesale and, at all times relevant herein, operated, managed and/or controlled its activities.

136.    John Doe 8 is the principal, officer and/or director of Wholesaler ROPA and, at all times relevant herein, operated, managed and/or controlled its activities.

137.    On information and belief, John Does 9 through 20 are the principals, officers and/or directors of the ABC Corporations 1 through 20.  On information and belief, John Doe Defendants 9 through 20, through the ABC Corporations 1 through 20, entered into kickback and/or other financial compensation agreements with the Retailers to provide inexpensive DME and/or orthotic devices and fraudulent wholesale invoices that enabled the Retailers to fraudulently bill Plaintiffs.  These individuals will be added as defendants when their names and the extent of their participation become known through discovery.

**G.    The ABC Corporations**

138.    On information and belief, the ABC Corporations 1 through 20 are additional corporations that purport to be wholesale DME supply companies that supply the Retailers with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices actually provided to the Retailers.  These wholesale invoices:  (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers can, in turn, submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.  These ABC Corporations 1 through 20 will be added as defendants when their names and the full extent of their participation become known through discovery.

## JURISDICTION AND VENUE

139.    Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over the claims brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* because they arise under the laws of the United States.

140.     This Court also has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

141.     This Court also has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367(a).

142.     Pursuant to 18 U.S.C. § 1965, 28 U.S.C. § 1367 and New York CPLR § 302(a), this Court has personal jurisdiction over any non-domiciliary defendant.

143.     Venue lies in this District Court under the provisions of 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b) as the Eastern District of New York is the district where one or more the Defendants reside and because this is the district where a substantial amount of the activities forming the basis of the Complaint occurred.

### FACTUAL BACKGROUND AND ALLEGATIONS
### APPLICABLE TO ALL CAUSES OF ACTION

144.     Plaintiffs underwrite automobile insurance in New York State.

145.     As set forth in the Statutory/Regulatory Scheme section above, pursuant to the No-fault Law, Plaintiffs are required to pay for, *inter alia*, health service expenses that are reasonably incurred as a result of injuries suffered by occupants of their insured motor vehicles and pedestrians that arise from the use or operation of such motor vehicles in the State of New York.

146.     On information and belief, the Retailers are ostensibly DME supply companies that bill for medical supplies provided to, among others, individuals covered under the No-fault Law. In exchange for their services, the Retailers accept assignments of benefits from the Claimants covered under the No-fault Law and submit claims for payment to No-fault insurance carriers, in general, and to Plaintiffs, in particular.

147.     To process and verify the claims submitted by the Retailers, Plaintiffs required

and the Retailers submitted prescriptions and other documents relating to the DME and/or orthotic devices allegedly supplied to No-fault claimants for which the Retailers were seeking reimbursement from Plaintiffs.

148.    On information and belief, Retailers B & Y Surgical Supplies, Big Apple Ortho Products, Excel Medical Supplies, Goldstar Equipment, Health Aid Medical Supply, Lender Medical Supply, Longevity Medical Supply, Next Century Enterprises, OS Ortho Services, ProDME, Soho Medical Supplies, SVP Medsupply and V+B Magic Recovery Supply also submitted inflated wholesale invoices to Plaintiffs in support of their claims for reimbursement.

149.    Pursuant to the No-fault Law and implementing regulations, as well as the applicable policies of insurance, Plaintiffs are required to promptly process the Retailers' claims within 30 days of receipt of proof of claim.

150.    To fulfill their obligation to promptly process claims, Plaintiffs justifiably relied upon the bills and documentation submitted by the Retailers in support of their claims and paid the Retailers based on the representations and information contained in the bills and documentation that Defendants mailed to Plaintiffs.

151.    The New York State Medicaid program has established limits on the maximum permissible charges for, among other things, DME and/or orthotic devices listed on the New York State DME Services Fee Schedule and provides that the maximum permissible charge for the purchase of durable medical equipment, medical/surgical supplies and orthotic and prosthetic appliances is the fee payable for such equipment and supplies under the New York State Medicaid program at the time such equipment and supplies are provided.  12 N.Y.C.R.R. § 442.2.

152.    With respect to DME and/or medical supplies for which the New York State Medicaid program has not established a fee ("Non-Fee Schedule Items"), the regulation provides

that the fee payable shall be the lesser of:

    (1)    the acquisition cost (*i.e.*, the line item cost from a manufacturer or wholesaler net of any rebates, discounts or other valuable considerations, mailing, shipping, handling, insurance costs or any sales tax) to the provider plus 50%; or

    (2)    the usual and customary price charged to the general public.

12 N.Y.C.R.R § 442.2.

153.    On information and belief, the Retailers were created as the centerpieces of an elaborate scheme to fraudulently bill No-fault insurance carriers for DME and/or orthotic devices that were never provided, were not provided as billed or, if provided, were either of inferior quality relative to what was included in the bills submitted to Plaintiffs and/or were otherwise medically unnecessary and provided pursuant to a predetermined course of treatment in which virtually all No-fault Claimants received substantially similar DME and/or orthotic devices.

154.    The DME and/or orthotic devices that the Retailers purported to provide, and for which they billed Plaintiffs, seldom varied from patient-to-patient over a given period of time and also did not change based on any differences in the patients' conditions. Instead, the Retail Owners, through their respective Retailers, created a billing apparatus that was designed to drain the maximum amount of dollars from insurance companies for each and every patient, including those who required little or no DME at all.

155.    On information and belief, the Retailer Owners created and controlled the Retailers, which were part of separate, but well-organized illegal enterprises that engaged in fundamentally similar, systematic and pervasive fraudulent practices that distinguished them from legitimate providers of DME and/or orthotic devices. On information and belief, the components of each enterprise followed practices that were part of a racketeering scheme dictated by the Retail Owners, including, but not limited to, the following practices:

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, misrepresented the nature, quality and cost of DME and/or orthotic devices purportedly provided to No-fault Claimants;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, submitted bills misrepresenting the amounts they were entitled to be reimbursed under the No-fault Law;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, submitted bills for DME and/or orthotic devices that were never provided to No-fault claimants;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, misrepresented the wholesale costs and/or usual and customary price of the Non-fee Schedule items purportedly supplied to No-fault Claimants;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, submitted delivery receipts in support of their bills that purported to demonstrate the No-fault Claimants' acknowledged receipt of the DME and/or orthotic devices, when, in actuality, the delivery receipts were often signed by the No-fault Claimants in blank or contained forged signatures;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, submitted wholesale invoices as part of their proof of claim that systematically failed to provide a meaningful description of the DME and/or orthotic devices purportedly provided (*i.e.*, make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, submitted wholesale invoices reflecting prices far in excess of those actually paid, concealing the manufacturer, make, model, size and quality of the DME and/or orthotic devices purportedly supplied;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, submitted bills reflecting prices far in excess of those actually paid, concealing that the items actually supplied were far less expensive than the amounts indicated in the wholesale invoice for any particular item;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, submitted prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, describing the item generically so as to conceal the type of item being prescribed;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, concealed the fact that the DME and/or

orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol pursuant to a kickback arrangement with No-fault Clinics;

- Unlike legitimate retail DME companies, the Retailers, through their Retail Owners and/or those acting under their direction and control, had agreements and/or understandings as to what generic DME and/or orthotic devices would be prescribed by the No-fault Clinics;

- Unlike legitimate retail DME companies, the Retailers claimed to conduct their daily operations from locations that oftentimes had no signage or that were shuttered with no indication that any business was conducted at that location; and

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, entered into illicit relationships with the Wholesale Defendants, which, in exchange for kickbacks and/or a fee, provided the Retailers with wholesale invoices that fraudulently inflated the price, quantity and/or item provided, with the payments relating to such wholesale invoices actually serving as the vehicle through which Defendants laundered the money back to the Retail Owners through the use of check cashing establishments.

156. In these and numerous other ways, Defendants sought to deceive Plaintiffs into paying fraudulent claims that typically exceeded thousands of dollars per Claimant.

157. The members of each enterprise alleged herein played well-defined and essential roles in the Defendants' scheme to defraud and in directing the affairs of the enterprises. By way of example and not limitation, in furtherance of their scheme to defraud, the Retail Owners:

- Entered into kickback arrangements with No-fault Clinics, not named as defendants in this action, to ensure that their associated doctors and/or chiropractors prescribed large amounts of virtually identical DME and/or orthotic devices to their patient population, pursuant to a predetermined course of treatment, irrespective of medical necessity;

- Entered into kickback arrangements with No-fault Clinics to ensure that the prescriptions provided were sufficiently generic so that the nature, quality and cost of any DME and/or orthotic device could not be verified based on the description of the prescribed item alone;

- Entered into kickback arrangements with one or more of the Wholesale Defendants so that they would provide inexpensive DME and/or orthotic devices, along with fraudulent wholesale invoices that grossly inflated the amounts the Retailers paid for the DME and/or orthotic devices;

- Submitted or caused to be submitted, on behalf of the Retailers,

numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to many Claimants;

- Prepared or caused to be prepared fraudulent bills and sent them to Plaintiffs; and

- Participated, or caused those acting under their direction to participate, in the preparation and mailing of bogus claims, knowing that they contained materially false and misleading information.

158.   By way of further example and not limitation, in furtherance of their scheme to defraud, the Wholesale Owners, through the Defendant Wholesalers:

- Entered into kickback arrangements with the Retail Owners, through their respective Retailers, to provide inexpensive DME and/or orthotic devices, coupled with wholesale invoices that grossly inflated the cost and/or quantity of the DME and/or orthotic devices reflected therein;

- Entered into kickback arrangements with the Retail Owners, through their respective Retailers, to provide wholesale invoices that were sufficiently generic so that the nature, quality and cost of any DME and/or orthotic device could not be verified based on the description of the item alone; and

- Prepared or caused to be prepared fraudulent wholesale invoices and sent them to the Retailers, knowing that the Retailers, in turn, would submit them in support of fraudulent claims for reimbursement.

159.   By way of further example, in furtherance of the scheme to defraud alleged herein, the Defendant Wholesalers:

- Unlike legitimate wholesale DME companies, provided inexpensive DME and/or orthotic devices, along with fraudulent wholesale invoices that grossly inflated the amounts the Retailers paid for the DME and/or orthotic devices;

- Unlike legitimate wholesale DME companies, provided generic, non-descript wholesale invoices that deliberately omitted the make, model and/or manufacturer of the DME and/or orthotic devices to ensure that the nature, quality and cost of any DME and/or orthotic device could not be verified based on the description of the item alone;

- Unlike legitimate wholesale DME companies, provided the essential means through which the Retail Owners were able to submit fraudulent bills to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law;

- Unlike legitimate wholesale DME companies, knew or should have known that the inflated costs and/or quantities of the DME and/or

orthotic devices reflected in the wholesale invoices they provided were materially misrepresented in the bills submitted by the Retail Owners, through their respective Retailers, to insurers;

- Unlike legitimate wholesale DME companies, knew or should have known that the generic, non-descript wholesale invoices they provided were used to materially misrepresent the nature, cost and quality of the DME and/or orthotic devices reflected in the bills submitted by the Retail Owners, through their respective Retailers, to insurers;

- Unlike legitimate wholesale DME companies, in furtherance of the money laundering scheme, converted the checks they received from the Retailers to cash and returned to the Retailers up to 98% of the wholesale invoice amounts;

- Unlike legitimate wholesale DME companies, were oftentimes shell corporations, with no discernable, formal corporate structure or physical office space; and

- Unlike legitimate wholesale DME companies, claimed to conduct their daily operations from locations with no signage or that were shuttered with no indication that any business was conducted at that location.

160.   At all relevant times mentioned herein, the Wholesale Owners, either directly or through others acting under and pursuant to their direction, instruction and control, caused fraudulent wholesale invoices to be provided to the Retailers that they knew or should have known would be used by the Retailers in furtherance of the scheme to defraud alleged herein.

161.   At all times mentioned herein, the fraudulent wholesale invoices issued by the Wholesale Defendants provided the essential means by which the Retail Owners, through their respective Retailers, were able to further the scheme to defraud alleged in this Complaint.

162.   At all relevant times mentioned herein, the Wholesaler Owners knew or should have known that the fraudulent wholesale invoices that were provided to the Retailers through the Wholesalers would be used by the Retailers to obtain payment from insurers, in general, and Plaintiffs, in particular in connection with fraudulent claims.

163.   At all relevant times mentioned herein, the Retail Owners knew that the wholesale invoices provided by the Wholesale Defendants were fraudulent in that they misstated the price,

quantity and quality of the DME and/or orthotic devices purportedly sold to the Retailers.

164.    At all relevant times mentioned herein, the Retail Owners, through their respective Retailers, directly or through others acting under and pursuant to their direction, instruction and control, submitted or caused to be submitted the fraudulent wholesale invoices provided by the Wholesale Defendants to Plaintiffs, in furtherance of the scheme to defraud alleged herein, to obtain payment in connection with fraudulent claims.

165.    At all relevant times mentioned herein, the Retail Owners and Wholesale Defendants, acting in concert with each other, participated in, conducted, controlled, conspired together, aided and abetted and furthered the fraudulent schemes through a common course of conduct and purpose, which was to defraud insurers, in general, and Plaintiffs, in particular, of money.

## THE MECHANICS OF THE SCHEME TO DEFRAUD

166.    On information and belief, beginning in 2000 and continuing until the present day, Defendants and others not named in the Complaint have engaged in systematic fraudulent billing schemes based upon the alleged sale of DME and/or orthotic devices.

167.    On information and belief, the Retail Owners incorporated, owned and/or controlled their respective Retailers for the purpose of defrauding insurers, in general, and Plaintiffs, in particular.

168.    On information and belief, each of the Retailers, through their respective Retail Owners, engaged in virtually identical and parallel schemes to defraud wherein the Retail Owners (i) paid kickbacks to the No-fault Clinics in exchange for prescriptions of DME and/or orthotic devices; (ii) obtained prescriptions that were provided pursuant to a predetermined course of treatment, without regard to medical necessity; (iii) paid fees (pursuant to the money laundering scheme described below) to the Wholesale Defendants in exchange for fraudulent

wholesale invoices that the Retailers, in turn, would use to substantiate bogus claims for reimbursement of No-fault benefits; (iv) arranged for the No-fault Clinics to have assignments of benefits and acknowledgement of delivery receipt forms signed by Claimants on their behalf to ensure that they had all of the documents necessary to submit claims to insurers, in general, and Plaintiffs, in particular; and (v) systematically submitted bills to insurers, in general, and Plaintiffs, in particular, for DME and/or orthotic devices that were purportedly provided to Claimants based on medical necessity when, in fact, the Retail Owners, through their respective Retailers, determined the DME that would be prescribed by the No-fault Clinics, with virtually every Claimant receiving substantially similar DME and/or orthotic devices.

169.    On information and belief, each DME enterprise alleged in this complaint carried out its scheme to defraud though substantially similar means.

170.    On information and belief, with the retail DME defendants in place, Defendants devised and carried out fundamentally identical schemes to fraudulently bill insurers, in general, and Plaintiffs, in particular, for expensive DME and/or orthotic devices that were never provided, or if provided, were inexpensive items of inferior quality that cost a fraction of the amounts that Defendants materially misrepresented in their fraudulent bill submissions to Plaintiffs.

171.    On information and belief, regardless of whether a No-fault Claimant was seen by a doctor on the date of the initial office visit at any of the unnamed No-fault Clinics operating in the New York metropolitan area, a No-fault Claimant's initial office consultation would automatically trigger a series of internal practices and procedures in which the No-fault Clinics, in exchange for kickbacks and/or other financial compensation agreements with the Retailers and through their medical doctors and/or chiropractors, would issue a prescription for a standard battery of DME and/or orthotic devices, pursuant to a standard protocol or predetermined course of treatment and regardless of whether such items were medically necessary.

172.    On information and belief, irrespective of the purported complaints of pain or type of injury documented in connection with a particular claim, the No-fault Clinics prescribed virtually the exact same DME and/or orthotic devices to its patient population, regardless of factors such as their age, height, weight, prior medical history, position in the vehicle and/or purported involvement in an accident.

173.    On information and belief, in exchange for kickbacks and/or other financial compensation agreements with the Retailers, one or more No-fault Clinics operating in the New York metropolitan area also directed their associated physicians, chiropractors and/or other providers to prescribe DME and/or orthotic devices that are not included in the Fee Schedule, such as bed boards, car seats, EMS Units, infrared heat lamps, hot/cold packs, massagers and whirlpools; and to ensure that the prescriptions issued were generic and non-descript, meaning that they omitted any detailed description of the items to be supplied to the No-fault Claimants.

174.    On information and belief, in furtherance of the scheme to defraud, the No-fault Clinics did not provide the No-fault Claimants directly with the prescriptions for DME and/or orthotic devices. Instead, these prescriptions were given directly to the Retailers to eliminate the possibility that the No-fault Claimant(s) would fill the prescription(s) with a legitimate retailer of DME and/or orthotic devices.

175.    On information and belief, in addition to prescribing Non-Fee Schedule Items, as part of the kickback and/or other financial compensation agreement with the No-fault Clinics, the No-fault Clinics routinely provided the Retailers with generic, non-descript prescriptions for certain Fee Schedule Items, such as back braces, knee braces, shoulder braces, ankle braces, elbow supports, cervical traction units, cervical collars, lumbar cushions and thermophores, which the Retailers then used in support of their claims for reimbursement at a higher rate.

176.    On information and belief, by submitting a generic, non-descript prescription,

48

devoid of any detail, in support of their claims for reimbursement, the Retailers were provided the means through which they misrepresented the nature, quality and cost of the DME and/or orthotic devices allegedly provided.

177. On information and belief, as part of the kickback or other financial compensation agreement with the No-fault Clinics and in furtherance of the scheme to defraud, on their first or second visit to the No-fault Clinic(s), the No-fault Claimants would be given a number of documents to complete and sign, including, but not limited to, assignment of benefit forms and one or more delivery receipts.

178. On information and belief, in some instances, the delivery receipts provided to Claimants to sign were blank and the Retailers filled out the information subsequent to the Claimant's visit. By doing so, the Retailers were able to bill for the DME and/or orthotic devices without having to actually provide the items since there is no legitimate acknowledgment of receipt from the No-fault Claimant.

179. At other times, on information and belief, the delivery receipt forms were completed before the No-fault Claimants were required to sign the forms, meaning that DME and/or orthotic devices were listed on the forms even before the No-fault Claimant was seen by a doctor.

180. On information and belief, in instances where the No-fault Claimant did not sign the blank delivery receipt, the Retailers sometimes forged or caused to be forged the No-fault Claimant's signature.

181. In every instance, on information and belief, in furtherance of the scheme to defraud alleged herein, the delivery receipts describe the DME and/or orthotic devices in the same generic, non-descript manner as the prescriptions, claim forms, and wholesale invoices submitted by the Retailers in support of their claims for reimbursement.

182. On information and belief, in furtherance of the scheme to defraud alleged herein, the delivery receipts submitted by the Retailers to Plaintiffs routinely misrepresented the DME and/or orthotic devices provided.

183. On information and belief, in furtherance of the scheme to defraud alleged herein, the Retailers entered into agreements with one or more of the Wholesale Defendants whereby the Wholesale Defendants supplied the Retailers with invoices that were used to document inflated and outrageous wholesale costs, which one or more of the Retailers then submitted to insurers, in general, and Plaintiffs, in particular, as part of their proof of claim.

184. On information and belief, in furtherance of the scheme to defraud alleged herein, the wholesale invoices provided by the Wholesale Defendants to the Retailers included artificial prices that exceeded the actual wholesale price of the DME and/or orthotic devices reflected therein.

185. On information and belief, to the extent the Retailers provided any DME and/or orthotic devices to No-fault Claimants, the DME and/or orthotic devices were inexpensive items that were materially misrepresented in the wholesale invoices received from the Wholesale Defendants.

186. On information and belief, the wholesale invoices provided by the Wholesale Defendants to the Retailers reflected grossly inflated prices, upwards of 10 to 20 times the actual prices that the Retailers paid for the DME and/or orthotic devices when they were actually provided.

187. On information and belief, in furtherance of the scheme to defraud alleged herein, each of the wholesale invoices provided by the Wholesale Defendants to the Retailers intentionally omitted the make, model, or manufacturer of the DME and/or orthotic devices reflected in the invoice, thereby ensuring that the nature and quality of the item that was

supposedly provided could not be verified based on the wholesale invoice alone.

188.    In other instances, on information and belief, the DME and/or orthotic devices reflected in the wholesale invoices provided by the Wholesale Defendants to the Retailers were never provided to the Retailers; rather, the Wholesale Defendants created and provided the wholesale invoices to the Retailers to create the illusion of a sale.

189.    On information and belief, the wholesale invoices were provided to the Retailers to camouflage the conversion of the Retailers' checks payable to the Wholesale Defendants to cash at check cashing establishments.

190.    On information and belief, the Retailers would issue checks to the Wholesale Defendants for the full amount of the inflated wholesale invoice. The Wholesale Defendants would then convert the checks to cash through check cashing establishments, or by other means, and would return a substantial portion of the money to the Retailers, keeping a portion of the profits of the scheme for themselves.

191.    On information and belief, in furtherance of the scheme to defraud alleged herein, the Retailers requested that the Wholesale Defendants have their checks cashed on their corporate accounts to fraudulently demonstrate to insurers, such as Plaintiffs, that they paid for the wholesale items when, in fact, they did not.

192.    On information and belief, in furtherance of the scheme to defraud alleged herein, one or more of the Retailers routinely submitted fraudulent documents, including, but not limited to, claim forms, prescriptions, delivery receipts, and wholesale invoices that materially misrepresented the nature, quality and cost of the DME and/or orthotic devices purportedly provided to No-fault Claimants.

193.    On information and belief, the Wholesale Defendants and No-fault Clinics provided the means through which the Defendants were able to execute their scheme to defraud.

194.    On information and belief, the fraudulent wholesale invoices and prescriptions were provided with the knowledge that they would be submitted to insurers, in general, and Plaintiffs, in particular, to obtain reimbursement under the No-fault Law in excess of the actual cost of the DME and/or orthotic devices purportedly provided.

195.    On information and belief, in furtherance of the scheme to defraud alleged herein, the Retailers routinely submitted fraudulent bills seeking the maximum possible amount of reimbursement under the No-fault law for expensive DME and/or orthotic devices that were never actually provided or not provided as billed and/or, if provided, provided pursuant to a predetermined course of treatment, without regard to medical necessity.

196.    On information and belief, in many cases the Retailer Owners, through their Retailers, never actually provided the DME for which they billed Plaintiffs. By way of example and not limitation, Exhibit "3" in the accompanying Compendium of Exhibits is a spreadsheet identifying a representative sample of claims in which claimants testified during an EUO that they did not receive the DME for which one or more of the Retailers submitted bills to Plaintiffs.

197.    On information and belief, in furtherance of the scheme to defraud alleged herein, like the wholesale invoices, the Retailers' bills intentionally omitted the make, model and manufacturer of the DME and/or orthotic devices purportedly provided to No-fault Claimants in order to conceal the fact that the DME and/or orthotic devices purportedly provided were inexpensive and of poor quality, to the extent they were provided at all.

198.    On information and belief, in furtherance of the scheme to defraud alleged herein, upon receiving the fraudulent wholesale invoices from the Wholesale Defendants the Retailers, as a matter of pattern and practice, generated and submitted bills to Plaintiffs knowingly misrepresenting the actual amounts that they paid for DME and/or orthotic devices.

199.    By way of example and not limitation, and as set forth below in the "Non-Fee

Schedule Scheme to Defraud" section, the Retail Owners, through their respective Retailers, routinely submitted bills to Plaintiffs for Non-Fee Schedule items wherein the Retailers misrepresented that (i) certain DME and/or orthotic devices were reimbursable under the relevant Fee Schedule in existence at the time when, in fact, the Retailers were utilizing phantom codes for which there was no published fee schedule; (ii) the charges reflected on the Retailers' bills for Non-Fee Schedule items were the lesser of their acquisition costs or the usual and customary prices charged to the general public; and/or (iii) the Fee Schedule codes and descriptions contained in the Retailers' bills corresponded with the equipment purportedly provided.

200.    In addition, as set forth below in the "Fee Schedule Scheme to Defraud" section below, the Retail Owners, through their respective Retailers routinely submitted fraudulent bills to Plaintiffs (i) in support of expensive custom-fitted DME and/or orthotic devices, such as LSOs, knee, wrist, elbow and shoulder braces that were never provided; (ii) in support of expensive DME and/or orthotic devices that required a fitting and/or adjustment that they never performed; and/or (iii) which sought reimbursement rates for DME and/or orthotic devices in excess of the relevant fee schedule in existence at the time.

201.    On information and belief, in furtherance of the scheme to defraud and to maximize reimbursement from Plaintiffs, each and every bill submitted by the Retailers deliberately obscured all identifying information relating to the billed for DME and/or orthotic devices so as to prevent Plaintiffs from determining the appropriate charges associated with any such DME and/or orthotic device or whether the specific DME and/or orthotic device was medically necessary.

202.    On information and belief, in furtherance of the scheme to defraud alleged herein, the Retail Owners, through their respective Retailers, routinely submitted fraudulent bills in support of expensive custom fabricated DME and/or orthotic devices, such as LSOs, knee, wrist,

elbow and shoulder braces that were never provided.  In other instances, the Retail Owners, through their respective Retailers, routinely submitted fraudulent bills in support of expensive DME and/or orthotic devices that required a fitting and/or adjustment that they never performed. By way of example and not limitation, Exhibit "4" in the accompanying Compendium of Exhibits is a spreadsheet containing a representative sample of claims in which one or more of the Retail Owners, through their respective Retailers, billed for expensive custom fabricated DME and/or orthotic devices that were never provided.  In addition, Exhibit "5" in the accompanying Compendium of Exhibits is a representative sample of claims in which one or more of the Retail Owners, through their respective Retailers, billed for supports and/or braces that required fittings and adjustments which they never performed.

203.    On information and belief, Defendants' activity promoted and facilitated other acts that imposed costs onto Plaintiffs well beyond the insurance proceeds that Defendants collected, including, but not limited to, Plaintiffs' expenditures for verifying each fraudulent claim through examinations under oath, associated attorneys' and court reporting fees, independent medical examinations ("IME") and peer reviews.

## THE NON-FEE SCHEDULE SCHEME TO DEFRAUD

**1.    Fraudulent Billing Under Phantom Codes Not Recognized in the Fee Schedule**

204.    On information and belief, in furtherance of the scheme to defraud alleged herein, the Retail Owners, through their respective Retailers, including, but not limited to, Advanced Medical Supply, B & Y Surgical Supplies, Excel Medical Supplies, Five Boro Medical Equipment, G & A Medical Supply, Health Aid Medical Supply, IG Medical Supply, Kun Medical Supply, Lender Medical Supply, Longevity Medical Supply, Multi Service of NY, New Way Medical Supply, Next Century Enterprises, OS Ortho Services, OrthoPlus Products, Premier DME, ProDME, Quality Service Supplies, Six Star Supply, SVP Medsupply, TSM Medical

Supply & Orthocare, Ultimate Health Products, Unlimited Medical Supply Services, V+B Magic Recovery Supply and Vladenn Medical Supply, routinely submitted bills for Non-Fee Schedule items, wherein they misrepresented that those items were reimbursable under the Fee Schedule when, in fact, they were utilizing phantom codes that were not listed on the relevant Fee Schedule in existence at the time. Exhibit "6" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the aforementioned Retailers fraudulently submitted bills for Non-Fee Schedule items, using phantom codes.

205.    By way of example and not limitation, the Retail Owners, through their respective Retailers, including Advanced Medical Supply, B & Y Surgical Supplies, Excel Medical Supplies, Five Boro Medical Equipment, G & A Medical Supply, Goldstar Equipment, Kun Medical Supply, Lender Medical Supply, Multi Service of NY, New Way Medical Supply, Next Century Enterprises, OS Ortho Services, ProDME, Six Star Supply, Soho Medical Supplies, TSM Medical Supply & Orthocare and V+B Magic Recovery Supply, routinely submitted bills to Plaintiffs for "hydrotherapy whirlpools" and/or "whirlpools" using phantom codes E1300 and E1310, which were not recognized under the relevant Fee Schedule in existence at the time, in amounts ranging from $413.00 to $620.00, notwithstanding that, to the extent anything was provided, the whirlpools are inexpensive "jet spas" which should have been billed at no more than $60.00.   Exhibit "7" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one of more Plaintiffs where the aforementioned Retailers submitted bills for whirlpools using a phantom code not recognized under the relevant Fee Schedule in existence at the time.

206.    On information and belief, by billing under the phantom codes for the whirlpools, the Retail Owners, through their respective Retailers, billed and were paid almost seven to ten times more than they would have otherwise have been entitled to receive under the No-fault Law.

207. By way of further example and not limitation, the Retail Owners, through their respective Retailers, including, but not limited to, Five Boro Medical Equipment, Kun Medical Supply, Lender Medical Supply, Multi Service of NY, New Way Medical Supply, OS Ortho Services, ProDME, TSM Medical Supply & Orthocare and Unlimited Medical Supply Services, routinely submitted bills to Plaintiffs for "Water Circulating Pad with Pump" and/or "Water Circulating Pump" units using phantoms codes E0217 and E0237, which are not recognized in the Fee Schedule, in amounts ranging from $422.00 to $689.00, notwithstanding that, to the extent anything was provided, the water circulating units and pads were aqua relief systems that should have been billed at no more than $200.00. Exhibit "8" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the aforementioned Retailers submitted bills for a water circulation unit using a phantom code not recognized under the relevant Fee Schedule in existence at the time.

208. On information and belief, by billing under the phantom codes for the water circulation units, the Retail Owners, through their respective Retailers, billed and were paid up to three times what they would have otherwise have been entitled to receive under the No-fault Law.

209. On information and belief, separate and apart from billing for whirlpools and water circulation units under phantom codes not recognized under the Fee Schedule, the Retail Owners, through their respective Retailers, routinely submitted bills for other Non-Fee Schedule items using phantom codes in which they materially misrepresented that the items were reimbursable under the relevant Fee Schedule in existence at the time and the amount they were entitled to receive. By way of example and not limitation:

- The Retail Owners, through their respective Retailers, including, but not limited to, Five Boro Medical Equipment, Health Aid Medical Supply, Goldstar Equipment, IG Medical Supply, Lender Medical

Supply, OrthoPlus, Premier DME, Six Star Supply and V+B Magic Recovery Supply, routinely submitted bills to Plaintiffs for "bed boards" in amounts ranging from $81.00 to $115.00 using phantom code E0273 and/or E0315, notwithstanding that, to the extent any DME was provided, the bed board purportedly supplied was an inexpensive, thin piece of foldable cardboard or other material, reimbursable, if at all, as a Non-Fee Schedule item, for which the usual and customary price charged to the general public is no more than $40.00. Exhibit "9" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the aforementioned Retailers submitted bills for bed boards using a phantom code not recognized under the relevant Fee Schedule in existence at the time.

- The Retail Owners, through their respective Retailers, including, but not limited to, B & Y Surgical Supplies, Longevity Medical Supply and Next Century Enterprises, routinely submitted bills to Plaintiffs for "car seats" in amounts ranging from $182.00 to $219.41 using phantom code M1005, notwithstanding that, to the extent any DME was provided, the car seats purportedly provided were actually inexpensive bubble pads, reimbursable, if at all, as a Non-Fee Schedule item, for which the usual and customary price charged to the general public is no more than $13.00. Exhibit "10" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the aforementioned Retailers submitted bills for car seats using a phantom code not recognized under the relevant Fee Schedule in existence at the time.

- The Retail Owners, through their respective Retailers, including Advanced Medical Supply, B & Y Surgical Supplies, Excel Medical Supplies, G & A Medical Supply, Health Aid Medical Supply, Kun Medical Supply, Lender Medical Supply, Multi Service of NY, Next Century Enterprises, OS Ortho Services, OrthoPlus, Premier DME, ProDME, Six Star Supply, Soho Medical Supplies, SVP Medsupply, TSM Medical Supply & Orthocare, Ultimate Health Products and V+B Magic Recovery Supply, routinely submitted bills to Plaintiffs for E.M.S. Units and /or E.M.S. Unit Four Leads ("EMS Units"), using phantom codes E0744, E0745 and K0118 in amounts ranging from $127.00 to $ 882.75, notwithstanding that, to the extent anything was provided, the EMS Units are actually cheap "digital therapy machines" and/or TENS Units, reimbursable, if at all, as Non-Fee Schedule items, for which the usual and customary price charged to the general public is no more than $30.00. Exhibit "11" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the aforementioned Retailers submitted bills for EMS Units using a phantom code not recognized under the relevant Fee Schedule in existence at the time.

- The Retail Owners, through their respective Retailers, including B &

Y Surgical Supplies, Excel Medical Supplies, Health Aid Medical Supply, Kun Medical Supply, Lender Medical Supply, Longevity Medical Supply, Multi Service of NY, New Way Medical Supply, Next Century Enterprises, OrthoPlus, Premier DME, ProDME, Quality Service Supplies, Six Star Supply, Soho Medical Supplies, SVP Medsupply, TSM Medical Supply & Orthocare and Ultimate Health Products, routinely submitted bills to Plaintiffs for "infrared heat lamps" in amounts in ranging from $157.45 to $225.00 using phantom codes E0200, E0205 and E0221, notwithstanding that, to the extent any DME was provided, the infrared heat lamps purportedly provided were actually cheap, hand held heat lamps, reimbursable, if at all, as a Non-Fee Schedule item, for which the usual and customary price charged to the general public is no more than $20.00. Exhibit "12" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the aforementioned Retailers submitted bills for infrared heat lamps using a phantom code not recognized under the relevant Fee Schedule in existence at the time.

- The Retail Owners, through their respective Retailers, including, but not limited to, B & Y Surgical Supplies, Next Century Enterprises, Quality Service Supplies and V+B Magic Recovery Supply, routinely submitted bills to Plaintiffs for "hot/cold packs" and/or "cold packs" in amounts ranging from $32.94 to 104.11 using phantom code E9999 and/or E0230, notwithstanding that, to the extent any DME was provided, the hot/cold packs were inexpensive items, reimbursable, if at all, as a Non-Fee Schedule item, for which the usual and customary price charged to the general public is no more than $5.00. Exhibit "13" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the aforementioned Retailers submitted bills for hot/cold packs using a phantom code not recognized under the relevant Fee Schedule in existence at the time.

- The Retail Owners, through their respective Retailers, including Advanced Medical Supply, Kun Medical Supply, Multi Service of NY, Next Century Enterprises, OS Ortho Services, Premier DME, Six Star Supply, Soho Medical Supplies, TSM Medical Supply & Orthocare and Vladenn Medical Supply, routinely submitted bills to Plaintiffs for "vibrating deep heat massagers" and/or "back massagers" in amounts ranging from $76.25 to $499.74 using phantom codes 99070, notwithstanding that, to the extent any DME was provided, the massagers purportedly provided were actually simple, hand held massagers, reimbursable, if at all, as a Non-Fee Schedule item, for which the usual and customary price charged to the general public is no more than $20.00. Exhibit "14" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the aforementioned Retailers submitted bills for massagers using a phantom code not recognized under the

relevant Fee Schedule in existence at the time.

- The Retail Owners, through their respective Retailers, including Advanced Medical Supply, B & Y Surgical Supplies, Excel Medical Supplies, G & A Medical Supply, Health Aid Medical Supply, Kun Medical Supply, Longevity Medical Supply, Multi Service of NY, Next Century Enterprises, OS Ortho Services, OrthoPlus, Premier DME, Six Star Supply, Soho Medical Supplies, SVP Medsupply, TSM Medical Supply & Orthocare, Ultimate Health Products and V+B Magic Recovery Supply, routinely submitted bills to Plaintiffs for "EMS Placement Belts" and/or "TENS/EMS Belts" in amounts ranging from $30.00 to $86.50 using phantom code E0731 and/or K0731, notwithstanding that, to the extent any DME was provided, the belts were thin cloth wraps lacking electrode pads, reimbursable, if at all, as a Non-Fee Schedule item, for which the usual and customary price charged to the general public is no more than $15.00. Exhibit "15" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the aforementioned Retailers submitted bills for EMS/TENS placement belts using a phantom code not recognized under the relevant Fee Schedule in existence at the time.

- The Retail Owners, through their respective Retailers, including B & Y Surgical Supplies, Excel Medical Supplies, Health Aid Medical Supply, Lender Medical Supply, Next Century Enterprises and Soho Medical Supplies, routinely submitted bills to Plaintiffs for "cervical pillows," "orthopedic cervical pillows" and/or "orthopedic cervical double loop pillows" in amounts ranging from $26.39 to $120.00 using phantom code E0943, notwithstanding that, to the extent any DME was provided, the cervical pillows purportedly supplied were simple cushions, reimbursable, if at all, as a Non-Fee Schedule item, for which the usual and customary price charged to the general public is no more than $8.00. Exhibit "16" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the aforementioned Retailers submitted bills for cervical pillows using a phantom code not recognized under the relevant Fee Schedule in existence at the time.

- The Retail Owners, through their respective Retailers, including Excel Medical Supplies, Health Aid Medical Supply, Longevity Medical Supply and Soho Medical Supplies, routinely submitted bills to Plaintiffs for "thermophores" and/or "electric heat pads moist" in the amount of $78.99 using phantom code Z2304, notwithstanding that, to the extent any DME was provided, the DME purportedly supplied were simple and inexpensive heating pads, reimbursable, if at all, as a Non-Fee Schedule item, for which the usual and customary price charged to the general public is no more than $10.00. Exhibit "17" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the

aforementioned Retailers submitted bills for thermophores and/or electric heat pads using a phantom code not recognized under the relevant Fee Schedule in existence at the time.

210.    By submitting to Plaintiffs bills that contained phantom codes not recognized under the relevant Fee Schedule in existence at the time, the Retail Owners, through their respective Retailers, deliberately misrepresented that their bills reflected either a reimbursement amount set by the Fee Schedule, or alternatively that their bills reflected the lesser of their acquisition cost, plus 50% or the usual and customary price for the public, when in reality, to the extent anything was provided, the items did not have a Fee Schedule code and the Retail Owners, through their respective Retailers, were entitled to receive only a fraction of the amount reflected in their bills.

211.    Consequently, by submitting to Plaintiffs bills that contained phantom codes not recognized under the relevant Fee Schedule in existence at the time, the Retail Owners, through their respective Retailers, deliberately misrepresented the amounts that they were entitled to receive and deceived Plaintiffs, among others, into paying many times over what they would have otherwise been entitled to receive under the No-fault Law, when, in reality, to the extent any DME and/or orthotic device was provided at all, the Retail Owners, through their respective Retailers, were entitled to receive only a fraction of the amount reflected in their bills.

212.    On information and belief, in addition to containing phantom codes that are not recognized under the relevant Fee Schedule in existence at the time, the Retailers' bills routinely contained grossly inflated charges, supported by fraudulent wholesale invoices, for DME and/or orthotic devices that were inexpensive and of poor quality.

**2.    Fraudulent Billing Using Code 1399**

213.    On information and belief, in furtherance of the scheme to defraud alleged herein, the Retail Owners, through their respective Retailers, including Advanced Medical Supply, B &

Y Surgical Supplies, Big Apple Ortho, Excel Medical Supplies, Five Boro Medical Equipment, G & A Medical Supply, Goldstar Equipment, Health Aid Medical Supply, IG Medical Supply, Kun Medical Supply, Lender Medical Supply, Longevity Medical Supply, Multi Service of NY, New Way Medical Supply, Next Century Enterprises, OS Ortho Services, OrthoPlus Products, Premier DME, ProDME, Quality Service Supplies, Six Star Supply, Soho Medical Supplies, SVP Medsupply, TSM Medical Supply & Orthocare, Ultimate Health Products, Ultra Ortho Products, V+B Magic Recovery Supply and VIP Medical Supplies, routinely submitted bills for Non-Fee Schedule items using Fee Schedule code E1399, which is reserved for miscellaneous items, and in doing so, they fraudulently misrepresented the nature and quality of the billed for DME and/or orthotic devices and their acquisition costs. Exhibit "18" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the above listed Retailers fraudulently submitted bills for Non-Fee Schedule items using Fee Schedule Code E1399.

214. By way of example and not limitation, the Retail Owners, through their respective Retailers, including B & Y Surgical Supplies, Excel Medical Supply, Health Aid Medical Supply, Lender Medical Supply, Multi Service of NY, OrthoPlus, ProDME, Quality Service Supplies, SVP Medsupply, Ultimate Health Products, Ultra Ortho Products and V+B Magic Recovery Supply, routinely submitted bills to Plaintiffs for massagers using code E1399, in amounts ranging from $112.50 to $240.00, falsely representing that the amount billed is the lesser of the usual and customary price charged to the general public or the Retailer's acquisition cost plus 50%, when, on information and belief, to the extent anything was provided, the massagers were simple, hand-held massagers for which the usual and customary price charged to the general public did not exceed $20.00. Exhibit "19" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs where one or more of the Retailers materially

misrepresented the nature and quality of the massagers billed for and their acquisition costs,

submitting bills for massagers under code E1399.

215.   By way of further example and not limitation:

- Defendant Kaputsta, through Next Century Enterprises, routinely submitted bills to Plaintiffs for bed boards using code E1399 in the amount of $120.00, falsely representing that these amounts were the lesser of the usual and customary prices charged to the public or the Retailers' acquisition cost plus 50%, when, on information and belief, to the extent anything was provided, the bed boards purportedly supplied were inexpensive thin pieces of cardboard or other material for which the usual and customary price charged to the general public is not more than $40.00.   Exhibit "20" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the aforementioned Retailer submitted fraudulent bills for bed boards using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including Kun Medical Supply, Quality Service Supplies, Six Star Supply and Ultra Ortho Products, routinely submitted bills to Plaintiffs for car seats using code E1399 in amounts ranging from $181.00 to $210.00, falsely representing that these amounts were the lesser of the usual and customary prices charged to the public or the Retailers' acquisition cost plus 50%, when, on information and belief, to the extent anything was provided, the car seats purportedly supplied were inexpensive bubble pads or other material for which the usual and customary price charged to the general public is not more than $13.00. Exhibit "21" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the aforementioned Retailers submitted fraudulent bills for car seats using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including Excel Medical Supplies, Lender Medical Supply and SVP Medsupply, routinely submitted bills to Plaintiffs for hot/cold packs using code E1399 in amounts ranging from $20.00 to $41.50, falsely representing that these amounts were the lesser of the usual and customary prices charged to the public or the Retailers' acquisition cost plus 50%, when, on information and belief, to the extent anything was provided, the hot/cold packs purportedly supplied were inexpensive, one-time use, disposable packs for which the usual and customary price charged to the general public is not more than $5.00. Exhibit "22" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the aforementioned Retailers submitted fraudulent bills for hot/cold packs using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including B & Y Surgical Supplies, Excel Medical Supplies, Longevity Medical Supply, Next Century Enterprises, Premier DME and ProDME, routinely submitted bills to Plaintiffs for lumbar cushions using code E1399 in amounts ranging from $27.00 to $172.94, falsely representing that these amounts were the lesser of the usual and customary prices charged to the public or the Retailers' acquisition cost plus 50%, when, on information and belief, to the extent anything was provided, the lumbar cushions purportedly supplied were inexpensive cushions for which the usual and customary price charged to the general public is not more than $10.00. Exhibit "23" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the aforementioned Retailers submitted fraudulent bills for lumbar cushions using Fee Schedule Code E1399.

- Defendant Dzhaginov, through OrthoPlus Products, routinely submitted bills to Plaintiffs for thermophores using code E1399, in the amount of $84.00, falsely representing that this amount was the lesser of the usual and customary prices charged to the public or the Retailers' acquisition cost plus 50%, when, on information and belief, to the extent anything was provided, the thermophores purportedly supplied were inexpensive heat pads, for which the usual and customary price charged to the general public is not more than $10.00. Exhibit "24" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the aforementioned Retailer submitted fraudulent bills for thermophores using Fee Schedule Code E1399.

## 3.   Fraudulent Billing of Non-Fee Schedule Items under Fee Schedule Codes

216.   On information and belief, in furtherance of the scheme to defraud alleged herein, the Retail Owners, through their respective Retailers, routinely submitted bills to Plaintiffs for Non-Fee Schedule Items using codes reserved for Fee Schedule Items in order to maximize the fraudulent charges they could submit to Plaintiffs, despite the fact that they never provided the billed-for items. By way of example and not limitation, the Retail Owners, through their respective Retailers, including Advanced Medical Supply, B & Y Surgical Supplies, Big Apple Ortho Products, Excel Medical Supplies, Five Boro Medical Equipment, G & A Medical Supply, Goldstar Equipment, Health Aid Medical Supply, IG Medical Supply, Kun Medical Supply, Lender Medical Supply, Longevity Medical Supply, Multi Service of NY, Next Century

Enterprises, New Way Medical Supply, OS Ortho Services, OrthoPlus Products, Premier DME, ProDME, Quality Service Supplies, Six Star Supply, Soho Medical Supplies, TSM Medical Supply & Orthocare, Ultimate Health Products, Ultra Ortho Products, V+B Magic Recovery and VIP Medical Supplies, routinely submitted bills to Plaintiffs for "egg crate mattresses," which is a Non-Fee Schedule Item, using the Fee Schedule code E0272, which is reserved for a "Foam Rubber Mattress" reimbursable in the maximum amount of $97.50 or $155.67, depending on the year the DME was provided, and/or Fee Schedule code E0184, which is reserved for "Dry Pressure Mattresses" reimbursable in the maximum amount of $153.15.

217.    On information and belief, the Retailers never provided a foam rubber mattress to any No-fault Claimant.

218.    On information and belief, the Retailers never provided a Dry Pressure Mattress to any No-fault Claimant.

219.    On information and belief, to the extent any DME and/or orthotic device was provided, the Retailers provided simple bubble mattress pads, which they described as "egg crate mattresses," for which the usual and customary price charged to the general public did not exceed $37.00.

220.    On information and belief, by submitting bills using codes E0272 and/or E0184, the Retail Owners, through their respective Retailers, materially misrepresented that they provided foam rubber or dry pressure mattresses, when they did not, and also materially misrepresented that the item purportedly provided was a Fee Schedule item, seeking reimbursement in amounts upwards of four times what would otherwise have been a permissible charge for the Non-Fee Schedule item.    Exhibit "25" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs where one or more of the Retailers materially misrepresented the nature and quality of the egg crate mattresses billed for

64

and their acquisition costs by billing for the Non-Fee Schedule DME under a Fee Schedule code.

221. By way of further example and not limitation, the Retail Owners, through their respective Retailers, including Advanced Medical Supply, B & Y Surgical Supplies, Big Apple Ortho Products, Excel Medical Supplies, Health Aid Medical Supply, Kun Medical Supply, Lender Medical Supply, Longevity Medical Supply, Next Century Enterprises, New Way Medical Supply, OS Ortho Services Premier DME, ProDME, Quality Service Supplies, Soho Medical Supplies, TSM Medical Supply & Orthocare, Ultimate Health Products and Ultra Ortho Products, routinely submitted bills to Plaintiffs for "bed boards," which is a Non-Fee Schedule item, using Fee Schedule code E0274, which is reserved for a "Table, Overbed" reimbursable in the maximum amount of $101.85.

222. On information and belief, the Retailers never provided an overbed table to any No-fault Claimant.

223. On information and belief, to the extent any DME and/or orthotic device was provided, the Retailers provided inexpensive, thin pieces of foldable cardboard or other material, which they described as "bed boards," for which the usual and customary price charged to the general public did not exceed $40.00.

224. On information and belief, by submitting bills using code E0274, the Retail Owners, through their respective Retailers, materially misrepresented that they provided overbed tables, when they did not, and also materially misrepresented that the item purportedly provided was a Fee Schedule item, seeking reimbursement in amounts more than two times what would otherwise have been a permissible charge for the Non-Fee Schedule item. Exhibit "26" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs where one or more of the Retailers materially misrepresented the nature and quality of the bed boards billed for and their acquisition costs by billing for the non-Fee Schedule DME under a

Fee Schedule code.

## FEE SCHEDULE SCHEME TO DEFRAUD

**1.     Fraudulent Billing for Custom Fabricated or Custom Fit DME and/or Orthotic Devices.**

225.    On information and belief, the term "custom-fabricated" as used in the New York State Fee Schedule refers to any DME, orthopedic footwear, orthotics or prosthetics fabricated solely for a particular person from mainly raw materials that cannot be readily changed to conform to another person's needs.

226.    On information and belief, raw materials are used to create custom-made DME, orthopedic footwear, orthotics or prosthetics based on a particular person's measurements, tracings and patterns.

227.    On information and belief, to bill under any Fee Schedule code reserved for custom-made DME and/or orthotic devices, a retailer is required to measure the recipient of the items and fabricate the custom-made item based on those measurements.

228.    On information and belief, in furtherance of the scheme to defraud, the Retail Owners, through their respective Retailers, routinely submitted fraudulent bills in support of expensive custom fabricated DME and/or orthotic devices, despite the fact that to the extent anything was provided, the DME and/or orthotic devices were cheap, elastic, one-size-fits-all items that were not custom fabricated to the Claimants' measurements.

229.    On information and belief, in addition to submitting bills for custom fabricated devices that were never provided, the Retail Owners, through their respective Retailers, routinely submitted fraudulent bills in support of expensive pre-fabricated DME and/or orthotic devices that required a fitting and adjustment to the purported Claimant's measurements, which they never provided.

230.    By way of example and not limitation, under the relevant Fee Schedule in

66

existence at the time, the permissible charges for lumbosacral orthoses ("LSOs") range from $43.27, under code L0625 for basic, prefabricated LSOs that require a fitting and adjustment, to $1,150.00 under code L0632 for more complex LSOs that are custom fabricated.

231. On information and belief, in furtherance of the scheme to defraud, and to ensure they received the maximum reimbursement permitted under the relevant Fee Schedule in existence at the time for LSOs, the Retail Owners, through their respective Retailers, including Five Boro Medical Equipment, Goldstar Equipment, IG Medical Supply, Kun Medical Supply, Lender Medical Supply, Longevity Medical Supply, Multi Service of NY, Next Century Enterprises, New Way Medical Supply, OS Ortho Services, OrthoPlus Products, Premier DME, Six Star Supply, TSM Medical Supply & Orthocare, Unlimited Medical Supply, Ultra Ortho Products and Vladenn Medical Supply, routinely submitted fraudulent bills for LSOs using codes L0629, L0632 and/or L0638, which are reserved for more complex custom fabricated DME and/or orthotic devices. Exhibit "27" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs where one or more of the Retailers fraudulently billed for LSOs using codes L0629, L0632 and/or L0638.

232. On information and belief, by billing LSOs under codes L0629, L0632 and/or L0638, the Retail Owners, through their respective Retailers, falsely represented that they measured the No-fault Claimant who purportedly received the DME and/or orthotic device, when they did not, and that they fabricated the DME and/or orthotic device solely for a particular No-fault Claimant from mainly raw materials based on the No-fault Claimants' measurements, tracings and patterns, which they did not.

233. On information and belief, separate and apart from billing for custom fabricated LSOs, the Retail Owners, through their respective Retailers, including Advanced Medical Supply, B & Y Surgical Supplies, Big Apple Ortho Products, Excel Medical Supplies, Five Boro

Medical Equipment, G & A Medical Supply, Goldstar Equipment, Health Aid Medical Supply, IG Medical Supply, Lender Medical Supply, Longevity Medical Supply, Next Century Enterprises, New Way Medical Supply, OS Ortho Services, OrthoPlus Products, Premier DME, ProDME, Quality Service Supplies, Six Star Supply, Soho Medical Supplies, SVP Medsupply, TSM Medical Supply & Orthocare, Ultimate Health Products, Ultra Ortho Products, V+B Magic Recovery Supply and VIP Medical Supplies, routinely submitted bills for LSOs using codes reserved for prefabricated DME and/or orthotic devices that require a fitting or adjustment, including, but not limited to, L0625, L0627, L0628, L0630, L0631, L0633, L0635 and/or L0637, notwithstanding that a fitting or adjustment was never performed. Exhibit "28" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs where one or more of the Retailers fraudulently billed for LSOs using codes L0625, L0627, L0628, L0630, L0631, L0633, L0635, L0637 and/or L0639.

234.    Under the relevant Fee Schedule in existence at the time, the permissible charges for knee braces range from $65.00, under code L1830, for a prefabricated knee brace that requires a fitting and adjustment, to $1,107.70, under code L1844, for more complex models that are custom fabricated.

235.    On information and belief, the Retail Owners, through their respective Retailers, including Five Boro Medical Equipment, Lender Medical Supply, OrthoPlus Products, Six Star Supply and V+B Magic Recovery Supply, routinely submitted bills to Plaintiffs seeking reimbursement for expensive custom fabricated knee braces billed under codes L1840, L1844 and/or L1846 that were never provided. By way of example and not limitation, Exhibit "29" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs where one or more of the Retailers submitted fraudulent bills for knee braces, using codes L1840, L1844 and/or L1846, which were never provided.

236.    On information and belief, to the extent any DME and/or orthotic devices were provided, the Retail Owners, through their respective Retailers, provided cheap, elastic, one-size-fits-all knee braces, which were not custom made to the Claimants' measurements and for which no fitting and/or adjustment was ever performed.

237.    On information and belief, by billing knee braces under codes L1840, L1844 and L1846, the Retail Owners, through their respective Retailers, falsely represented that they measured the No-fault Claimant who purportedly received the DME and/or orthotic device, when they did not, and that they fabricated the DME and/or orthotic device solely for a particular No-fault Claimant from mainly raw materials based on the No-fault Claimant's measurements, tracings and patterns, which they did not.

238.    On information and belief, separate and apart from billing for custom fabricated knee braces, the Retail Owners, through their respective Retailers, including B & Y Surgical Supplies, Excel Medical Supplies, Five Boro Medical Equipment, Goldstar Equipment, Health Aid Medical Supply, Kun Medical Supply, Lender Medical Supply, Longevity Medical Supply, Multi Service of NY, Next Century Enterprises, New Way Medical Supply, OrthoPlus Products, ProDME, Quality Service Supplies, Six Star Supply, SVP Medsupply, TSM Medical Supply & Orthocare and V+B Magic Recovery Supply, routinely submitted bills for knee braces using codes L1800, L1810, L1815, L1820, L1830, L1831, L1832, L1845 and/or L1880, which are reserved for prefabricated DME and/or orthotic devices that require a fitting or adjustment, which was never performed. By way of example and not limitation, Exhibit "30" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs where one or more of the Retailers submitted fraudulent bills for knee braces using codes L1800, L1810, L1815, L1820, L1830, L1831, L1832, L1845 and/or L1880.

239.    Under the relevant Fee Schedule in existence at the time, the permissible charges

69

for a shoulder support range from $40.00, under code L3650, for a prefabricated shoulder support that requires a fitting and adjustment, to $935.49, under code L3673, for more complex custom fabricated DME and/or orthotic devices.

240.    On information and belief, in furtherance of the scheme to defraud, and to ensure they received the maximum reimbursement permitted under the relevant Fee Schedule in existence at the time for shoulder supports, the Retail Owners, through their respective Retailers, including B & Y Surgical Supplies, Excel Medical Supplies, Five Boro Medical Equipment, Lender Medical Supply, Multi Service of NY, Next Century Enterprises, Quality Service Supplies and Six Star Supply, routinely submitted fraudulent bills for shoulder supports using codes L3650, L3652, L3660 and/or L3670, despite the fact that the billed for item was never provided or not provided as billed and/or provided pursuant to a predetermined course of treatment, irrespective of medical necessity. Exhibit "31" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs where one or more of the Retailers submitted fraudulent bills for shoulder supports using codes L3650, L3652, L3660 and/or L3670.

241.    On information and belief, to the extent any DME and/or orthotic devices were provided, the Retail Owners, through their respective Retailers, provided cheap, elastic, one-size-fits-all shoulder supports for which no fitting and/or adjustment was ever performed.

242.    Under the relevant Fee Schedule in existence at the time, the permissible charges for wrist supports ranged from $47.50, under code L3908, for a prefabricated wrist support that requires a fitting and adjustment, to $1,472.96, under code L3901, for more complex custom fabricated DME and/or orthotic devices.

243.    On information and belief, in furtherance of the scheme to defraud, and to ensure they received the maximum reimbursement permitted under the relevant Fee Schedule in

existence at the time for wrist supports, the Retail Owners, through their respective Retailers, including Excel Medical Supplies, Health Aid Medical Supply and Ultimate Health Products, routinely submitted fraudulent bills for wrist supports that were never provided using code L3808, which is reserved for more complex custom fabricated DME and/or orthotic devices. By way of example and not limitation, in connection with claims 0116393521-01, 0117461178-03, 0132529264-09, 0144762127-06, 0148828676-06, 0197792856-05 and 0187364054-01, the foregoing Retailers submitted bills for wrist supports using code L3808, which were paid by Plaintiffs.

244.    On information and belief, to the extent any DME and/or orthotic devices were provided, the Retail Owners, through their respective Retailers, provided cheap, elastic, one-size-fits-all wrist supports, which were not custom made to the Claimants' measurements and for which no fittings and/or adjustments were ever performed.

245.    On information and belief, by billing wrist supports under code L3808, the Retail Owners, through their respective Retailers, falsely represented that they measured the No-fault Claimant who purportedly received the DME and/or orthotic device, when they did not; and that they fabricated the DME and/or orthotic device solely for a particular No-fault Claimant from mainly raw materials based on the No-fault Claimant's measurements, tracings and patterns, which they did not do.

246.    On information and belief, separate and apart from billing for custom fabricated wrist supports, the Retail Owners, through their respective Retailers, including B & Y Surgical Supplies, Five Boro Medical Equipment, Health Aid Medical Supply, Kun Medical Supply, Lender Medical Supply, Longevity Medical Supply, Multi Service of NY, ProDME, TSM Medical Supply & Orthocare, V+B Magic Recovery Supply and Vladenn Medical Supply, routinely submitted bills for wrist supports using codes L3807, L3908 and/or L3931, which are

reserved for prefabricated DME and/or orthotic devices that require a fitting or adjustment that was never performed. By way of example and not limitation, Exhibit "32" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs where one or more of the Retailers submitted fraudulent bills for wrist supports using codes L3807, L3908, L3763 and/or L3931.

247. Under the relevant Fee Schedule in existence at the time, the permissible charges for elbow supports range from $8.99 under code L3701, for basic, prefabricated supports, to $1091.24 under code L3740 for more complex supports, which include a fitting and/or adjustment.

248. On information and belief, in furtherance of the scheme to defraud, and to ensure they received the maximum reimbursement permitted under the relevant Fee Schedule in existence at the time for elbow supports, the Retail Owners, through their respective Retailers, including B & Y Surgical Supplies, Excel Medical Supplies, Five Boro Medical Equipment, Kun Medical Supply, Lender Medical Supply, Next Century Enterprises, New Way Medical Supply, OS Ortho Services, Quality Service Supplies, Six Star Supply, SVP Medsupply and V+B Magic Recovery Supply, routinely submitted fraudulent bills for elbow supports using codes L3700, L3710, L3760 and/or L3762, despite the fact that the billed for item was never provided or not provided as billed and/or provided pursuant to a predetermined course of treatment, irrespective of medical necessity. Exhibit "33" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs where one or more of the Retailers submitted fraudulent bills for elbow supports using codes L3700, L3710, L3760 and/or L3762.

249. On information and belief, to the extent any DME and/or orthotic devices were provided, the Retail Owners, through their respective Retailers, provided cheap, elastic, one-size-fits-all elbow supports, for which no fitting and/or adjustment was ever performed.

250.   Under the relevant Fee Schedule in existence at the time, the permissible charges for ankle braces ranged from $8.09, under code L1901, for basic, prefabricated ankle braces that require a fitting and adjustment, to $750.00, under code L1970, for more complex items that are custom fabricated.

251.   On information and belief, in furtherance of the scheme to defraud, and to ensure they received the maximum reimbursement permitted under the relevant Fee Schedule in existence at the time for ankle braces, the Retail Owners, through their respective Retailers, including, B & Y Surgical Supplies, Excel Medical Supplies, Five Boro Medical Equipment, G & A Medical Supply, Goldstar Equipment, Health Aid Medical Supply, Kun Medical Supply, Next Century Enterprises, OS Ortho Services, ProDME, Six Star Supply, SVP Medsupply, TSM Medical Supply & Orthocare and V+B Magic Recovery Supply, routinely submitted fraudulent bills for ankle braces using codes L1902 and/or L1906, despite the fact that the billed for items were never provided or not provided as billed and/or provided pursuant to a predetermined course of treatment, irrespective of medical necessity.   Exhibit "34" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs where one or more of the Retailers submitted fraudulent bills for ankle braces using codes L1902, L1905 and/or L1906.

252.   On information and belief, to the extent any DME and/or orthotic devices were provided, the Retail Owners, through their respective Retailers, provided cheap, elastic, one-size-fits-all ankle braces, for which no fitting and/or adjustment was ever performed.

**2.   Fraudulent Billing in Excess of the Fee Schedule**

253.   On information and belief, in contravention of 12 N.Y.C.R.R. § 442.2, which provides that the maximum permissible charge for DME is the fee payable for such equipment under the New York State Medicaid program at the time the equipment is provided, the Retail

Owners, through their respective Retailers, including, but not limited to, Advanced Medical Supply, B & Y Surgical Supplies, Excel Medical Supplies, Five Boro Medical Equipment, Goldstar Equipment, Health Aid Medical Supply, IG Medical Supply, Lender Medical Supply, Multi Service of NY, Next Century Enterprises, OS Ortho Services, OrthoPlus Products, Premier DME, ProDME, Quality Service Supplies, Six Star Supply, Soho Medical Supplies, TSM Medical Supply & Orthocare, Ultimate Health Products, V+B Magic Recovery Supply and VIP Medical Supplies, routinely billed for dollar amounts greater than those set forth in the Fee Schedule. Exhibit "35" in the accompanying Compendium of Exhibits is a representative sample of claims where the foregoing Retailers billed one or more Plaintiffs in amounts greater than the dollar amounts set forth in the Fee Schedule.

254. By submitting bills to Plaintiffs for DME and/or orthotic devices in excess of the relevant Fee Schedule in existence at the time, the Retail Owners, through their respective Retailers, including, but not limited to, Advanced Medical Supply, B & Y Surgical Supplies, Excel Medical Supplies, Five Boro Medical Equipment, Health Aid Medical Supply, IG Medical Supply, Kun Medical Supply, Lender Medical Supply, Longevity Medical Supply, Multi Service of NY, Next Century Enterprises, OS Ortho Services, OrthoPlus Products, Premier DME, ProDME, Quality Service Supplies, Six Star Supply, TSM Medical Supply & Orthocare, Ultimate Health Products, Unlimited Medical Supply Services and V+B Magic Recovery Supply, deliberately misrepresented the amounts they were entitled to receive under the No-fault Law, to the extent that the DME and/or orthotic devices were provided at all. By way of example and not limitation:

- On information and belief, the Retail Owners, through their respective Retailers, including Lender Medical Supply, Premier DME and V+B Magic Recovery Supply, submitted bills to Plaintiffs for lumbar cushions using code E0190 up to and including $78.00 when, based on the Fee Schedule, DME provided under that code is only

74

reimbursable in the amount of $22.04. Exhibit "36" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs where the foregoing Defendants submitted bills for lumbar cushions in excess of the Fee Schedule amount using code E0190.

- On information and belief, the Retail Owners, through their respective Retailers, including B & Y Surgical Supplies, IG Medical Supply, Lender Medical Supply, Quality Service Supplies and V+B Magic Recovery Supply, submitted bills to Plaintiffs for thermophores and/or electric heat pads using code E0215 in amounts up to and including $141.68 when, based on the Fee Schedule, DME provided under that code is only reimbursable in the amount of $20.93. Exhibit "37" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs where the foregoing Defendants submitted bills for thermophores and/or electric heat pads in excess of the Fee Schedule amount using code E0215.

- On information and belief, the Retail Owners, through their respective Retailers, including Advanced Medical Supply, Next Century Enterprises, Premier DME and Quality Service Supplies, submitted bills to Plaintiffs for bed boards using code E0274 in amounts up to and including $237.00 when, based on the Fee Schedule, DME provided under that code is only reimbursable in the amount of $101.85. Exhibit "38" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs where the foregoing Defendants submitted bills for bed boards in excess of the Fee Schedule amount using code E0274.

- On information and belief, the Retail Owners, through their respective Retailers, including Multi Service of NY, Next Century Enterprises and Premier DME, submitted bills to Plaintiffs for cervical traction units using code E0855 in amounts up to and including $788.75 when, based on the Fee Schedule, DME provided under that code is only reimbursable in the amount of $502.63. Exhibit "39" in the accompanying Compendium of Exhibits is a representative sample of claims by Plaintiffs where the foregoing Defendants submitted bills for cervical traction units in excess of the Fee Schedule amount using code E0855.

- On information and belief, the Retail Owners, through their respective Retailers, including Excel Medical Supplies and Health Aid Medical Supply, submitted bills to Plaintiffs for cervical collars using code L0120 in amounts up to and including $23.25 when, based on the Fee Schedule, DME provided under that code is only reimbursable in the amount of $6.80. Exhibit "40" in the accompanying Compendium of Exhibits is a representative sample of claims by Plaintiffs where the foregoing Defendants submitted bills for cervical collars in excess of the Fee Schedule amount using code L0120.

- On information and belief, the Retail Owners, through their respective Retailers, including Lender Medical Supply, Next Century Enterprises, Premier DME, Quality Service Supplies and V+B Magic Recovery Supply, submitted bills to Plaintiffs for cervical collars using code L0172 in amounts up to and including $270.00 when, based on the Fee Schedule, DME provided under that code is only reimbursable in the amount of $75.00.    Exhibit "41" in the accompanying Compendium of Exhibits is a representative sample of claims by Plaintiffs where the foregoing Defendants submitted bills for cervical collars in excess of the Fee Schedule amount using code L0172.

- On information and belief, Defendant Valdman, through Retailer V+B Magic Recovery Supply, submitted bills to Plaintiffs for lumbar orthoses using code L0630 in amounts up to and including $306.00 when, based on the Fee Schedule, DME provided under that code is only reimbursable in the amount of $127.26.   Exhibit "42" in the accompanying Compendium of Exhibits is a representative sample of claims by Plaintiffs where the foregoing Defendant submitted bills for lumbar orthoses in excess of the Fee Schedule amount using code L0630.

- On information and belief, Defendant Ifraimov, through Retailer Quality Service Supplies, submitted bills to Plaintiffs for lumbar orthoses using code L0631 in amounts up to and including $885.25 when, based on the Fee Schedule, DME provided under that code is only reimbursable in the amount of $806.64.   Exhibit "43" in the accompanying Compendium of Exhibits is a representative sample of claims by Plaintiffs where the foregoing Defendant submitted bills for lumbar orthoses in excess of the Fee Schedule amount using code L0631.

- On information and belief, the Retail Owners, through their respective Retailers, including Next Century Enterprises and Premier DME, submitted bills to Plaintiffs for lumbar orthoses using code L0633 in amounts up to and including $530.14 when, based on the Fee Schedule, DME provided under that code is only reimbursable in the amount of $225.31.  Exhibit "44" in the accompanying Compendium of Exhibits is a representative sample of claims by Plaintiffs where the foregoing Defendants submitted bills for lumbar orthoses in excess of the Fee Schedule amount using code L0633.

3.    **Fraudulent Billing of Cervical Traction Units and Head Halters**

255.    On information and belief, the Retail Owners, through their respective Retailers, including B & Y Surgical Supplies, Excel Medical Supplies, Five Boro Medical Equipment, Goldstar Equipment, IG Medical Supply, Lender Medical Supply, Longevity Medical Supply,

Multi Service of NY, Next Century Enterprises, New Way Medical Supply, OS Ortho Services, OrthoPlus Products, Premier DME, ProDME, Quality Service Supplies, Six Star Supply, Soho Medical Supplies, TSM Medical Supply & Orthocare, Ultimate Health Products, Ultra Ortho Products, V+B Magic Recovery Supply, VIP Medical Supplies, and Vladenn Medical Supply, routinely submitted fraudulent bills to Plaintiffs for cervical traction units either as Non-Fee Schedule or Fee Schedule items.

256.    On information and belief, the cervical traction units purportedly provided by the aforementioned Retailers are inexpensive replicas or knockoffs of a trademarked cervical traction unit manufactured and sold by Posture Pump, with a wholesale price that is a fraction of the cost associated with the authentic device. By way of example and not limitation, Exhibit "45" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs where the aforementioned Retailers submitted fraudulent bills for a cervical traction device.

257.    With respect to billing cervical traction units as Non-Fee Schedule items, the Retail Owners, through their respective Retailers, including IG Medical Supply, Lender Medical Supply and Longevity Medical Supply, routinely submitted bills to Plaintiffs for cervical traction units, using the phantom code E0948 for amounts ranging from $447.04 to $760.00.

258.    On information and belief, by submitting bills for cervical traction units using phantom code E0948, the Retail Owners, through their respective Retailers, including Lender Medical Supply, Longevity Medical Supply and Ultimate Health Products, sought to maximize their reimbursement by deliberately deceiving Plaintiffs into paying up to eight times the maximum reimbursement rate permitted under 12 N.Y.C.R.R. § 442.2 for such items.

259.    By way of example and not limitation, to the extent the Retailers provided a cervical traction unit purportedly trademarked and/or manufactured by Posture Pump, on information and belief, the legitimate acquisition cost of such item is $65.00.

260.    Under 12 N.Y.C.R.R. § 442.2, if Defendant Retailers had provided a cervical traction unit trademarked and manufactured by Posture Pump, or comparable device, which they did not, the most that Defendants could have legitimately paid as their acquisition cost for a Posture Pump cervical traction unit would have been $65.00, and therefore, subject to a maximum reimbursement of $97.50, representing the acquisition cost, plus 50% or the usual and customary price charged to the public.  By way of example and not limitation, Exhibit "46" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs where one or more of the Retailers fraudulently billed for a cervical traction unit using a phantom code not recognized under the relevant Fee Schedule in existence at the time.

261.    With respect to billing cervical traction units as Fee Schedule items, the Retail Owners, through their respective Retailers, including B & Y Surgical Supplies, Excel Medical Supplies, Five Boro Medical Equipment, Goldstar Equipment, Longevity Medical Supply, Multi Service of NY, Next Century Enterprises, New Way Medical Supply, OS Ortho Services, OrthoPlus Products, Premier DME, Quality Service Supplies, Six Star Supply, Soho Medical Supplies, TSM Medical Supply & Orthocare, Ultimate Health Products, Ultra Ortho Products, V+B Magic Recovery, VIP Medical Supplies and Vladenn Medical Supply, routinely submitted bills for complex cervical traction units using Fee Schedule code E0855 at the maximum reimbursement rate of $502.63 or more when, to the extent anything was provided, these Retailers provided cervical traction units which should have been billed under code E0849 at the much lower reimbursement rate of $371.70.  By way of example and not limitation, Exhibit "47" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs where one or more of the Retailers fraudulently billed for cervical traction units under code E0855.

262.    On information and belief, irrespective of whether the Retailers, in general,

submitted bills for cervical traction units as Non-Fee Schedule or Fee Schedule items, to the extent anything was provided, the Retailers provided basic, inexpensive cervical traction units pursuant to a predetermined course of treatment, regardless of medical necessity.

263.    On information and belief, in addition to fraudulently billing for cervical traction units, in connection with claims 0113593677-01, 0114863995-04 and 0122566334-01, Defendant Kapusta, through Retailer Next Century Enterprises, submitted bills to Plaintiffs for head halters using code E0942, which is a phantom code not recognized in the relevant Fee Schedule, in the amount of $40.00 when, to the extent any such item was even provided, it was an accessory included with the cervical traction unit and not a separate reimbursable item.

**4.      Fraudulent Billing for DME and/or Orthotic Devices Not Provided**

264.    On information and belief, in furtherance of the scheme to defraud alleged herein, the Retail Owners, through their respective Retailers, routinely submitted bills to Plaintiffs for DME and/or orthotic devices that were never provided.  By way of example and not limitation, the Retail Owners, through their respective Retailers, including Advanced Medical Supply, B & Y Surgical Supplies, Big Apple Ortho Products, Excel Medical Supplies, Five Boro Medical Equipment, Goldstar Equipment, Health Aid Medical Supply, Kun Medical Supply, Lender Medical Supply, Longevity Medical Supply, Multi Service of NY, Next Century Enterprises, New Way Medical Supply, OrthoPlus Products, Premier DME, ProDME, Quality Service Supplies, Six Star Supply, Soho Medical Supplies, SVP Medsupply, TSM Medical Supply & Orthocare, Ultimate Health Products, Ultra Ortho Products, and V+B Magic Recovery Supply, routinely submitted bills to Plaintiffs for cervical collars under codes L0172 and L0174 in amounts up to and including $260.00.  By way of example and not limitation, Exhibit "48" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs where one or more of the Retailers submitted bills for cervical collars under codes L0172 and

L0174 in amounts ranging from $71.00 to $260.00.

265.    Under the relevant Fee Schedule in existence at the time, the permissible charges for cervical collars range from $6.80, under code L0120 for basic flexible, foam collars, to $130.00 for semi-rigid, thermoplastic, two-piece collars with a thoracic extension.

266.    On information and belief, to the extent any DME and/or orthotic device was provided, the Retail Owners, through their respective Retailers, provided basic, flexible, foam collars that were not semi-rigid, thermoplastic, two-piece collars.

267.    On information and belief, by billing cervical collars under codes L0172 and L0174, the Retail Owners, through their respective Retailers, falsely represented that they provided semi-rigid, thermoplastic, two-piece collars, when they did not.

268.    By way of further example and not limitation, the Retail Owners, through their respective Retailers, including Advanced Medical Supply, Five Boro Medical Equipment, Goldstar Equipment, Kun Medical Supply, Lender Medical Supply, Multi Service of NY, New Way Medical Supply, OS Ortho Services, OrthoPlus Products, Premier DME, Six Star Supply, TSM Medical Supply & Orthocare, V+B Magic Recovery Supply and Vladenn Medical Supply, routinely submitted bills to Plaintiffs seeking reimbursement for lumbar cushions using codes E2611, E2612 and/or E2619 in amounts up to and including $299.43.  Exhibit "49" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs where one or more of the Retailers submitted bills for lumbar cushions under code E2611, E2612 and/or E2619 in amounts ranging from $46.44 to $299.43.

269.    Under the relevant Fee Schedule in existence at the time, codes E2611 and E2612 are reserved for DME satisfying the description of "General Use W/C Back Cushion" and specifically reserved for lumbar support used in connection with a wheel chair.

270.    Under the relevant Fee Schedule in existence at the time, code E2619 is reserved

for "Replacement Covers for Wheelchair Seat Cushion."

271.    On information and belief, the Retailers did not provide to any No-fault Claimant a lumbar cushion or replacement cover used in connection with a wheelchair.

272.    On further information and belief, none of the No-fault Claimants that received a lumbar cushion or replacement cover from one or more of the Retailers was wheelchair bound.

273.    On information and belief, to the extent any DME and/or orthotic device was provided, the lumbar cushions were not specialized wheelchair cushions, but rather simple back cushions for use in any chair that would otherwise be reimbursable under code E0190 at $22.04.

274.    On information and belief, by billing lumbar cushions under codes E2611, E2612 and/or E2619, the Retail Owners, through their respective Retailers, falsely represented that they provided specialized wheelchair cushions and/or covers, when they did not.

## MONEY LAUNDERING SCHEME

275.    On information and belief, Defendants knew that the money paid by insurers, in general, and Plaintiffs, in particular, to the Retailers represented the proceeds and profits of their unlawful activity.

276.    On information and belief, to ensure that they would ultimately receive their ill-gotten gains, the Defendants engaged in a complex check cashing and/or money laundering scheme in furtherance of the scheme to defraud.

277.    On information and belief, these covert cash transactions were facilitated through various clandestine arrangements among one or more of the Retail Defendants, Wholesale Defendants, check brokers (who acted as intermediaries between the check cashers and the Retail and Wholesale Defendants in order to conceal the true beneficiaries of the transactions) and check cashers.

278.    On information and belief, and as described herein, the Defendant Retailers and

Defendant Wholesalers generated significant amounts of cash through transactions with check cashers. This cash was used to facilitate, among other things, the (i) secret cash kickback arrangements between the Defendant Retailers and Wholesale Defendants that were essential to foster the illusion that the Retailers actually paid the inflated amounts for DME and/or orthotic devices reflected on the wholesale invoices; (ii) secret cash kickback arrangements between the Defendant Retailers and No-fault Clinics, which were necessary to induce the clinics to supply the Defendant Retailers with prescriptions for bogus DME and/or orthotic devices; and (iii) the Defendant Retailers' and Defendant Wholesalers' transactions, which were intentionally disguised as business expenses in order evade corporate tax liabilities through false deductions and/or the under reporting of income, thereby maximizing the Defendants' profits from, and enhancing their incentives to continue, the fraudulent activities described herein.

279. On information and belief, Defendants routinely presented numerous checks to check cashers that were structured in amounts slightly under the $10,000 floor that would have triggered compulsory reporting to the government. These checks were (i) payable to entities that maintained bank accounts, but had no apparent business or lawful purpose; (ii) payable to fictitious payees intended to conceal the true beneficiaries of the transactions; and/or (iii) presented by "brokers" who acted as intermediaries between the check cashers, Retailers and Wholesale Defendants in order to conceal the true beneficiaries of the transactions.

280. On information and belief, in exchange for a nominal fee, all of the cash generated by the check cashing transactions involving the Wholesale Defendants was returned to the Retailers. In particular, in furtherance of the scheme to defraud, to create the illusion that the Retailers paid the grossly inflated prices on the invoices provided by the Wholesale Defendants, the Retailers issued checks to the Wholesale Defendants, among others, for the full amounts reflected on the wholesale invoice(s). The Retailers used those checks to demonstrate to

Plaintiffs, and others, that they paid the false wholesale invoice amounts.

281. In reality, on information and belief, the Wholesale Defendants converted the checks they received from the Retailers to cash and secretly returned cash to the Retailers up to 90% of the wholesale invoice amounts.

282. On information and belief, through these transactions, the Retailers were able to surreptitiously obtain cash, which in turn would be used to, among other things, pay kickbacks to the No-fault Clinics in exchange for prescriptions of DME and/or orthotic devices, and to the Wholesale Defendants in exchange for inflated wholesale invoices, thereby maintaining a symbiotic relationship necessary to facilitate the scheme to defraud.

### DISCOVERY OF THE FRAUD

283. On information and belief, to induce Plaintiffs to promptly reimburse their claims for DME and/or orthotic devices, Defendants have gone to great lengths to systematically conceal their fraud. By way of example and not limitation:

- The Retail Owners, through their respective Retailers, routinely and deliberately (1) failed to submit wholesale invoices with their initial bill submissions, thereby concealing the amounts that the Retailers actually paid for any DME and/or orthotic devices, the manufacturer, make, model, size and quality of the goods, and the actual value of the goods in a legitimate marketplace; or (2) submitted fraudulent wholesale invoices from one ore more of the Wholesale Defendants, reflecting prices far in excess of those actually paid by the Retailers to the extent necessary to support the fraudulent charges;

- With respect to Fee Schedule Items, the Retail Owners, through their respective Retailers, routinely misrepresented in the bills submitted to Plaintiffs that they provided more expensive items from the middle or top end of the Fee Schedule, rather than the inexpensive, basic items that actually were supplied;

- The Retail Owners, through their respective Retailers, submitted false delivery receipts in support of their bills that purport to demonstrate the No-fault Claimants' acknowledged receipt of the DME and/or orthotic devices, when in actuality the delivery receipts routinely signed by the No-fault Claimants were routinely blank at the time of the signing or oftentimes contain forged signatures;

- The Retail Owners, through their respective Retailers, systematically failed and/or refused to provide Plaintiffs with a meaningful description of the DME and/or orthotic devices provided (*i.e.*, make and model) and/or additional information that is necessary to determine whether the charges submitted by the Retailers are legitimate.

284. Plaintiffs are under a statutory and contractual obligation to promptly and fairly process claims within 30 days. The documents submitted to Plaintiffs in support of the fraudulent claims at issue, combined with the material misrepresentations, omissions and acts of fraudulent concealment described above, were designed to and did cause Plaintiffs to justifiably rely on them. As a proximate result, Plaintiffs have incurred damages of more than $2,200,000.00 based upon the fraudulent bill submissions.

285. Based upon Defendants' material misrepresentations and other affirmative acts to conceal their fraud from Plaintiffs, Plaintiffs did not discover and should not have reasonably discovered that its damages were attributable to fraud until shortly before they filed this Complaint.

## STATEMENT OF CLAIMS

## FIRST CLAIM FOR RELIEF

## AGAINST VLADIMIR GEYKHMAN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

286. The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

287. At all times relevant herein, Advanced Medical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

288.    From, in or about 2006 through the date of the filing of this Complaint, Defendant Geykhman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the Advanced Medical Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and inlcuded in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

289.    At all relevant times mentioned herein, Defendant Geykhman, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Advanced Medical Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

290.    On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Geykhman required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

85

291.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 9 through 20, through one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

**The Pattern of Racketeering Activity
(Racketeering Acts)**

292.    The racketeering acts set forth herein were carried out on a continued basis for more than a six-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Geykhman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

293.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Advanced Medical Supply continues to pursue collection on the fraudulent billing to the present day.

294.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Geykhman, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Advanced Medical Supply enterprise based upon materially false and misleading information.

295.    Through the Advanced Medical Supply enterprise, Defendant Geykhman submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Geykhman, as well as the payments that

86

Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Geykhman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Advanced Medical Supply enterprise through the filing of this Complaint.

296.    A sample list of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Geykhman, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

297.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

298.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

299.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $18,000.00, the exact amount to be determined at trial.

300.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Geykhman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF

## AGAINST DEFENDANTS VLADIMIR GEYKHMAN AND ADVANCED MEDICAL SUPPLY

### (Common Law Fraud)

301. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

302. Defendants Geykhman and Advanced Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company for payment.

303. On information and belief, each and every bill and supporting documentation submitted by Defendants Geykhman and Advanced Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

304. On information and belief, Defendants Geykhman and Advanced Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Advanced Medical Supply was entitled to be reimbursed under the No-fault Law;

88

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Geykhman, through Advanced Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Geykhman, through Advanced Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

305. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Advanced Medical Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

306. Defendants Geykhman and Advanced Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

307.    Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Geykhman and Advanced Medical Supply.

308.    Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Advanced Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

309.    Furthermore, the far reaching pattern of fraudulent conduct by Defendants Geykhman and Advanced Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

310.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $18,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

### THIRD CLAIM FOR RELIEF

### AGAINST DEFENDANTS VLADIMIR GEYKHMAN AND ADVANCED MEDICAL SUPPLY

#### (Unjust Enrichment)

311.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

312.    By reason of their wrongdoing, Defendants Geykhman and Advanced Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received

moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

313.    Plaintiffs are therefore entitled to restitution from Defendants Geykhman and Advanced Medical Supply in the amount by which they have been unjustly enriched.

314.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $18,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FOURTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

315.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

316.    On information and belief, one or more of the Wholesale Defendants (ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company by Defendants Geykhman and Advanced Medical Supply.

317.    On information and belief, the acts taken by one or more of the Wholesale Defendants (ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in

91

furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Geykhman and Advanced Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Geykhman and Advanced Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Geykhman, through Advanced Medical Supply, to Advanced Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Advanced Medical Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between Geykhman through Advanced Medical Supply and the No-fault Clinics.

318. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Geykhman and Advanced Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

319. On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or

orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

320.    On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company to pay money based upon the fraudulent charges submitted through Advanced Medical Supply in an amount to be determined at trial, but in no event less than $18,000.00.

321.    On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

322.    By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

### FIFTH CLAIM FOR RELIEF

### AGAINST SAM (SEMYON) BLINDER, MIKOS TRADING INC., MIKS TRADING, INC., NEW STEP SERVICES, INC., JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

323.    The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

324.    At all times relevant herein, B & Y Surgical Supplies was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

93

325.  From, in or about 2006 through the date of the filing of this Complaint, Defendants Blinder, Mikos Trading, MIKS Trading, New Step Services, John Doe 4, John Doe 5, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the B & Y Surgical Supplies enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

326.  At all relevant times mentioned herein, Defendant Blinder, together with others unknown to Plaintiffs, exerted control over and directed the operations of the B & Y Surgical Supplies enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

327.  On information and belief, Defendants Mikos Trading, MIKS Trading, New Step Services, John Doe 4, John Doe 5, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendant Mikos Trading, MIKS Trading, New Step Services and one or more of the ABC Corporations furnished documents that Defendant Blinder required, in furtherance of

the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

328. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants John Doe 4, John Doe 5, John Doe 6 and one or more of the John Does 9 through 20, through Mikos Trading, MIKS Trading, New Step Services and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

329. The racketeering acts set forth herein were carried out on a continued basis for more than a six-year period, were related and similar and were committed as part the ongoing scheme of Defendants Blinder, Mikos Trading, MIKS Trading, New Step Services, John Doe 4, John Doe 5, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

330. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as B & Y Surgical Supplies continues to pursue collection on the fraudulent billing to the present day.

331. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Blinder, with the knowledge and intent of Defendants Mikos Trading, MIKS Trading, New Step Services, John Doe 4, John Doe 5, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to

defraud Plaintiffs and to induce Plaintiffs to issue checks to the B & Y Surgical Supplies enterprise based upon materially false and misleading information.

332.    Through the B & Y Surgical Supplies enterprise, Defendant Blinder submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant Blinder, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendants Blinder, Mikos Trading, MIKS Trading, New Step Services, John Doe 4, John Doe 5, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the B & Y Surgical Supplies enterprise through the filing of this Complaint.

333.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Blinder, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

334.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

335.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

336.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in

the aggregate amount presently in excess of $225,000.000, the exact amount to be determined at trial.

337. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Blinder, Mikos Trading, MIKS Trading, New Step Services, John Doe 4, John Doe 5, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## SIXTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS SAM (SEMYON) BLINDER AND B & Y SURGICAL SUPPLIES INC.
### (Common Law Fraud)

338. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

339. Defendants Blinder and B & Y Surgical Supplies made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company and Allstate Property and Casualty Insurance Company for payment.

340. On information and belief, each and every bill and supporting documentation submitted by Defendants Blinder and B & Y Surgical Supplies to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

341. On information and belief, Defendants Blinder and B & Y Surgical Supplies intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts B & Y Surgical Supplies was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Blinder, through B & Y Surgical Supplies, paid kickbacks to No-

fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Blinder, through B & Y Surgical Supplies, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

342. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant B & Y Surgical Supplies' claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

343. Defendants Blinder and B & Y Surgical Supplies knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

344. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Blinder and B & Y Surgical Supplies.

345. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant B & Y Surgical Supplies' claims for No-fault insurance benefits submitted in connection therewith.

346. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Blinder and B & Y Surgical Supplies evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

347.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $234,000.000, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SEVENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS SAM (SEMYON) BLINDER AND B & Y SURGICAL SUPPLIES

#### (Unjust Enrichment)

348.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

349.    By reason of their wrongdoing, Defendants Blinder and B & Y Surgical Supplies have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company and Allstate Property and Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

350.    Plaintiffs are therefore entitled to restitution from Defendants Blinder and B & Y Surgical Supplies in the amount by which they have been unjustly enriched.

351.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined,

but believed to be in excess of $234,000.000, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## EIGHTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS MIKOS TRADING, INC., MIKS TRADING, INC., NEW STEP SERVICES, INC., JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

#### (Aiding and Abetting)

352.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

353.    On information and belief, the Wholesale Defendants (Mikos Trading, MIKS Trading, New Step Services, John Doe 4, John Doe 5, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company and Allstate Property and Casualty Insurance Company by Defendants Blinder and B & Y Surgical Supplies.

354.    On information and belief, the acts taken by the Wholesale Defendants (Mikos Trading, MIKS Trading, New Step Services, John Doe 4, John Doe 5, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Blinder and B & Y Surgical Supplies purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Blinder and B & Y Surgical Supplies could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back

a portion of the amounts paid by Defendant Blinder, through B & Y Surgical Supplies, to B & Y Surgical Supplies to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through B & Y Surgical Supplies; and (v) knowingly supporting the negotiation and performance of kickback agreements between Blinder through B & Y Surgical Supplies and the No-fault Clinics.

355.    On information and belief, the conduct of the Wholesale Defendants (Mikos Trading, MIKS Trading, New Step Services, John Doe 4, John Doe 5, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Blinder and B & Y Surgical Supplies to obtain fraudulently inflated payments from Plaintiffs, among others.

356.    On information and belief, the Wholesale Defendants (Mikos Trading, MIKS Trading, New Step Services, John Doe 4, John Doe 5, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

357.    On information and belief, the conduct of the Wholesale Defendants (Mikos Trading, MIKS Trading, New Step Services, John Doe 4, John Doe 5, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused

Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company and Allstate Property and Casualty Insurance Company to pay money based upon the fraudulent charges submitted through B & Y Surgical Supplies in an amount to be determined at trial, but in no event less than $234,000.000.

358. On information and belief, the Wholesale Defendants' (Mikos Trading, MIKS Trading, New Step Services, John Doe 4, John Doe 5, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

359. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## NINTH CLAIM FOR RELIEF

### AGAINST YURIY DENISOV, IMPREZZA NYC INC., JOHN DOE 3, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

360. The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

361. At all times relevant herein, Big Apple Ortho Products was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

362. From, in or about 2012 through the date of the filing of this Complaint, Defendants Denisov, Imprezza NYC, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and

participated in the affairs of the Big Apple Ortho Products enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

363.    At all relevant times mentioned herein, Defendant Denisov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Big Apple Ortho enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

364.    On information and belief, Defendants Imprezza NYC, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendant Imprezza NYC and one or more of the ABC Corporations furnished documents that Defendant Big Apple Ortho Products required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

365.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant John Doe 3 and one or more of the John Does

9 through 20, through Imprezza NYC and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

366.    The racketeering acts set forth herein were carried out on a continued basis for more than a nine-month period, were related and similar and were committed as part of the ongoing scheme of Defendants Denisov, Imprezza NYC, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

367.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Big Apple Ortho Products continues to pursue collection on the fraudulent billing to the present day.

368.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Denisov, with the knowledge and intent of Defendants Imprezza NYC, John Doe 3, one or more of the ABC Corporations 1 through 20, and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Big Apple Ortho Products enterprise based upon materially false and misleading information.

369.    Through the Big Apple Ortho Products enterprise, Defendant Denisov submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Denisov, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By

virtue of those activities, Defendants Denisov, Imprezza NYC, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Big Apple Ortho Products enterprise through the filing of this Complaint.

370. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Denisov, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

371. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

372. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

373. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $14,000.00, the exact amount to be determined at trial.

374. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Denisov, Imprezza NYC, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

**TENTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS YURIY DENISOV AND BIG APPLE ORTHO PRODUCTS**

**(Common Law Fraud)**

375.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

376.    Defendants Denisov and Big Apple Ortho Products made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty Insurance Company for payment.

377.    On information and belief, each and every bill and supporting documentation submitted by Defendants Denisov and Big Apple Ortho Products to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

378.    On information and belief, Defendants Denisov and Big Apple Ortho Products intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Big Apple Ortho Products was entitled to be reimbursed under the No-fault Law;

107

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Denisov, through Big Apple Ortho Products, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Denisov, through Big Apple Ortho Products, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

379. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Big Apple Ortho Products' claims under the No-fault Law. Specific examples of the

billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

380. Defendants Denisov and Big Apple Ortho Products knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

381. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Denisov and Big Apple Ortho Products.

382. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Big Apple Ortho Products' claims for No-fault insurance benefits submitted in connection therewith.

383. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Denisov and Big Apple Ortho Products evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

384. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $14,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## ELEVENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS YURIY DENISOV AND BIG APPLE ORTHO PRODUCTS, INC.

#### (Unjust Enrichment)

385.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

386.    By reason of their wrongdoing, Defendants Denisov and Big Apple Ortho Products have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

387.    Plaintiffs are therefore entitled to restitution from Defendants Denisov and Big Apple Ortho Products in the amount by which they have been unjustly enriched.

388.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $14,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## TWELFTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS IMPREZZA NYC, JOHN DOE 3, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

#### (Aiding and Abetting)

389.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

390.    On information and belief, the Wholesale Defendants (Imprezza NYC, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty Insurance Company by Defendants Denisov and Big Apple Ortho Products.

391.    On information and belief, the acts taken by the Wholesale Defendants (Imprezza NYC, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Denisov and Big Apple Ortho Products purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Denisov and Big Apple Ortho Products could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Denisov, through Big Apple Ortho Products, to Big Apple Ortho Products to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Big Apple Ortho Products; and (v) knowingly supporting the negotiation and performance of kickback agreements between Denisov through Big Apple Ortho Products and the No-fault Clinics.

392.    On information and belief, the conduct of the Wholesale Defendants (Imprezza NYC, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a

necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Denisov and Big Apple Ortho Products to obtain fraudulently inflated payments from Plaintiffs, among others.

393. On information and belief, the Wholesale Defendants (Imprezza NYC, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

394. On information and belief, the conduct of the Wholesale Defendants (Imprezza NYC, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Big Apple Ortho Products in an amount to be determined at trial, but in no event less than $14,000.00.

395. On information and belief, the Wholesale Defendants' (Imprezza NYC, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

396. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## THIRTEENTH CLAIM FOR RELIEF

## AGAINST YEVGENY SPEKTOR, ROPA INC., JOHN DOE 8, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

397.    The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

398.    At all times relevant herein, Excel Medical Supplies was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

399.    From, in or about 2008 through the date of the filing of this Complaint, Defendants Spektor, ROPA, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the Excel Medical Supplies enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

400.    At all relevant times mentioned herein, Defendant Spektor, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Excel Medical Supplies enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

401.   On information and belief, Defendants ROPA, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendant ROPA and one or more of the ABC Corporations furnished documents that Defendant Spektor required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

402.   On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant John Doe 8 and one or more of the John Does 9 through 20, through ROPA and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

403.   The racketeering acts set forth herein were carried out on a continued basis for more than a five-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Spektor, ROPA, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

404.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Excel Medical Supplies continues to pursue collection on the fraudulent billing to the present day.

405.   As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Spektor, with the knowledge

and intent of Defendants ROPA, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Excel Medical Supplies enterprise based upon materially false and misleading information.

406. Through the Excel Medical Supplies enterprise, Defendant Spektor submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Spektor, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Spektor, ROPA, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Excel Medical Supplies enterprise through the filing of this Complaint.

407. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Spektor, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

408. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

409. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

410.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $93,000.00, the exact amount to be determined at trial.

411.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Spektor, ROPA, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### FOURTEENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS YEVGENY SPEKTOR AND EXCEL MEDICAL SUPPLIES, INC.

### (Common Law Fraud)

412.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

413.    Defendants Spektor and Excel Medical Supplies made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company for payment.

414.    On information and belief, each and every bill and supporting documentation submitted by Defendants Spektor and Excel Medical Supplies to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were

116

intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

415. On information and belief, Defendants Spektor and Excel Medical Supplies intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Excel Medical Supplies was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed

and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Spektor, through Excel Medical Supplies, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Spektor, through Excel Medical Supplies, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

416. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Excel Medical Supplies' claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

417. Defendants Spektor and Excel Medical Supplies knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

418. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of Defendants Spektor's and Excel Medical Supplies' acts of fraud and deception.

419. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Excel Medical Supplies' claims for No-fault insurance benefits submitted in connection therewith.

420. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Spektor and Excel Medical Supplies evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

421.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $100,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**FIFTEENTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS YEVGENY SPEKTOR AND EXCEL MEDICAL SUPPLIES, INC.**

**(Unjust Enrichment)**

422.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

423.    By reason of their wrongdoing, Defendants Spektor and Excel Medical Supplies have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

424.    Plaintiffs are therefore entitled to restitution from Defendants Spektor and Excel Medical Supplies in the amount by which they have been unjustly enriched.

425.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but

believed to be in excess of $100,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

### SIXTEENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS ROPA INC., JOHN DOE 8, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

426. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

427. On information and belief, the Wholesale Defendants (ROPA, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company by Defendants Spektor and Excel Medical Supplies.

428. On information and belief, the acts taken by the Wholesale Defendants (ROPA, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Spektor and Excel Medical Supplies purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Spektor and Excel Medical Supplies could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Spektor, through Excel Medical Supplies, to Excel Medical Supplies to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale

invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Excel Medical Supplies; and (v) knowingly supporting the negotiation and performance of kickback agreements between Spektor through Excel Medical Supplies and the No-fault Clinics.

429. On information and belief, the conduct of the Wholesale Defendants (ROPA, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Spektor and Excel Medical Supplies to obtain fraudulently inflated payments from Plaintiffs, among others.

430. On information and belief, the Wholesale Defendants (ROPA, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

431. On information and belief, the conduct of the Wholesale Defendants (ROPA, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company to pay money based upon the fraudulent charges submitted through Excel Medical Supplies in an amount to be determined at trial, but in no event less than $100,000.00.

432. On information and belief, the Wholesale Defendants' (ROPA, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

433. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## SEVENTEENTH CLAIM FOR RELIEF

## AGAINST ALEKSANDR FIRAYNER, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

434. The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

435. At all times relevant herein, Five Boro Medical Equipment was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

436. From, in or about 2011 through the date of the filing of this Complaint, Defendants Firayner, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the Five Boro Medical Equipment enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

437.    At all relevant times mentioned herein, Defendant Firayner, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Five Boro Medical Equipment enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

438.    On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the Defendant ABC Corporations furnished documents that Defendant Firayner required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

439.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the Defendant John Does 9 through 20, through one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

440.    The racketeering acts set forth herein were carried out on a continued basis for more than a two-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Firayner, one or more of the ABC Corporations 1 through 20 and one or

more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

441. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Five Boro Medical Equipment continues to pursue collection on the fraudulent billing to the present day.

442. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Firayner, with the knowledge and intent of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Five Boro Medical Equipment enterprise based upon materially false and misleading information.

443. Through the Five Boro Medical Equipment enterprise, Defendant Firayner submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Firayner, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Five Boro Medical Equipment enterprise through the filing of this Complaint.

444. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant

Firayner, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

445. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

446. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

447. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $39,000.000, the exact amount to be determined at trial.

448. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Firayner, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### EIGHTEENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS ALEKSANDR FIRAYNER AND FIVE BORO MEDICAL EQUIPMENT, INC.

### (Common Law Fraud)

449. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

450. Defendants Firayner and Five Boro Medical Equipment made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company for payment.

451. On information and belief, each and every bill and supporting documentation submitted by Defendants Firayner and Five Boro Medical Equipment to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

452. On information and belief, Defendants Firayner and Five Boro Medical Equipment intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Five Boro Medical Equipment was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby,

Defendant Firayner, through Five Boro Medical Equipment, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Firayner, through Five Boro Medical Equipment, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

453. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Five Boro Medical Equipment's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

454. Defendants Firayner and Five Boro Medical Equipment knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

455. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of Defendants Firayner's and Five Boro Medical Equipment's acts of fraud and deception.

456. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Five Boro Medical Equipment's claims for No-fault insurance benefits submitted in connection therewith.

457. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Firayner and Five Boro Medical Equipment evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

458. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and

Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $42,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**NINETEENTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS ALEKSANDR FIRAYNER AND FIVE BORO MEDICAL EQUIPMENT INC.**

**(Unjust Enrichment)**

459. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

460. By reason of their wrongdoing, Defendants Firayner and Five Boro Medical Equipment have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

461. Plaintiffs are therefore entitled to restitution from Defendants Firayner and Five Boro Medical Equipment in the amount by which they have been unjustly enriched.

462. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of

$42,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

### TWENTIETH CLAIM FOR RELIEF

### AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

#### (Aiding and Abetting)

463.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

464.    On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company by Defendants Firayner and Five Boro Medical Equipment.

465.    On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Firayner and Five Boro Medical Equipment purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Firayner and Five Boro Medical Equipment could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Firayner, through Five Boro Medical Equipment, to Five Boro Medical Equipment to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale

costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Five Boro Medical Equipment; and (v) knowingly supporting the negotiation and performance of kickback agreements between Firayner through Five Boro Medical Equipment and the No-fault Clinics.

466. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Firayner and Five Boro Medical Equipment to obtain fraudulently inflated payments from Plaintiffs, among others.

467. On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

468. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Five Boro Medical Equipment in an amount to be determined at trial, but in no event less than $42,000.00.

469. On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent

conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

470.   By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## TWENTY-FIRST CLAIM FOR RELIEF

## AGAINST GABRIEL KOHEN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

471.   The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

472.   At all times relevant herein, G & A Medical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

473.   From, in or about 2007 through the date of the filing of this Complaint, Defendant Kohen, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the G & A Medical Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

474.   At all relevant times mentioned herein, Defendant Kohen, together with others unknown to Plaintiffs, exerted control over and directed the operations of the G & A Medical

131

Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

475. On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. one or more of the ABC Corporations furnished documents that Defendant Kohen required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

476. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 9 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

477. The racketeering acts set forth herein were carried out on a continued basis for more than a six-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Kohen, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

478.     On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as G & A Medical Supply continues to pursue collection on the fraudulent billing to the present day.

479.     As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Kohen, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the G & A Medical Supply enterprise based upon materially false and misleading information.

480.     Through the G & A Medical Supply enterprise, Defendant Kohen submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Kohen, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Kohen, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the G & A Medical Supply enterprise through the filing of this Complaint.

481.     A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Kohen, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

482.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

483.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

484.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $8,000.00, the exact amount to be determined at trial.

Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Kohen, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### TWENTY-SECOND CLAIM FOR RELIEF

### AGAINST GABRIEL KOHEN, ONE STOP WHOLESALE, INC., JOHN DOE 7, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

485.    The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

486.    At all times relevant herein, Goldstar Equipment was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

487. From, in or about 2011 through the date of the filing of this Complaint, Defendant Kohen, One Stop Wholesale, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the Goldstar Equipment enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

488. At all relevant times mentioned herein, Defendant Kohen, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Goldstar Equipment enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

489. On information and belief, Defendants One Stop Wholesale, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendant One Stop Wholesale and one or more of the ABC Corporations furnished documents that Defendant Kohen required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

490. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant John Doe 7 and one or more of the John Does 9 through 20, through One Stop Wholesale and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

491. The racketeering acts set forth herein were carried out on a continued basis for more than a one-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Kohen, One Stop Wholesale, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

492. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Goldstar Equipment continues to pursue collection on the fraudulent billing to the present day.

493. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Kohen, with the knowledge and intent of Defendants One Stop Wholesale, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Goldstar Equipment enterprise based upon materially false and misleading information.

494. Through the Goldstar Equipment enterprise, Defendant Kohen submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were

purportedly (but not actually) provided to numerous No-fault Claimants.   The bills and supporting documents that were sent by Defendant Kohen, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendants Kohen, One Stop Wholesale, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Goldstar Equipment enterprise through the filing of this Complaint.

495.   A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Kohen, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

496.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

497.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

498.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $30,000.000, the exact amount to be determined at trial.

499.   Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Kohen, One Stop Wholesale, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## TWENTY-THIRD CLAIM FOR RELIEF

## AGAINST DEFENDANTS GABRIEL KOHEN, G & A MEDICAL SUPPLY, LLC AND GOLDSTAR EQUIPMENT INC.

### (Common Law Fraud)

500.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

501.    Defendants Kohen, G & A Medical Supply and Goldstar Equipment made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty Insurance Company for payment.

502.    On information and belief, each and every bill and supporting documentation submitted by Defendants Kohen, G & A Medical Supply and Goldstar Equipment to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

503.    On information and belief, Defendants Kohen, G & A Medical Supply and Goldstar Equipment intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts G & A Medical Supply and Goldstar Equipment were entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Kohen, through G & A Medical Supply and Goldstar Equipment, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Kohen, through G & A Medical Supply and Goldstar Equipment, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

504. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant G & A Medical Supply's and Defendant Goldstar Equipment's claims under the No-

fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

505.   Defendants Kohen, G & A Medical Supply and Goldstar Equipment knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

506.   Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Kohen, G & A Medical Supply and Goldstar Equipment.

507.   Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant G & A Medical Supply's and Defendant Goldstar Equipment's claims for No-fault insurance benefits submitted in connection therewith.

508.   Furthermore, the far reaching pattern of fraudulent conduct by Defendants Kohen, G & A Medical Supply and Goldstar Equipment evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

509.   By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $42,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## TWENTY-FOURTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS GABRIEL KOHEN, G & A MEDICAL SUPPLY, LLC AND GOLDSTAR EQUIPMENT INC.

### (Unjust Enrichment)

510.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

511.    By reason of their wrongdoing, Defendants Kohen, G & A Medical Supply and Goldstar Equipment have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

512.    Plaintiffs are therefore entitled to restitution from Defendants Kohen, G & A Medical Supply and Goldstar Equipment in the amount by which they have been unjustly enriched.

513.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $42,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## TWENTY-FIFTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ONE STOP WHOLESALE, INC., JOHN DOE 7, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

514.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

515. On information and belief, the Wholesale Defendants (One Stop Wholesale, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty Insurance Company by Defendants Kohen, G & A Medical Supply and Goldstar Equipment.

516. On information and belief, the acts taken by the Wholesale Defendants (One Stop Wholesale, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Kohen, G & A Medical Supply and Goldstar Equipment purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Kohen, G & A Medical Supply and Goldstar Equipment could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Kohen, through G & A Medical Supply and Goldstar Equipment, to G & A Medical Supply and Goldstar Equipment to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through G & A Medical Supply and Goldstar Equipment; and (v) knowingly supporting the negotiation and performance of kickback agreements between Kohen through G & A Medical Supply and Goldstar Equipment and the No-fault Clinics.

517.    On information and belief, the conduct of the Wholesale Defendants (One Stop Wholesale, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Kohen, G & A Medical Supply and Goldstar Equipment to obtain fraudulently inflated payments from Plaintiffs, among others.

518.    On information and belief, the Wholesale Defendants (One Stop Wholesale, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

519.    On information and belief, the conduct of the Wholesale Defendants (One Stop Wholesale, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty Insurance Company to pay money based upon the fraudulent charges submitted through G & A Medical Supply and Goldstar Equipment in an amount to be determined at trial, but in no event less than $42,000.00.

520.    On information and belief, the Wholesale Defendants' (One Stop Wholesale, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

521.    By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## TWENTY-SIXTH CLAIM FOR RELIEF

## AGAINST RENATA TKACHENKO, IDEL INTERNATIONAL TRADING INC., SHIMON INDICTOR, ABC CORPORATIONS 1 THROUGH 20, AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

522.    The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

523.    At all times relevant herein, Health Aid Medical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

524.    From, in or about 2009 through the date of the filing of this Complaint, Defendants R. Tkachenko, IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the Health Aid Medical Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

525.    At all relevant times mentioned herein, Defendant R. Tkachenko, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Health Aid Medical Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property and

144

Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

526.    On information and belief, Defendants IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendant IDEL International Trading and one or more of the ABC Corporations furnished documents that Defendant R. Tkachenko required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

527.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant Indictor and one or more of the John Does 9 through 20, through IDEL International Trading and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

528.    The racketeering acts set forth herein were carried out on a continued basis for more than a three-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants R. Tkachenko, IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

529. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Health Aid Medical Supply continues to pursue collection on the fraudulent billing to the present day.

530. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant R. Tkachenko, with the knowledge and intent of Defendants IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Health Aid Medical Supply enterprise based upon materially false and misleading information.

531. Through the Health Aid Medical Supply enterprise, Defendant R. Tkachenko submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant R. Tkachenko, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants R. Tkachenko, IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Health Aid Medical Supply enterprise through the filing of this Complaint.

532. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant R. Tkachenko, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

533. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

534. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

535. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $28,000.00, the exact amount to be determined at trial.

536. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants R. Tkachenko, IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### TWENTY-SEVENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS RENATA TKACHENKO AND HEALTH AID MEDICAL SUPPLY INC.

### (Common Law Fraud)

537. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

538. Defendants R. Tkachenko and Health Aid Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company for payment.

539. On information and belief, each and every bill and supporting documentation submitted by Defendants R. Tkachenko and Health Aid Medical Supply to Plaintiffs set forth

false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

540. On information and belief, Defendants R. Tkachenko and Health Aid Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Health Aid Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices

provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant R. Tkachenko, through Health Aid Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant R. Tkachenko, through Health Aid Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

541.   The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Health Aid Medical Supply's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

542.   Defendants R. Tkachenko and Health Aid Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

543.   Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants R. Tkachenko and Health Aid Medical Supply.

544.   Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Health Aid Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

545.   Furthermore, the far reaching pattern of fraudulent conduct by Defendants R. Tkachenko and Health Aid Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

546.   By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $30,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## TWENTY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS RENATA TKACHENKO AND HEALTH AID MEDICAL SUPPLY INC.

### (Unjust Enrichment)

547.   The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

548.   By reason of their wrongdoing, Defendants R. Tkachenko and Health Aid Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

549.   Plaintiffs are therefore entitled to restitution from Defendants R. Tkachenko and Health Aid Medical Supply in the amount by which they have been unjustly enriched.

550.   By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company have sustained

compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $30,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## TWENTY-NINTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS IDEL INTERNATIONAL TRADING INC., SHIMON INDICTOR, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

551.     The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

552.     On information and belief, the Wholesale Defendants (IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company by Defendants R. Tkachenko and Health Aid Medical Supply.

553.     On information and belief, the acts taken by the Wholesale Defendants (IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants R. Tkachenko and Health Aid Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants R. Tkachenko and Health Aid Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant R. Tkachenko, through Health Aid Medical Supply, to Health Aid

Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Health Aid Medical Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between R. Tkachenko through Health Aid Medical Supply and the No-fault Clinics.

554.    On information and belief, the conduct of the Wholesale Defendants (IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants R. Tkachenko and Health Aid Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

555.    On information and belief, the Wholesale Defendants (IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

556.    On information and belief, the conduct of the Wholesale Defendants (IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company to pay money

based upon the fraudulent charges submitted through Health Aid Medical Supply in an amount to be determined at trial, but in no event less than $30,000.00.

557.   On information and belief, the Wholesale Defendants' (IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

558.   By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## THIRTIETH CLAIM FOR RELIEF

## AGAINST IVAN BATIASHVILI, NISA ZULUNOV, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

559.   The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

560.   At all times relevant herein, IG Medical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

561.   From, in or about 2011 through the date of the filing of this Complaint, Defendants Batiashvili, Zulunov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the IG Medical Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which

are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

562. At all relevant times mentioned herein, Defendants Batiashvili and Zulunov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the IG Medical Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

563. On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendants Batiashvili and Zulunov required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

564. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 9 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

565.    The racketeering acts set forth herein were carried out on a continued basis for more than a one-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Batiashvili, Zulunov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

566.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as IG Medical Supply continues to pursue collection on the fraudulent billing to the present day.

567.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Batiashvili and Zulunov, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the IG Medical Supply enterprise based upon materially false and misleading information.

568.    Through the IG Medical Supply enterprise, Defendants Batiashvili and Zulunov submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendants Batiashvili and Zulunov, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Batiashvili, Zulunov, one or more of the

ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the IG Medical Supply enterprise through the filing of this Complaint.

569.   A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Batiashvili and Zulunov, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

570.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

571.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

572.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $11,000.00, the exact amount to be determined at trial.

573.   Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Batiashvili, Zulunov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## THIRTY-FIRST CLAIM FOR RELIEF

## AGAINST DEFENDANTS IVAN BATIASHVILI, NISA ZULUNOV AND IG MEDICAL SUPPLY, LLC,

### (Common Law Fraud)

574.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

575.    Defendants Batiashvili, Zulunov and IG Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff Allstate Insurance Company for payment.

576.    On information and belief, each and every bill and supporting documentation submitted by Defendants Batiashvili, Zulunov and IG Medical Supply to Plaintiff set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiff but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

577.    On information and belief, Defendants Batiashvili, Zulunov and IG Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts IG Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff that the DME

and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Batiashvili, Zulunov, through IG Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Batiashvili, Zulunov, through IG Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiff and other insurers.

578. The foregoing was intended to deceive and mislead Plaintiff into paying Defendant IG Medical Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

579. Defendants Batiashvili, Zulunov and IG Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiff to rely thereon.

580.    Plaintiff did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiff was led to believe existed as a result of the acts of fraud and deception of Defendants Batiashvili, Zulunov and IG Medical Supply.

581.    Had Plaintiff known of the fraudulent content of the bills, prescriptions and delivery receipts, it would not have paid the Defendant IG Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

582.    Furthermore, the far reaching pattern of fraudulent conduct by Defendants Batiashvili, Zulunov and IG Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiff to recovery of exemplary and punitive damages.

583.    By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $11,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## THIRTY-SECOND CLAIM FOR RELIEF

## AGAINST DEFENDANTS IVAN BATIASHVILI, NISA ZULUNOV AND IG MEDICAL SUPPLY, LLC,

### (Unjust Enrichment)

584.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

585.    By reason of their wrongdoing, Defendants Batiashvili, Zulunov and IG Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiff Allstate Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

586. Plaintiff is therefore entitled to restitution from Defendants Batiashvili, Zulunov and IG Medical Supply in the amount by which they have been unjustly enriched.

587. By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $11,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

<strong>THIRTY-THIRD CLAIM FOR RELIEF</strong>

<strong>AGAINST DEFENDANT ABC CORPORATIONS 1 THROUGH 20 AND DEFENDANT JOHN DOES 9 THROUGH 20</strong>

<strong>(Aiding and Abetting)</strong>

588. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

589. On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiff Allstate Insurance Company by Defendants Batiashvili, Zulunov and IG Medical Supply.

590. On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Batiashvili, Zulunov and IG Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Batiashvili, Zulunov and IG Medical Supply could mail fraudulent bills to Plaintiff and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Batiashvili, Zulunov,

160

through IG Medical Supply, to IG Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiff, among others, through IG Medical Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between Batiashvili, Zulunov through IG Medical Supply and the No-fault Clinics.

591. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Batiashvili, Zulunov and IG Medical Supply to obtain fraudulently inflated payments from Plaintiff, among others.

592. On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiff into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

593. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does - through 20) caused Plaintiff Allstate Insurance Company to pay money based upon the fraudulent charges submitted through IG Medical Supply in an amount to be determined at trial, but in no event less than $11,000.00.

594. On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiff to recover punitive damages.

595. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## THIRTY-FOURTH CLAIM FOR RELIEF

## AGAINST DANIEL LYANDRES, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

596. The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

597. At all times relevant herein, Infinity Medical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

598. From, in or about 2010 through the date of the filing of this Complaint, Defendants Lyandres, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the Infinity Medical Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

599. At all relevant times mentioned herein, Defendant Lyandres, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Infinity Medical

Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

600. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the Defendant ABC Corporations furnished documents that Defendant Lyandres required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

601. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the Defendant John Does 9 through 20, through one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

602. The racketeering acts set forth herein were carried out on a continued basis for more than a two-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Lyandres, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

603. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Infinity Medical Supply continues to pursue collection on the fraudulent billing to the present day.

604. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Lyandres, with the knowledge and intent of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Infinity Medical Supply enterprise based upon materially false and misleading information.

605. Through the Infinity Medical Supply enterprise, Defendant Lyandres submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Lyandres, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Lyandres, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Infinity Medical Supply enterprise through the filing of this Complaint.

606. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Lyandres, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

607. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

608. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

609. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $45,000.00, the exact amount to be determined at trial.

610. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Lyandres, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### THIRTY-FIFTH CLAIM FOR RELIEF

### AGAINST DANIEL LYANDRES, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

611. The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

612. At all times relevant herein, TSM Medical Supply & Orthocare was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

613. From, in or about 2011 through the date of the filing of this Complaint, Defendants Lyandres, one or more of the ABC Corporations 1 through 20 and one or more of the

John Does 9 through 20, knowingly conducted and participated in the affairs of the TSM Medical Supply & Orthocare enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

614.    At all relevant times mentioned herein, Defendant Lyandres, together with others unknown to Plaintiffs, exerted control over and directed the operations of the TSM Medical Supply & Orthocare enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

615.    On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the Defendant ABC Corporations furnished documents that Defendant Lyandres required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

616.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the Defendant John Does 9 through 20,

through one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

617. The racketeering acts set forth herein were carried out on a continued basis for more than a two-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Lyandres, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

618. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as TSM Medical Supply & Orthocare continues to pursue collection on the fraudulent billing to the present day.

619. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Lyandres, with the knowledge and intent of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the TSM Medical Supply & Orthocare enterprise based upon materially false and misleading information.

620. Through the TSM Medical Supply & Orthocare enterprise, Defendant Lyandres submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Lyandres, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Lyandres, one or more of the ABC Corporations 1 through

167

20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the TSM Medical Supply & Orthocare enterprise through the filing of this Complaint.

621.     A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Lyandres, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

622.     Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

623.     Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

624.     By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $31,000.00, the exact amount to be determined at trial.

625.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Lyandres, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## THIRTY-SIXTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS DANIEL LYANDRES, INFINITY MEDICAL SUPPLY INC. AND TSM MEDICAL SUPPLY & ORTHOCARE INC.

### (Common Law Fraud)

626. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

627. Defendants Lyandres, Infinity Medical Supply and TSM Medical Supply & Orthocare made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company for payment.

628. On information and belief, each and every bill and supporting documentation submitted by Defendants Lyandres, Infinity Medical Supply and TSM Medical Supply & Orthocare to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

629. On information and belief, Defendants Lyandres, Infinity Medical Supply and TSM Medical Supply & Orthocare intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Infinity Medical Supply and TSM Medical Supply & Orthocare were entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Lyandres, through Infinity Medical Supply and TSM Medical Supply & Orthocare, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Lyandres, through Infinity Medical Supply and TSM Medical Supply & Orthocare, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

630.    The foregoing was intended to deceive and mislead Plaintiffs into paying Defendants Infinity Medical Supply's and TSM Medical Supply & Orthocare's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

631.    Defendants Lyandres, Infinity Medical Supply and TSM Medical Supply & Orthocare knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

632.    Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of Defendants Lyandres', Infinity Medical Supply's and TSM Medical Supply & Orthocare's acts of fraud and deception.

633.    Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendants Infinity Medical Supply's and TSM Medical Supply & Orthocare's claims for No-fault insurance benefits submitted in connection therewith.

634.    Furthermore, the far reaching pattern of fraudulent conduct by Defendants Lyandres, Infinity Medical Supply and TSM Medical Supply & Orthocare evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

635.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $82,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## THIRTY-SEVENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS DANIEL LYANDRES, INFINITY MEDICAL SUPPLY INC. AND TSM MEDICAL SUPPLY & ORTHOCARE INC.

### (Unjust Enrichment)

636. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

637. By reason of their wrongdoing, Defendants Lyandres, Infinity Medical Supply and TSM Medical Supply & Orthocare have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

638. Plaintiffs are therefore entitled to restitution from Defendants Lyandres, Infinity Medical Supply and TSM Medical Supply & Orthocare in the amount by which they have been unjustly enriched.

639. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $82,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## THIRTY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

640.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

641.    On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company by Defendants Lyandres, Infinity Medical Supply and TSM Medical Supply & Orthocare.

642.    On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Lyandres, Infinity Medical Supply and TSM Medical Supply & Orthocare purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Lyandres, Infinity Medical Supply and TSM Medical Supply & Orthocare could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Lyandres, through Infinity Medical Supply and TSM Medical Supply & Orthocare, to Infinity Medical Supply and TSM Medical Supply & Orthocare to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to

173

constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Infinity Medical Supply and TSM Medical Supply & Orthocare; and (v) knowingly supporting the negotiation and performance of kickback agreements between Lyandres through Infinity Medical Supply and TSM Medical Supply & Orthocare and the No-fault Clinics.

643.    On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Lyandres, Infinity Medical Supply and TSM Medical Supply & Orthocare to obtain fraudulently inflated payments from Plaintiffs, among others.

644.    On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

645.    On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Infinity Medical Supply and TSM Medical Supply & Orthocare in an amount to be determined at trial, but in no event less than $82,000.00.

646. On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

647. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## THIRTY-NINTH CLAIM FOR RELIEF

### AGAINST FOTIMA ABUTOVA, A TO Z WHOLESALE INC., EASY HILL WHOLESALE MEDICAL SUPPLY INC., OLEG SIMAKOV, ABC CORPORATIONS 1 THROUGH 20, AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

648. The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

649. At all times relevant herein, Lender Medical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

650. From, in or about 2009 through the date of the filing of this Complaint, Defendant Abutova, A to Z Wholesale, Easy Hill Wholesale Medical Supply, Simakov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the Lender Medical Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

651.     At all relevant times mentioned herein, Defendant Abutova, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Lender Medical Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

652.     On information and belief, Defendants A to Z Wholesale, Easy Hill Wholesale Medical Supply, Simakov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants A to Z Wholesale, Easy Hill Wholesale Medical Supply and one or more of the ABC Corporations furnished documents that Defendant Abutova required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

653.     On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant Simakov and one or more of the John Does 9 through 20, through A to Z Wholesale, Easy Hill Wholesale Medical Supply and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

654.    The racketeering acts set forth herein were carried out on a continued basis for more than a three-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Abutova, A to Z Wholesale, Easy Hill Wholesale Medical Supply, Simakov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

655.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Lender Medical Supply continues to pursue collection on the fraudulent billing to the present day.

656.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Abutova, with the knowledge and intent of Defendants A to Z Wholesale, Easy Hill Wholesale Medical Supply, Simakov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Lender Medical Supply enterprise based upon materially false and misleading information.

657.    Through the Lender Medical Supply enterprise, Defendant Abutova submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant Abutova, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Abutova, A to Z Wholesale, Easy Hill Wholesale Medical

Supply, Simakov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Lender Medical Supply enterprise through the filing of this Complaint.

658.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Abutova, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

659.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

660.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

661.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $230,000.00, the exact amount to be determined at trial.

662.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Abutova. A to Z Wholesale, Easy Hill Wholesale Medical Supply, Simakov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## FORTIETH CLAIM FOR RELIEF

### AGAINST DEFENDANTS FOTIMA ABUTOVA
### AND LENDER MEDICAL SUPPLY INC.
### (Common Law Fraud)

663.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

664.    Defendants Abutova and Lender Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company for payment.

665.    On information and belief, each and every bill and supporting documentation submitted by Defendants Abutova and Lender Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

666.    On information and belief, Defendants Abutova and Lender Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Lender Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Abutova, through Lender Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Abutova, through Lender Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

667.  The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Lender Medical Supply's claims under the No-fault Law. Specific examples of the

billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

668. Defendants Abutova and Lender Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

669. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Abutova and Lender Medical Supply.

670. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Lender Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

671. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Abutova and Lender Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

672. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $231,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## FORTY-FIRST CLAIM FOR RELIEF

### AGAINST DEFENDANTS FOTIMA ABUTOVA
### AND LENDER MEDICAL SUPPLY INC.
### (Unjust Enrichment)

673.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

674.    By reason of their wrongdoing, Defendants Abutova and Lender Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

675.    Plaintiffs are therefore entitled to restitution from Defendants Abutova and Lender Medical Supply in the amount by which they have been unjustly enriched.

676.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $231,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FORTY-SECOND CLAIM FOR RELIEF

## AGAINST DEFENDANTS A TO Z WHOLESALE INC., EASY HILL WHOLESALE MEDICAL SUPPLY INC., OLEG SIMAKOV, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

677. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

678. On information and belief, the Wholesale Defendants (A to Z Wholesale, Easy Hill Wholesale Medical Supply, Simakov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company by Defendants Abutova and Lender Medical Supply.

679. On information and belief, the acts taken by the Wholesale Defendants (A to Z Wholesale, Easy Hill Wholesale Medical Supply, Simakov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Abutova and Lender Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Abutova and Lender Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Abutova, through Lender Medical Supply, to Lender Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to

constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Lender Medical Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between Abutova through Lender Medical Supply and the No-fault Clinics.

680. On information and belief, the conduct of the Wholesale Defendants (A to Z Wholesale, Easy Hill Wholesale Medical Supply, Simakov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Abutova and Lender Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

681. On information and belief, the Wholesale Defendants (A to Z Wholesale, Easy Hill Wholesale Medical Supply, Simakov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

682. On information and belief, the conduct of the Wholesale Defendants (A to Z Wholesale, Easy Hill Wholesale Medical Supply, Simakov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Lender Medical Supply in an amount to be determined at trial, but in no event less than $231,000.00.

683.    On information and belief, the Wholesale Defendants' (A to Z Wholesale, Easy Hill Wholesale Medical Supply, Simakov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

684.    By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## FORTY-THIRD CLAIM FOR RELIEF

## AGAINST YEVGENY NEMETS, MEM WHOLESALE INC., MICHAEL ZAVRAZHIN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

685.    The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

686.    At all times relevant herein, Longevity Medical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

687.    From, in or about 2010 through the date of the filing of this Complaint, Defendants Nemets, MEM Wholesale, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the Longevity Medical Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

688.    At all relevant times mentioned herein, Defendant Nemets, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Longevity Medical Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

689.    On information and belief, Defendants MEM Wholesale, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendant MEM Wholesale and one or more of the ABC Corporations furnished documents that Defendant Nemets required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

690.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant Zavrazhin and one or more of the John Does 9 through 20, through MEM Wholesale and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

691.    The racketeering acts set forth herein were carried out on a continued basis for more than a two-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Nemets, MEM Wholesale, Zavrazhin, one or more of the ABC

Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

692. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Longevity Medical Supply continues to pursue collection on the fraudulent billing to the present day.

693. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Nemets, with the knowledge and intent of Defendants MEM Wholesale, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Longevity Medical Supply enterprise based upon materially false and misleading information.

694. Through the Longevity Medical Supply enterprise, Defendant Nemets submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Nemets, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Nemets, MEM Wholesale, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Longevity Medical Supply enterprise through the filing of this Complaint.

695.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Nemets, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

696.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

697.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

698.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $32,000.00, the exact amount to be determined at trial.

699.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Nemets, MEM Wholesale, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### FORTY-FOURTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS YEVGENY NEMETS AND LONGEVITY MEDICAL SUPPLY

### (Common Law Fraud)

700.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

701.    Defendants   Nemets   and   Longevity   Medical   Supply   made   material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs

188

Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company for payment.

702.   On information and belief, each and every bill and supporting documentation submitted by Defendants Nemets and Longevity Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

703.   On information and belief, Defendants Nemets and Longevity Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Longevity Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Nemets, through Longevity Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Nemets, through Longevity Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

704.   The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Longevity Medical Supply's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

705.   Defendants Nemets and Longevity Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

706.   Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Nemets and Longevity Medical Supply.

707.   Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Longevity Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

708.   Furthermore, the far reaching pattern of fraudulent conduct by Defendants Nemets and Longevity Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

709.   By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $34,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## FORTY-FIFTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS YEVGENY NEMETS
### AND LONGEVITY MEDICAL SUPPLY INC.

### (Unjust Enrichment)

710.   The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

711.   By reason of their wrongdoing, Defendants Nemets and Longevity Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received

191

moneys from Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

712.    Plaintiffs are therefore entitled to restitution from Defendants Nemets and Longevity Medical Supply in the amount by which they have been unjustly enriched.

713.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $34,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FORTY-SIXTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS MEM WHOLESALE INC., MICHAEL ZAVRAZHIN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

714.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

715.    On information and belief, the Wholesale Defendants (MEM Wholesale, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 0 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company and Allstate Indemnity Company by Defendants Nemets and Longevity Medical Supply.

716.    On information and belief, the acts taken by the Wholesale Defendants (MEM Wholesale, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of

the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Nemets and Longevity Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Nemets and Longevity Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Nemets, through Longevity Medical Supply, to Longevity Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Longevity Medical Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between Nemets through Longevity Medical Supply and the No-fault Clinics.

717.   On information and belief, the conduct of the Wholesale Defendants (MEM Wholesale, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Nemets and Longevity Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

718.   On information and belief, the Wholesale Defendants (MEM Wholesale, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-

fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

719.   On information and belief, the conduct of the Wholesale Defendants (MEM Wholesale, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Longevity Medical Supply in an amount to be determined at trial, but in no event less than $34,000.00.

720.   On information and belief, the Wholesale Defendants' (MEM Wholesale, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

721.   By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## FORTY-SEVENTH CLAIM FOR RELIEF

### AGAINST MICHAEL BORUKHOV, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

722.   The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

723.   At all times relevant herein, Multi Service of NY was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

724. From in or about 2008 through the date of the filing of this Complaint, Defendant Borukhov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Multi Service of NY enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

725. At all relevant times mentioned herein, Defendant Borukhov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Multi Service of NY enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

726. On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Borukhov required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

727. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 9 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

728. The racketeering acts set forth herein were carried out on a continued basis for more than a four-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Borukhov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

729. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Multi Service of NY continues to pursue collection on the fraudulent billing to the present day.

730. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Borukhov, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Multi Service of NY enterprise based upon materially false and misleading information.

731. Through the Multi Service of NY enterprise, Defendant Borukhov submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Borukhov, as well as the payments that

Plaintiff made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Borukhov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Multi Service of NY enterprise through the filing of this Complaint.

732.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Borukhov, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

733.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

734.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

735.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company have been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $120,000.00, the exact amount to be determined at trial.

736.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Borukhov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## FORTY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS MICHAEL BORUKHOV
## AND MULTI SERVICE OF NY INC.

### (Common Law Fraud)

737.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

738.    Defendants Borukhov and Multi Service of NY made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty and Allstate Property and Casualty Insurance Company for payment.

739.    On information and belief, each and every bill and supporting documentation submitted by Defendants Borukhov and Multi Service of NY to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

740.    On information and belief, Defendants Borukhov and Multi Service of NY intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Multi Service of NY was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Borukhov, through Multi Service of NY, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Borukhov, through Multi Service of NY, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

741. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Multi Service of NY's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

742. Defendants Borukhov and Multi Service of NY knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

743. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of Defendants Borukhov's and Multi Service of NY's acts of fraud and deception.

744. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Multi Service of NY's claims for No-fault insurance benefits submitted in connection therewith.

745. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Borukhov and Multi Service of NY evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

746. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $137,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**FORTY-NINTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS MICHAEL BORUKHOV AND MULTI SERVICE OF NY INC.**

**(Unjust Enrichment)**

747. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

748.     By reason of their wrongdoing, Defendants Borukhov and Multi Service of NY have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty and Allstate Property and Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

749.     Plaintiffs are therefore entitled to restitution from Defendants Borukhov and Multi Service of NY in the amount by which they have been unjustly enriched.

750.     By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $137,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FIFTIETH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

751.     The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

752.     On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property

and Casualty and Allstate Property and Casualty Insurance Company by Defendants Borukhov and Multi Service of NY.

753. On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Borukhov and Multi Service of NY purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Borukhov and Multi Service of NY could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Borukhov, through Multi Service of NY, to Multi Service of NY to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Multi Service of NY; and (v) knowingly supporting the negotiation and performance of kickback agreements between Borukhov through Multi Service of NY and the No-fault Clinics.

754. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Borukhov and Multi Service of NY to obtain fraudulently inflated payments from Plaintiffs, among others.

755.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

756.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty and Allstate Property and Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Multi Service of NY in an amount to be determined at trial, but in no event less than $137,000.00.

757.   On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

758.   By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## FIFTY-FIRST CLAIM FOR RELIEF

## AGAINST INNA TKACHENKO, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

## (RICO, pursuant to 18 U.S.C § 1962(c))

759.   The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

760.    At all times relevant herein, New Way Medical Supply was an "enterprise"
engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18
U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

761.    From, in or about 2010 through the date of the filing of this Complaint, Defendant
I. Tkachenko, one or more of the ABC Corporations 1 through 20 and one or more of the John
Does 9 through 20, knowingly conducted and participated in the affairs of the New Way Medical
Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail
fraud described herein and included in the representative list of predicate acts set forth in the
Appendix and Compendium of Exhibits accompanying this Complaint, all of which are
incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

762.    At all relevant times mentioned herein, Defendant I. Tkachenko, together with
others unknown to Plaintiffs, exerted control over and directed the operations of the New Way
Medical Supply enterprise and utilized that control to conduct the pattern of racketeering
activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills
and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty
Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance
Company that were based, in part, on the utilization of fraudulent wholesale invoices.

763.    On information and belief, one or more of the Defendant ABC Corporations 1
through 20 and one or more of the Defendant John Does 9 through 20 participated in the scheme
by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact
provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly
inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing
alleged in the Complaint. One or more of the Defendant ABC Corporations furnished documents

that Defendant I. Tkachenko required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

764.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 9 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

765.    The racketeering acts set forth herein were carried out on a continued basis for more than a three-year period, were related and similar and were committed as part of the ongoing scheme of Defendants I. Tkachenko, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

766.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as New Way Medical Supply continues to pursue collection on the fraudulent billing to the present day.

767.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant I. Tkachenko, with the knowledge and intent of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the New Way Medical Supply enterprise based upon materially false and misleading information.

768.   Through the New Way Medical Supply enterprise, Defendant I. Tkachenko submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant I. Tkachenko, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants I. Tkachenko, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the New Way Medical Supply enterprise through the filing of this Complaint.

769.   A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant I. Tkachenko, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

770.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

771.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

772.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $59,000.00, the exact amount to be determined at trial.

773.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants I Tkachenko, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## FIFTY-SECOND CLAIM FOR RELIEF

## AGAINST DEFENDANTS INNA TKACHENKO AND NEW WAY MEDICAL SUPPLY, CORP.

### (Common Law Fraud)

774.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

775.    Defendants I. Tkachenko and New Way Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company for payment.

776.    On information and belief, each and every bill and supporting documentation submitted by Defendants I. Tkachenko and New Way Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

777.    On information and belief, Defendants I. Tkachenko and New Way Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of

material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts New Way Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant I. Tkachenko, through New Way Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant I. Tkachenko, through New Way Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

778. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant New Way Medical Supply's claims under the No-fault Law. Specific examples of the

billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

779. Defendants I. Tkachenko and New Way Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

780. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants I. Tkachenko and New Way Medical Supply.

781. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant New Way Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

782. Furthermore, the far reaching pattern of fraudulent conduct by Defendants I. Tkachenko and New Way Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

783. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $67,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## FIFTY-THIRD CLAIM FOR RELIEF

### AGAINST DEFENDANTS INNA TKACHENKO
### AND NEW WAY MEDICAL SUPPLY, CORP.

#### (Unjust Enrichment)

784.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

785.    By reason of their wrongdoing, Defendants I. Tkachenko and New Way Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

786.    Plaintiffs are therefore entitled to restitution from Defendants I. Tkachenko and New Way Medical Supply in the amount by which they have been unjustly enriched.

787.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $67,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FIFTY-FOURTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

788.   The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

789.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company by Defendants I. Tkachenko and New Way Medical Supply.

790.   On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants I. Tkachenko and New Way Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants I. Tkachenko and New Way Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant I. Tkachenko, through New Way Medical Supply, to New Way Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale

costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through New Way Medical Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between I. Tkachenko through New Way Medical Supply and the No-fault Clinics.

791. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants I. Tkachenko and New Way Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

792. On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

793. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company to pay money based upon the fraudulent charges submitted through New Way Medical Supply in an amount to be determined at trial, but in no event less than $67,000.00.

794.    On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

795.    By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## FIFTY-FIFTH CLAIM FOR RELIEF

## AGAINST RUSLAN KAPUSTA, AMERICAN MOBILITY MEDICAL, INC., MARGARITA AKMALOVA, ABC CORPORATIONS 1 THROUGH 20, AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

796.    The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

797.    At all times relevant herein, Next Century Enterprises, Inc. was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

798.    From, in or about 2007 through the date of the filing of this Complaint, Defendants Kapusta, American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the Next Century Enterprises enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

799. At all relevant times mentioned herein, Defendant Kapusta, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Next Century Enterprises enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

800. On information and belief, Defendants American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendant American Mobility Medical and one or more of the ABC Corporations furnished documents that Defendant Kapusta required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

801. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant Akmalova and one or more of the John Does 9 through 20, through American Mobility Medical and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

802.    The racketeering acts set forth herein were carried out on a continued basis for more than a five-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Kapusta, American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

803.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Next Century Enterprises continues to pursue collection on the fraudulent billing to the present day.

804.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Kapusta, with the knowledge and intent of Defendants American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Next Century Enterprises enterprise based upon materially false and misleading information.

805.    Through the Next Century Enterprises enterprise, Defendant Kapusta submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Kapusta, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Kapusta, American Mobility Medical, Akmalova, one or

more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Next Century Enterprises enterprise through the filing of this Complaint.

806.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Kapusta, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

807.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

808.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

809.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $81,000.00, the exact amount to be determined at trial.

810.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Kapusta, American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## FIFTY-SIXTH CLAIM FOR RELIEF

## AGAINST RUSLAN KAPUSTA, ABC CORPORATIONS 1 THROUGH 20  AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

811.    The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

812.    At all times relevant herein, VIP Medical Supplies was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

813.    From, in or about 2010 through the date of the filing of this Complaint, Defendant Kapusta, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the VIP Medical Supplies enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

814.    At all relevant times mentioned herein, Defendant Kapusta, together with others unknown to Plaintiffs, exerted control over and directed the operations of the VIP Medical Supplies enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

815.    On information and belief, One or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 participated in the scheme

217

by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the Defendant ABC Corporations furnished documents that Defendant Kapusta required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

816.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the Defendant John Does 9 through 20, through one or more of the Defendant ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

817.    The racketeering acts set forth herein were carried out on a continued basis for more than a two-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Kapusta, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

818.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as VIP Medical Supplies continues to pursue collection on the fraudulent billing to the present day.

819.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Kapusta, with the knowledge and intent of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20, caused mailings to be made through the United States

Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the VIP Medical Supplies enterprise based upon materially false and misleading information.

820. Through the VIP Medical Supplies enterprise, Defendant Kapusta submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Kapusta, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the VIP Medical Supplies enterprise through the filing of this Complaint.

821. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Kapusta, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

822. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

823. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

824. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Property and Casualty Insurance Company has been injured in its business and property and

Plaintiff has been damaged in the aggregate amount presently in excess of $8,000.00, the exact amount to be determined at trial.

825.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Kapusta, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

**FIFTY-SEVENTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS RUSLAN KAPUSTA, NEXT CENTURY ENTERPRISES, INC. AND VIP MEDICAL SUPPLIES, INC.**

**(Common Law Fraud)**

826.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

827.    Defendants Kapusta, Next Century Enterprises and VIP Medical Supplies made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company for payment.

828.    On information and belief, each and every bill and supporting documentation submitted by Defendants Kapusta, Next Century Enterprises and VIP Medical Supplies to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

829.    On information and belief, Defendants Kapusta, Next Century Enterprises and VIP Medical Supplies intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false

220

representations of material facts, including, but not limited to, the following fraudulent material

misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Next Century Enterprises and VIP Medical Supplies were entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Kapusta, through Next Century Enterprises and VIP Medical Supplies, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New

York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Kapusta, through Next Century Enterprises and VIP Medical Supplies VIP Medical Supplies, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

830. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendants Next Century Enterprises' and VIP Medical Supplies' claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

831. Defendants Kapusta, Next Century Enterprises and VIP Medical Supplies knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

832. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Kapusta, Next Century Enterprises and VIP Medical Supplies.

833. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendants Next Century Enterprises' and VIP Medical Supplies' claims for No-fault insurance benefits submitted in connection therewith.

834. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Kapusta, Next Century Enterprises and VIP Medical Supplies evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

835. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company and Northbrook

Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $102,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## FIFTY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS RUSLAN KAPUSTA, NEXT CENTURY ENTERPRISES, INC. AND VIP MEDICAL SUPPLIES, INC.

### (Unjust Enrichment)

836. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

837. By reason of their wrongdoing, Defendants Kapusta, Next Century Enterprises and VIP Medical Supplies have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

838. Plaintiffs are therefore entitled to restitution from Defendants Kapusta, Next Century Enterprises and VIP Medical Supplies in the amount by which they have been unjustly enriched.

839. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $102,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FIFTY-NINTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS AMERICAN MOBILITY MEDICAL, INC., MARGARITA AKMALOVA, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

840. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

841. On information and belief, the Wholesale Defendants (American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company by Defendants Kapusta, Next Century Enterprises and VIP Medical Supplies.

842. On information and belief, the acts taken by the Wholesale Defendants (American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Kapusta, Next Century Enterprises and VIP Medical Supplies purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Kapusta, Next Century Enterprises and VIP Medical Supplies could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Kapusta, through Next Century Enterprises and VIP Medical Supplies, to Next Century Enterprises and VIP Medical Supplies to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly

224

creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Next Century Enterprises and VIP Medical Supplies; and (v) knowingly supporting the negotiation and performance of kickback agreements between Kapusta through Next Century Enterprises and VIP Medical Supplies and the No-fault Clinics.

843.     On information and belief, the conduct of the Wholesale Defendants (American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Kapusta, Next Century Enterprises and VIP Medical Supplies to obtain fraudulently inflated payments from Plaintiffs, among others.

844.     On information and belief, the Wholesale Defendants (American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

845.     On information and belief, the conduct of the Wholesale Defendants (American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company to pay money based upon the fraudulent charges submitted through Next

Century Enterprises and VIP Medical Supplies in an amount to be determined at trial, but in no event less than $102,000.00.

846. On information and belief, the Wholesale Defendants' (American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

847. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

### SIXTIETH CLAIM FOR RELIEF

### AGAINST KONSTANTIN DZHAGINOV, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

848. The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

849. At all times relevant herein, OrthoPlus Products was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

850. From, in or about 2011 through the date of the filing of this Complaint, Defendants Dzhaginov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the OrthoPlus Products enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

851.    At all relevant times mentioned herein, Defendant Dzhaginov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the OrthoPlus Products enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

852.    On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the Defendant ABC Corporations furnished documents that Defendant Dzhaginov required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

853.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the Defendant John Does 9 through 20, through one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

854.    The racketeering acts set forth herein were carried out on a continued basis for more than a one-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Dzhaginov, one or more of the ABC Corporations 1 through

20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

855. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as OrthoPlus Products continues to pursue collection on the fraudulent billing to the present day.

856. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Dzhaginov, with the knowledge and intent of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the OrthoPlus Products enterprise based upon materially false and misleading information.

857. Through the OrthoPlus Products enterprise, Defendant Dzhaginov submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Dzhaginov, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Dzhaginov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the OrthoPlus Products enterprise through the filing of this Complaint.

858. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant

Dzhaginov, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

859.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

860.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

861.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $21,000.00, the exact amount to be determined at trial.

862.   Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Dzhaginov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## SIXTY-FIRST CLAIM FOR RELIEF

## AGAINST DEFENDANTS KONSTANTIN DZHAGINOV AND ORTHOPLUS PRODUCTS INC.

### (Common Law Fraud)

863.   The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

864.   Defendants Dzhaginov and OrthoPlus Products made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company for payment.

865.     On information and belief, each and every bill and supporting documentation submitted by Defendants Dzhaginov and OrthoPlus Products to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

866.     On information and belief, Defendants Dzhaginov and OrthoPlus Products intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts OrthoPlus Products was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed

and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Dzhaginov, through OrthoPlus Products, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Dzhaginov, through OrthoPlus Products, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

867. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant OrthoPlus Products' claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

868. Defendants Dzhaginov and OrthoPlus Products knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

869. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of Defendants Dzhaginov's and OrthoPlus Products' acts of fraud and deception.

870. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant OrthoPlus Products' claims for No-fault insurance benefits submitted in connection therewith.

871. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Dzhaginov and OrthoPlus Products evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

872. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $23,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SIXTY-SECOND CLAIM FOR RELIEF

## AGAINST DEFENDANTS KONSTANTIN DZHAGINOV AND ORTHOPLUS PRODUCTS INC.

### (Unjust Enrichment)

873. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

874. By reason of their wrongdoing, Defendants Dzhaginov and OrthoPlus Products have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

875. Plaintiffs are therefore entitled to restitution from Defendants Dzhaginov and OrthoPlus Products in the amount by which they have been unjustly enriched.

876. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of  $23,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## SIXTY-THIRD CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 through 20

### (Aiding and Abetting)

877.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

878.    On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company by Defendants Dzhaginov and OrthoPlus Products.

879.    On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Dzhaginov and OrthoPlus Products purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Dzhaginov and OrthoPlus Products could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Dzhaginov, through OrthoPlus Products, to OrthoPlus Products to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through OrthoPlus Products; and (v) knowingly supporting the negotiation and

233

performance of kickback agreements between Dzhaginov through OrthoPlus Products and the No-fault Clinics.

880. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Dzhaginov and OrthoPlus Products to obtain fraudulently inflated payments from Plaintiffs, among others.

881. On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

882. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate New Jersey Insurance Company and Allstate Property and Casualty Insurance Company to pay money based upon the fraudulent charges submitted through OrthoPlus Products in an amount to be determined at trial, but in no event less than $23,000.00.

883. On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

884.    By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

### SIXTY-FOURTH CLAIM FOR RELIEF

### AGAINST SERGE OGAN, ANY CHOICE SUPPLY, INC., JOHN DOE 1, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

885.    The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

886.    At all times relevant herein, OS Ortho Services was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

887.    From in or about 2011 through the date of the filing of this Complaint, Defendants Ogan, Any Choice Supply, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the OS Ortho Services enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

888.    At all relevant times mentioned herein, Defendant Ogan, together with others unknown to Plaintiffs, exerted control over and directed the operations of the OS Ortho Services enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting

documents to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

889.    On information and belief, Defendants Any Choice Supply, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendant Any Choice Supply and one or more of the ABC Corporations furnished documents that Defendant Ogan required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

890.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant John Doe 1 and one or more of the John Does 9 through 20, through Any Choice Supply and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

891.    The racketeering acts set forth herein were carried out on a continued basis for more than a two-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Ogan, Any Choice Supply, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

892.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as OS Ortho Services continues to pursue collection on the fraudulent billing to the present day.

893.   As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Ogan, with the knowledge and intent of Defendants Any Choice Supply, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the OS Ortho Services enterprise based upon materially false and misleading information.

894.   Through the OS Ortho Services enterprise, Defendant Ogan submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Ogan, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Ogan, Any Choice Supply, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the OS Ortho Services enterprise through the filing of this Complaint.

895.   A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Ogan, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

896.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

897.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

898.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $33,000.00, the exact amount to be determined at trial.

899.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Ogan, Any Choice Supply, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### SIXTY-FIFTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS SERGE OGAN AND OS ORTHO SERVICES INC.

### (Common Law Fraud)

900.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

901.    Defendants Ogan and OS Ortho Services made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company,

Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company for payment.

902. On information and belief, each and every bill and supporting documentation submitted by Defendants Ogan and OS Ortho Services to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

903. On information and belief, Defendants Ogan and OS Ortho Services intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts OS Ortho Services was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Ogan, through OS Ortho Services, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Ogan, through OS Ortho Services, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

904. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant OS Ortho Services' claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

905. Defendants Ogan and OS Ortho Services knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

906.    Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Ogan and OS Ortho Services.

907.    Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant OS Ortho Services' claims for No-fault insurance benefits submitted in connection therewith.

908.    Furthermore, the far reaching pattern of fraudulent conduct by Defendants Ogan and OS Ortho Services evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

909.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $36,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SIXTY-SIXTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS SERGE OGAN AND OS ORTHO SERVICES INC.

### (Unjust Enrichment)

910.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

911.    By reason of their wrongdoing, Defendants Ogan and OS Ortho Services have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from

Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

912.    Plaintiffs are therefore entitled to restitution from Defendants Ogan and OS Ortho Services in the amount by which they have been unjustly enriched.

913.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company,, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $36,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

### SIXTY-SEVENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS ANY CHOICE SUPPLY, INC., JOHN DOE 1, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

#### (Aiding and Abetting)

914.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

915.    On information and belief, the Wholesale Defendants (Any Choice Supply, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty

Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company by Defendants Ogan and OS Ortho Services.

916. On information and belief, the acts taken by the Wholesale Defendants (Any Choice Supply, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Ogan and OS Ortho Services purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Ogan and OS Ortho Services could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Ogan, through OS Ortho Services, to OS Ortho Services to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through OS Ortho Services; and (v) knowingly supporting the negotiation and performance of kickback agreements between Ogan through OS Ortho Services and the No-fault Clinics.

917. On information and belief, the conduct of the Wholesale Defendants (Any Choice Supply, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Ogan and OS Ortho Services to obtain fraudulently inflated payments from Plaintiffs, among others.

918.     On information and belief, the Wholesale Defendants (Any Choice Supply, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

919.     On information and belief, the conduct of the Wholesale Defendants (Any Choice Supply, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company to pay money based upon the fraudulent charges submitted through OS Ortho Services in an amount to be determined at trial, but in no event less than $36,000.00.

920.     On information and belief, the Wholesale Defendants' (Any Choice Supply, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

921.     By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## SIXTY-EIGHTH CLAIM FOR RELIEF

## AGAINST VLADIMIR KAMINSKY, AMERICAN MOBILITY MEDICAL, INC., MARGARITA AKMALOVA, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

922. The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

923. At all times relevant herein, Premier DME was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

924. From, in or about 2010 through the date of the filing of this Complaint, Defendants Kaminsky, American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the Premier DME enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

925. At all relevant times mentioned herein, Defendant Kaminsky, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Premier DME enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

926.    On information and belief, Defendants American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendant American Mobility Medical and one or more of the ABC Corporations furnished documents that Defendant Kaminsky required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

927.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant Akmalova and one or more of the John Does 9 through 20, through one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

928.    The racketeering acts set forth herein were carried out on a continued basis for more than a two-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Kaminsky, American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

929.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Premier DME continues to pursue collection on the fraudulent billing to the present day.

930. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Kaminsky, with the knowledge and intent of Defendants American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Premier DME enterprise based upon materially false and misleading information.

931. Through the Premier DME enterprise, Defendant Kaminsky submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Kaminsky, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Kaminsky, American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Premier DME enterprise through the filing of this Complaint.

932. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Kaminsky, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

933. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

247

934.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

935.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $23,000.00, the exact amount to be determined at trial.

936.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Kaminsky, American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### SIXTY-NINTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS VLADIMIR KAMINSKY AND PREMIER DME CORP.

### (Common Law Fraud)

937.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

938.    Defendants Kaminsky and Premier DME made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate New Jersey Insurance Company and Allstate Property and Casualty Insurance Company for payment.

939.    On information and belief, each and every bill and supporting documentation submitted by Defendants Kaminsky and Premier DME to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to

248

defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

940.    On information and belief, Defendants Kaminsky and Premier DME intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Premier DME was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Kaminsky, through Premier DME, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Kaminsky, through Premier DME, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

941. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Premier DME's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

942. Defendants Kaminsky and Premier DME knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

943. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of Defendants Kaminsky's and Premier DME's acts of fraud and deception.

944. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Premier DME's claims for No-fault insurance benefits submitted in connection therewith.

945. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Kaminsky and Premier DME evinces a high degree of moral turpitude and wanton dishonesty,

which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

946. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate New Jersey Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $24,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SEVENTIETH CLAIM FOR RELIEF

## AGAINST DEFENDANTS VLADIMIR KAMINSKY AND PREMIER DME CORP.

### (Unjust Enrichment)

947. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

948. By reason of their wrongdoing, Defendants Kaminsky and Premier DME have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate New Jersey Insurance Company and Allstate Property and Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

949. Plaintiffs are therefore entitled to restitution from Defendants Kaminsky and Premier DME in the amount by which they have been unjustly enriched.

950. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate New Jersey Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $24,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

### SEVENTY-FIRST CLAIM FOR RELIEF

## AGAINST DEFENDANTS AMERICAN MOBILITY MEDICAL, INC., MARGARITA AKMALOVA, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

951.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

952.    On information and belief, the Wholesale Defendants (American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate New Jersey Insurance Company and Allstate Property and Casualty Insurance Company by Defendants Kaminsky and Premier DME.

953.    On information and belief, the acts taken by the Wholesale Defendants (American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Kaminsky and Premier DME purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Kaminsky and Premier DME could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Kaminsky, through Premier DME, to Premier DME to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs,

among others, through Premier DME; and (v) knowingly supporting the negotiation and performance of kickback agreements between Kaminsky through Premier DME and the No-fault Clinics.

954. On information and belief, the conduct of the Wholesale Defendants (American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Kaminsky and Premier DME to obtain fraudulently inflated payments from Plaintiffs, among others.

955. On information and belief, the Wholesale Defendants (American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

956. On information and belief, the conduct of the Wholesale Defendants (American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate New Jersey Insurance Company and Allstate Property and Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Premier DME in an amount to be determined at trial, but in no event less than $24,000.00.

957. On information and belief, the Wholesale Defendants' (American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the

John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

958. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## SEVENTY-SECOND CLAIM FOR RELIEF

## AGAINST ALEXANDER KONVISER, IG&NAT SERVICES, INC., JOHN DOE 2, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

959. The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

960. At all times relevant herein, ProDME was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

961. From, in or about 2010 through the date of the filing of this Complaint, Defendants Konviser, IG&NAT Services, John Doe 2, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the ProDME enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

962. At all relevant times mentioned herein, Defendant Konviser, together with others unknown to Plaintiffs, exerted control over and directed the operations of the ProDME enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of

creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

963.    On information and belief, Defendants IG&NAT Services, John Doe 2, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants IG&NAT Services and one or more of the ABC Corporations furnished documents that Defendant Konviser required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

964.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant John Doe 2  and one or more of the John Does 9 through 20, through one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

965.    The racketeering acts set forth herein were carried out on a continued basis for more than a two-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Konviser, IG&NAT Services, John Doe 2, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

966.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as ProDME continues to pursue collection on the fraudulent billing to the present day.

967.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Konviser, with the knowledge and intent of Defendants IG&NAT Services, John Doe 2, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the ProDME enterprise based upon materially false and misleading information.

968.    Through the ProDME enterprise, Defendant Konviser submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Konviser, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Konviser, IG&NAT Services, John Doe 2, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the ProDME enterprise through the filing of this Complaint.

969.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Konviser, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

256

970.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. §
1961(1)(B).

971.    Each submission of a fraudulent claim constitutes a pattern of racketeering
activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

972.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate
Insurance Company and Allstate Property and Casualty Insurance Company have been injured in
their business and property and Plaintiffs have been damaged in the aggregate amount presently
in excess of $36,000.00, the exact amount to be determined at trial.

973.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants
Konviser, IG&NAT Services, John Doe 2, one or more of the ABC Corporations 1 through 20
and one or more of the John Does 9 through 20, jointly and severally, three-fold damages
sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### SEVENTY-THIRD CLAIM FOR RELIEF

### AGAINST DEFENDANTS ALEXANDER KONVISER AND PRODME, INC.

### (Common Law Fraud)

974.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as
though fully set forth herein.

975.    Defendants Konviser and ProDME made material misrepresentations and/or
omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance
Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty
Insurance Company for payment.

976.    On information and belief, each and every bill and supporting documentation
submitted by Defendants Konviser and ProDME to Plaintiffs set forth false and fraudulent

amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

977.   On information and belief, Defendants Konviser and ProDME intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts ProDME was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices

provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Konviser, through ProDME, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Konviser, through ProDME, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

978.    The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant ProDME's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

979.    Defendants   Konviser   and   ProDME   knew   the   foregoing   material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

980.    Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of Defendants Konviser's and ProDME's acts of fraud and deception.

981.    Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant ProDME's claims for No-fault insurance benefits submitted in connection therewith.

982.    Furthermore, the far reaching pattern of fraudulent conduct by Defendants Konviser and ProDME evinces a high degree of moral turpitude and wanton dishonesty, which,

as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

983.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $38,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**SEVENTY-FOURTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS ALEXANDER KONVISER AND PRODME, INC.**

**(Unjust Enrichment)**

984.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

985.    By reason of their wrongdoing, Defendants Konviser and ProDME have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

986.    Plaintiffs are therefore entitled to restitution from Defendants Konviser and ProDME in the amount by which they have been unjustly enriched.

987.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $38,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## SEVENTY-FIFTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS IG&NAT SERVICES, INC., JOHN DOE 2, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

988.    The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

989.    On information and belief, the Wholesale Defendants (IG&NAT Services, John Doe 2, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty Insurance Company by Defendants Konviser and ProDME.

990.    On information and belief, the acts taken by the Wholesale Defendants (IG&NAT Services, John Doe 2, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Konviser and ProDME purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Konviser and ProDME could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Konviser, through ProDME, to ProDME to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through ProDME;

and (v) knowingly supporting the negotiation and performance of kickback agreements between Konviser through ProDME and the No-fault Clinics.

991. On information and belief, the conduct of the Wholesale Defendants (IG&NAT Services, John Doe 2, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Konviser and ProDME to obtain fraudulently inflated payments from Plaintiffs, among others.

992. On information and belief, the Wholesale Defendants (IG&NAT Services, John Doe 2, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

993. On information and belief, the conduct of the Wholesale Defendants (IG&NAT Services, John Doe 2, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty Insurance Company to pay money based upon the fraudulent charges submitted through ProDME in an amount to be determined at trial, but in no event less than $38,000.00.

994. On information and belief, the Wholesale Defendants' (IG&NAT Services, John Doe 2, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

995. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## SEVENTY-SIXTH CLAIM FOR RELIEF

## AGAINST MOYSEY IFRAIMOV, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

996. The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

997. At all times relevant herein, Quality Service Supplies was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

998. From, in or about 2009 through the date of the filing of this Complaint, Defendants Ifraimov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the Quality Service Supplies enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

999. At all relevant times mentioned herein, Defendant Ifraimov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Quality Service Supplies enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty

Insurance Company and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1000. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the Defendant ABC Corporations furnished documents that Defendant Ifraimov required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1001. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the Defendant John Does 9 through 20, through one or more of the Defendant ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1002. The racketeering acts set forth herein were carried out on a continued basis for more than a three-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Ifraimov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1003. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Quality Service Supplies continues to pursue collection on the fraudulent billing to the present day.

1004. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Ifraimov, with the knowledge and intent of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Quality Service Supplies enterprise based upon materially false and misleading information.

1005. Through the Quality Service Supplies enterprise, Defendant Ifraimov submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant Ifraimov, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Ifraimov, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Quality Service Supplies enterprise through the filing of this Complaint.

1006. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Ifraimov, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1007. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1008. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

1009.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $373,000.00, the exact amount to be determined at trial.

1010.   Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Ifraimov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### SEVENTY-SEVENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS MOYSEY IFRAIMOV AND QUALITY SERVICE SUPPLIES INC.

### (Common Law Fraud)

1011.   The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1012.   Defendants   Ifraimov   and   Quality   Service   Supplies   made   material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company for payment.

1013.   On information and belief, each and every bill and supporting documentation submitted by Defendants Ifraimov and Quality Service Supplies to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were

intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1014. On information and belief, Defendants Ifraimov and Quality Service Supplies intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Quality Service Supplies was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Ifraimov, through Quality Service Supplies, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on

the prescriptions, all of which was designed to permit Defendant Ifraimov, through Quality Service Supplies, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1015. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Quality Service Supplies' claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1016. Defendants Ifraimov and Quality Service Supplies knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1017. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Ifraimov and Quality Service Supplies.

1018. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Quality Service Supplies' claims for No-fault insurance benefits submitted in connection therewith.

1019. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Ifraimov and Quality Service Supplies evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1020. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as

yet to be determined, but believed to be in excess of $379,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SEVENTY-EIGHTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS MOYSEY IFRAIMOV AND QUALITY SERVICE SUPPLIES INC.

### (Unjust Enrichment)

1021.   The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1022.   By reason of their wrongdoing, Defendants Ifraimov and Quality Service Supplies have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1023.   Plaintiffs are therefore entitled to restitution from Defendants Ifraimov and Quality Service Supplies in the amount by which they have been unjustly enriched.

1024.   By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $379,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## SEVENTY-NINTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1025.   The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1026.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company by Defendants Ifraimov and Quality Service Supplies.

1027.   On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Ifraimov and Quality Service Supplies purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Ifraimov and Quality Service Supplies could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Ifraimov, through Quality Service Supplies, to Quality Service Supplies to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among

270

others, through Quality Service Supplies; and (v) knowingly supporting the negotiation and performance of kickback agreements between Ifraimov through Quality Service Supplies and the No-fault Clinics.

1028. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Ifraimov and Quality Service Supplies to obtain fraudulently inflated payments from Plaintiffs, among others.

1029. On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1030. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Property and Casualty Insurance Company and Allstate Property and Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Quality Service Supplies in an amount to be determined at trial, but in no event less than $379,000.00.

1031. On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent

271

conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1032. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

### EIGHTIETH CLAIM FOR RELIEF

### AGAINST ARIEL KANDHOZOV, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1033. The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

1034. At all times relevant herein, Six Star Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1035. From, in or about 2009 through the date of the filing of this Complaint, Defendants Kandhozov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the Six Star Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1036. At all relevant times mentioned herein, Defendant Kandhozov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Six Star Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and

supporting documents to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1037. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the Defendant ABC Corporations furnished documents that Defendant Kandhozov required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1038. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by or more of the Defendant John Does 9 through 20, through one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1039. The racketeering acts set forth herein were carried out on a continued basis over a four-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Kandhozov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1040. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Six Star Supply continues to pursue collection on the fraudulent billing to the present day.

1041. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Kandhozov, with the knowledge and intent of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Six Star Supply enterprise based upon materially false and misleading information.

1042. Through the Six Star Supply enterprise, Defendant Kandhozov submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Kandhozov, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Kandhozov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Six Star Supply enterprise through the filing of this Complaint.

1043. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Kandhozov, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1044. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1045. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1046. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $93,000.00, the exact amount to be determined at trial.

1047. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Kandhozov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### EIGHTY-FIRST CLAIM FOR RELIEF

### AGAINST DEFENDANTS ARIEL KANDHOZOV AND SIX STAR SUPPLY, INC.

### (Common Law Fraud)

1048. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1049. Defendants Kandhozov and Six Star Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company for payment.

1050. On information and belief, each and every bill and supporting documentation submitted by Defendants Kandhozov and Six Star Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1051. On information and belief, Defendants Kandhozov and Six Star Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Six Star Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed

and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Kandhozov, through Six Star Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Kandhozov, through Six Star Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1052. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Six Star Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1053. Defendants Kandhozov and Six Star Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1054. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of Defendants Kandhozov's and Six Star Supply's acts of fraud and deception.

1055. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Six Star Supply's claims for No-fault insurance benefits submitted in connection therewith.

1056. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Kandhozov and Six Star Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1057.  By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $93,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## EIGHTY-SECOND CLAIM FOR RELIEF

## AGAINST DEFENDANTS ARIEL KANDHOZOV AND SIX STAR SUPPLY, INC.

### (Unjust Enrichment)

1058.  The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1059.  By reason of their wrongdoing, Defendants Kandhozov and Six Star Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1060.  Plaintiffs are therefore entitled to restitution from Defendants Kandhozov and Six Star Supply in the amount by which they have been unjustly enriched.

1061.  By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $93,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## EIGHTY-THIRD CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1062. The allegations of paragraphs 1 through.285 are hereby repeated and realleged as though fully set forth herein.

1063. On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company by Defendants Kandhozov and Six Star Supply.

1064. On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Kandhozov and Six Star Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Kandhozov and Six Star Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Kandhozov, through Six Star Supply to Six Star Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Six Star

Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between Kandhozov through Six Star Supply and the No-fault Clinics.

1065.  On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Kandhozov and Six Star Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

1066.  On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1067.  On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Six Star Supply in an amount to be determined at trial, but in no event less than $93,000.00.

1068.  On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1069.  By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## EIGHTY-FOURTH CLAIM FOR RELIEF

## AGAINST SEMYON POGREBIZHSKY, MIKOS TRADING, INC., JOHN DOE 4, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1070.  The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1071.  At all times relevant herein, Soho Medical Supplies was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1072.  From, in or about 2008 through the date of the filing of this Complaint, Defendants Pogrebizhsky, Mikos Trading, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the Soho Medical Supplies enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1073.  At all relevant times mentioned herein, Defendant Pogrebizhsky, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Soho Medical Supplies enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property and

Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1074. On information and belief, Defendants Mikos Trading, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendant Mikos Trading and one or more of the ABC Corporations furnished documents that Defendant Pogrebizhsky required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1075. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant John Doe 4 and one or more of the John Does 9 through 20, through Mikos Trading and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1076. The racketeering acts set forth herein were carried out on a continued basis over a five-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Pogrebizhsky, Mikos Trading, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1077. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Soho Medical Supplies continues to pursue collection on the fraudulent billing to the present day.

1078. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Pogrebizhsky, with the knowledge and intent of Defendants Mikos Trading, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Soho Medical Supplies enterprise based upon materially false and misleading information.

1079. Through the Soho Medical Supplies enterprise, Defendant Pogrebizhsky submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Pogrebizhsky, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Pogrebizhsky, Mikos Trading, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Soho Medical Supplies enterprise through the filing of this Complaint.

1080. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Pogrebizhsky, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1081. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1082. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1083. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $27,000.00, the exact amount to be determined at trial.

1084. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Pogrebizhsky, Mikos Trading, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### EIGHTY-FIFTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS SEMYON POGREBIZHSKY AND SOHO MEDICAL SUPPLIES INC.

### (Common Law Fraud)

1085. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1086. Defendants Pogrebizhsky and Soho Medical Supplies made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company for payment.

1087. On information and belief, each and every bill and supporting documentation submitted by Defendants Pogrebizhsky and Soho Medical Supplies to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only

were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1088. On information and belief, Defendants Pogrebizhsky and Soho Medical Supplies intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Soho Medical Supplies was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Pogrebizhsky, through Soho Medical Supplies, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Pogrebizhsky, through Soho Medical Supplies, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1089. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Soho Medical Supplies' claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1090. Defendants Pogrebizhsky and Soho Medical Supplies knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1091. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Pogrebizhsky and Soho Medical Supplies.

1092. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Soho Medical Supplies' claims for No-Fault insurance benefits submitted in connection therewith.

1093. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Pogrebizhsky and Soho Medical Supplies evinces a high degree of moral turpitude and wanton

dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1094. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $48,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## EIGHTY-SIXTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS SEMYON POGREBIZHSKY AND SOHO MEDICAL SUPPLIES INC.

### (Unjust Enrichment)

1095. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1096. By reason of their wrongdoing, Defendants Pogrebizhsky and Soho Medical Supplies have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1097. Plaintiffs are therefore entitled to restitution from Defendants Pogrebizhsky and Soho Medical Supplies in the amount by which they have been unjustly enriched.

1098. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $48,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## EIGHTY-SEVENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS MIKOS TRADING, INC., JOHN DOE 4, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1099.  The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1100.  On information and belief, the Wholesale Defendants (Mikos Trading, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company by Defendants Pogrebizhsky and Soho Medical Supplies.

1101.  On information and belief, the acts taken by the Wholesale Defendants (Mikos Trading, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Pogrebizhsky and Soho Medical Supplies purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Pogrebizhsky and Soho Medical Supplies could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Pogrebizhsky, through Soho Medical Supplies, to Soho Medical Supplies to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Soho Medical Supplies; and (v) knowingly

supporting the negotiation and performance of kickback agreements between Pogrebizhsky through Soho Medical Supplies and the No-fault Clinics.

1102. On information and belief, the conduct of the Wholesale Defendants (Mikos Trading, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Pogrebizhsky and Soho Medical Supplies to obtain fraudulently inflated payments from Plaintiffs, among others.

1103. On information and belief, the Wholesale Defendants (Mikos Trading, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1104. On information and belief, the conduct of the Wholesale Defendants (Mikos Trading, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Soho Medical Supplies in an amount to be determined at trial, but in no event less than $48,000.00.

1105. On information and belief, the Wholesale Defendants' (Mikos Trading, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1106. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## EIGHTY-EIGHTH CLAIM FOR RELIEF

### AGAINST SERGEY LAZAREV, IDEL INTERNATIONAL TRADING INC., SHIMON INDICTOR, ABC CORPORATIONS 1 THROUGH 20, AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1107. The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

1108. At all times relevant herein, SVP Medsupply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1109. From, in or about 2011 through the date of the filing of this Complaint, Defendants Lazarev, IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the SVP Medsupply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1110. At all relevant times mentioned herein, Defendant Lazarev, together with others unknown to Plaintiffs, exerted control over and directed the operations of the SVP Medsupply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting

documents to Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1111. On information and belief, Defendants IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendant IDEL International Trading and one or more of the ABC Corporations furnished documents that Defendant Lazarev required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1112. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant Indictor and one or more of the John Does 9 through 20, through IDEL International Trading and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1113. The racketeering acts set forth herein were carried out on a continued basis over a two-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Lazarev, IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1114. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as SVP Medsupply continues to pursue collection on the fraudulent billing to the present day.

1115. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Lazarev, with the knowledge and intent of Defendants IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the SVP Medsupply enterprise based upon materially false and misleading information.

1116. Through the SVP Medsupply enterprise, Defendant Lazarev submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Lazarev, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Lazarev, IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the SVP Medsupply enterprise through the filing of this Complaint.

1117. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Lazarev, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1118.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1119.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1120.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $33,000.00, the exact amount to be determined at trial.

1121.   Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Lazarev, IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### EIGHTY-NINTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS SERGEY LAZAREV AND SVP MEDSUPPLY INC.

### (Common Law Fraud)

1122.   The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1123.   Defendants Lazarev and SVP Medsupply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company for payment.

1124.   On information and belief, each and every bill and supporting documentation submitted by Defendants Lazarev and SVP Medsupply to Plaintiffs set forth false and fraudulent

amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1125.   On information and belief, Defendants Lazarev and SVP Medsupply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts SVP Medsupply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices

provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Lazarev, through SVP Medsupply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Lazarev, through SVP Medsupply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1126. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant SVP Medsupply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1127. Defendants Lazarev and SVP Medsupply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1128. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Lazarev and SVP Medsupply.

1129. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant SVP Medsupply's claims for No-fault insurance benefits submitted in connection therewith.

1130. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Lazarev and SVP Medsupply evinces a high degree of moral turpitude and wanton dishonesty,

which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1131. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $37,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**NINETIETH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS SERGEY LAZAREV AND SVP MEDSUPPLY INC.**

**(Unjust Enrichment)**

1132. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1133. By reason of their wrongdoing, Defendants Lazarev and SVP Medsupply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1134. Plaintiffs are therefore entitled to restitution from Defendants Lazarev and SVP Medsupply in the amount by which they have been unjustly enriched.

1135. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their

business and property in an amount as yet to be determined, but believed to be in excess of $37,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## NINETY-FIRST CLAIM FOR RELIEF

### AGAINST DEFENDANTS IDEL INTERNATIONAL TRADING INC., SHIMON INDICTOR, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

#### (Aiding and Abetting)

1136. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1137. On information and belief, the Wholesale Defendants (IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company by Defendants Lazarev and SVP Medsupply.

1138. On information and belief, the acts taken by the Wholesale Defendants (IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Lazarev and SVP Medsupply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Lazarev and SVP Medsupply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Lazarev,

through SVP Medsupply, to SVP Medsupply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through SVP Medsupply; and (v) knowingly supporting the negotiation and performance of kickback agreements between Lazarev through SVP Medsupply and the No-fault Clinics.

1139. On information and belief, the conduct of the Wholesale Defendants (IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Lazarev and SVP Medsupply to obtain fraudulently inflated payments from Plaintiffs, among others.

1140. On information and belief, the Wholesale Defendants (IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1141. On information and belief, the conduct of the Wholesale Defendants (IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company and Northbrook Indemnity Company to pay money based upon the fraudulent charges submitted

through SVP Medsupply in an amount to be determined at trial, but in no event less than $37,000.00.

1142. On information and belief, the Wholesale Defendants' (IDEL International Trading, Indictor, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1143. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

**NINETY-SECOND CLAIM FOR RELIEF**

**AGAINST MAKSYM TKACHENKO, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20**

**(RICO, pursuant to 18 U.S.C § 1962(c))**

1144. The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

**THE RICO ENTERPRISE**

1145. At all times relevant herein, TAM Medical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1146. From in or about 2012 through the date of the filing of this Complaint, Defendant M. Tkachenko, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the TAM Medical Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the

Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1147.  At all relevant times mentioned herein, Defendant M. Tkachenko, together with others unknown to Plaintiffs, exerted control over and directed the operations of the TAM Medical Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1148.  On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant M. Tkachenko required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1149.  On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 9 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1150. The racketeering acts set forth herein were carried out on a continued basis for more than a one-year period, were related and similar and were committed as part of the ongoing scheme of Defendants M. Tkachenko, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1151. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as TAM Medical Supply continues to pursue collection on the fraudulent billing to the present day.

1152. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant M. Tkachenko, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the TAM Medical Supply enterprise based upon materially false and misleading information.

1153. Through the TAM Medical Supply enterprise, Defendant M. Tkachenko submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant M. Tkachenko, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants M. Tkachenko, one or more of the ABC Corporations 1

301

through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the TAM Medical Supply enterprise through the filing of this Complaint.

1154. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant M. Tkachenko, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1155. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

1156. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1157. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company have been injured in its business and property and Plaintiffs has been damaged in the aggregate amount presently in excess of $4,000.00, the exact amount to be determined at trial.

1158. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants M. Tkachenko, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## NINETY-THIRD CLAIM FOR RELIEF

## AGAINST DEFENDANTS MAKSYM TKACHENKO
## AND TAM MEDICAL SUPPLY CORP.

### (Common Law Fraud)

1159. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1160. Defendants M. Tkachenko and TAM Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company for payment.

1161. On information and belief, each and every bill and supporting documentation submitted by Defendants M. Tkachenko and TAM Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1162. On information and belief, Defendants M. Tkachenko and TAM Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts TAM Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant M. Tkachenko, through TAM Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant M. Tkachenko, through TAM Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1163. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant TAM Medical Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1164. Defendants M. Tkachenko and TAM Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1165.  Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants M. Tkachenko and TAM Medical Supply.

1166.  Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant TAM Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

1167.  Furthermore, the far reaching pattern of fraudulent conduct by Defendants M. Tkachenko and TAM Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1168.  By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $4,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

### NINETY-FOURTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS MAKSYM TKACHENKO AND TAM MEDICAL SUPPLY CORP.

#### (Unjust Enrichment)

1169.  The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1170.  By reason of their wrongdoing, Defendants M. Tkachenko and TAM Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company and Allstate Property and Casualty

Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1171. Plaintiffs are therefore entitled to restitution from Defendants M. Tkachenko and TAM Medical Supply in the amount by which they have been unjustly enriched.

1172. By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $4,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## NINETY-FIFTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1173. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1174. On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company by Defendants M. Tkachenko and TAM Medical Supply.

1175. On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that

Defendants M. Tkachenko and TAM Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants M. Tkachenko and TAM Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant M. Tkachenko, through TAM Medical Supply, to TAM Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through TAM Medical Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between M. Tkachenko through TAM Medical Supply and the No-fault Clinics.

1176. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants M. Tkachenko and TAM Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

1177. On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1178. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused

Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company to pay money based upon the fraudulent charges submitted through TAM Medical Supply in an amount to be determined at trial, but in no event less than $4,000.00.

1179. On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1180. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## NINETY-SIXTH CLAIM FOR RELIEF

## AGAINST DAVID ZILBER, VZ GROUP, INC., ABC CORPORATIONS 1 THROUGH 20, VADIM ZALOGIN, AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1181. The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

1182. At all times relevant herein, Ultimate Health Products was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1183. From, in or about 2010 through the date of the filing of this Complaint, Defendants Zilber, VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the Ultimate Health Products enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this

Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1184. At all relevant times mentioned herein, Defendant Zilber, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Ultimate Health Products enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1185. On information and belief, Defendants VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendant VZ Group and one or more of the ABC Corporations furnished documents that Defendant Zilber required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1186. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant Zalogin and one or more of the John Does 9 through 20, through VZ Group and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

309

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1187. The racketeering acts set forth herein were carried out on a continued basis for more than a three-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Zilber, VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1188. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Ultimate Health Products continues to pursue collection on the fraudulent billing to the present day.

1189. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Zilber, with the knowledge and intent of Defendants VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Ultimate Health Products enterprise based upon materially false and misleading information.

1190. Through the Ultimate Health Products enterprise, Defendant Zilber submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Zilber, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Zilber, VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of

predicate acts of mail fraud, extending from the formation of the Ultimate Health Products enterprise through the filing of this Complaint.

1191. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Zilber, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1192. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1193. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

<h3 style="text-align:center">Damages</h3>

1194. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $57,000.00, the exact amount to be determined at trial.

1195. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Zilber, VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

<h3 style="text-align:center">NINETY-SEVENTH CLAIM FOR RELIEF</h3>

<h3 style="text-align:center">AGAINST DAVID ZILBER, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20</h3>

<h3 style="text-align:center">(RICO, pursuant to 18 U.S.C § 1962(c))</h3>

1196. The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

311

## THE RICO ENTERPRISE

1197. At all times relevant herein, Ultra Ortho Products was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1198. From, in or about 2011 through the date of the filing of this Complaint, Defendants Zilber, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the Ultra Ortho Products enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1199. At all relevant times mentioned herein, Defendant Zilber, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Ultra Ortho Products enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1200. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the Defendant ABC Corporations furnished documents that Defendant Zilber required, in furtherance of the scheme to defraud, to obtain payment from

312

Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1201. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the Defendant John Does 9 through 20, through one or more of the Defendant ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1202. The racketeering acts set forth herein were carried out on a continued basis for more than a one-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Zilber, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1203. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Ultra Ortho Products continues to pursue collection on the fraudulent billing to the present day.

1204. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Zilber, with the knowledge and intent of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Ultra Ortho Products enterprise based upon materially false and misleading information.

1205. Through the Ultra Ortho Products enterprise, Defendant Zilber submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were

313

purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Zilber, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Zilber, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Ultra Ortho Products enterprise through the filing of this Complaint.

1206. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Zilber, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1207. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1208. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

1209. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $9,000.00, the exact amount to be determined at trial.

1210. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Zilber, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## NINETY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS DAVID ZILBER, ULTIMATE HEALTH PRODUCTS INC. AND ULTRA ORTHO PRODUCTS INC.

### (Common Law Fraud)

1211. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1212. Defendants Zilber, Ultimate Health Products and Ultra Ortho Products made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company for payment.

1213. On information and belief, each and every bill and supporting documentation submitted by Defendants Zilber, Ultimate Health Products and Ultra Ortho Products to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1214. On information and belief, Defendants Zilber, Ultimate Health Products and Ultra Ortho Products intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Ultimate Health Products and Ultra Ortho Products was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Zilber, through Ultimate Health Products and Ultra Ortho Products, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Zilber, through Ultimate Health Products and Ultra Ortho Products, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1215. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendants Ultimate Health Products' and Ultra Ortho Products' claims under the No-fault Law.

316

Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1216. Defendants Zilber, Ultimate Health Products and Ultra Ortho Products knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1217. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Zilber, Ultimate Health Products and Ultra Ortho Products.

1218. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendants Ultimate Health Products' and Ultra Ortho Products' claims for No-fault insurance benefits submitted in connection therewith.

1219. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Zilber, Ultimate Health Products and Ultra Ortho Products evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1220. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $23,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

317

## NINETY-NINTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS DAVID ZILBER, ULTIMATE HEALTH PRODUCTS INC. AND ULTRA ORTHO PRODUCTS INC.

### (Unjust Enrichment)

1221. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1222. By reason of their wrongdoing, Defendants Zilber, Ultimate Health Products and Ultra Ortho Products have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1223. Plaintiffs are therefore entitled to restitution from Defendants Zilber, Ultimate Health Products and Ultra Ortho Products in the amount by which they have been unjustly enriched.

1224. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $23,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDREDTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS VZ GROUP INC., VADIM ZALOGIN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1225.   The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1226.   On information and belief, the Wholesale Defendants (VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company by Defendants Zilber, Ultimate Health Products and Ultra Ortho Products.

1227.   On information and belief, the acts taken by the Wholesale Defendants (VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Zilber, Ultimate Health Products and Ultra Ortho Products purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Zilber, Ultimate Health Products and Ultra Ortho Products could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Zilber, through Ultimate Health Products and Ultra Ortho Products, to Ultimate Health Products and Ultra Ortho Products to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs

319

and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Ultimate Health Products and Ultra Ortho Products; and (v) knowingly supporting the negotiation and performance of kickback agreements between Zilber through Ultimate Health Products and Ultra Ortho Products and the No-fault Clinics.

1228. On information and belief, the conduct of the Wholesale Defendants (VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Zilber, Ultimate Health Products and Ultra Ortho Products to obtain fraudulently inflated payments from Plaintiffs, among others.

1229. On information and belief, the Wholesale Defendants (VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1230. On information and belief, the conduct of the Wholesale Defendants (VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Ultimate Health Products and Ultra Ortho Products in an amount to be determined at trial, but in no event less than $23,000.00.

1231.  On information and belief, the Wholesale Defendants' (VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1232.  By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED FIRST CLAIM FOR RELIEF

## AGAINST OLGA MULLAKANDOVA, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1233.  The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

1234.  At all times relevant herein, Unlimited Medical Supply Services was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1235.  From, in or about 2008 through the date of the filing of this Complaint, Defendants Mullakandova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the Unlimited Medical Supply Services enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.   Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1236.  At all relevant times mentioned herein, Defendant Mullakandova, together with others unknown to Plaintiff, exerted control over and directed the operations of the Unlimited Medical Supply Services enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1237.  On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. one or more of the Defendant ABC Corporations furnished documents that Defendant Mullakandova required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1238.  On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the Defendant John Does 9 through 20, through one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1239.  The racketeering acts set forth herein were carried out on a continued basis for more than a four-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Mullakandova, one or more of the ABC Corporations 1 through 20 and

one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1240. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Unlimited Medical Supply Services continues to pursue collection on the fraudulent billing to the present day.

1241. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Mullakandova, with the knowledge and intent of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Unlimited Medical Supply Services enterprise based upon materially false and misleading information.

1242. Through the Unlimited Medical Supply Services enterprise, Defendant Mullakandova submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Mullakandova, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Mullakandova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Unlimited Medical Supply Services enterprise through the filing of this Complaint.

1243. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant

Mullakandova, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1244.  Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1245.  Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1246.  By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Property and Casualty Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $25,000.00, the exact amount to be determined at trial.

1247.  Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendants Mullakandova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### ONE HUNDRED SECOND CLAIM FOR RELIEF

### AGAINST DEFENDANTS OLGA MULLAKANDOVA AND UNLIMITED MEDICAL SUPPLY SERVICES INC.

### (Common Law Fraud)

1248.  The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1249.  Defendants Mullakandova and Unlimited Medical Supply Services made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company for payment.

1250. On information and belief, each and every bill and supporting documentation submitted by Defendants Mullakandova and Unlimited Medical Supply Services to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1251. On information and belief, Defendants Mullakandova and Unlimited Medical Supply Services intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Unlimited Medical Supply Services was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Mullakandova, through Unlimited Medical Supply Services, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Mullakandova, through Unlimited Medical Supply Services, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1252. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Unlimited Medical Supply Services' claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1253. Defendants Mullakandova and Unlimited Medical Supply Services knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1254. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Mullakandova and Unlimited Medical Supply Services.

1255. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Unlimited Medical Supply Services' claims for No-fault insurance benefits submitted in connection therewith.

1256. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Mullakandova and Unlimited Medical Supply Services evinces a high degree of moral turpitude

and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1257. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $28,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## ONE HUNDRED THIRD CLAIM FOR RELIEF

### AGAINST DEFENDANTS OLGA MULLAKANDOVA AND UNLIMITED MEDICAL SUPPLY SERVICES INC.

### (Unjust Enrichment)

1258. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1259. By reason of their wrongdoing, Defendants Mullakandova and Unlimited Medical Supply Services have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1260. Plaintiffs are therefore entitled to restitution from Defendants Mullakandova and Unlimited Medical Supply Services in the amount by which they have been unjustly enriched.

1261. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $28,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

### ONE HUNDRED FOURTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1262. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1263. On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company by Defendants Mullakandova and Unlimited Medical Supply Services.

1264. On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Mullakandova and Unlimited Medical Supply Services purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Mullakandova and Unlimited Medical Supply Services could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Mullakandova, through Unlimited Medical Supply Services, to Unlimited Medical Supply Services to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Unlimited Medical

Supply Services; and (v) knowingly supporting the negotiation and performance of kickback agreements between Mullakandova through Unlimited Medical Supply Services and the No-fault Clinics.

1265. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Mullakandova and Unlimited Medical Supply Services to obtain fraudulently inflated payments from Plaintiffs, among others.

1266. On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1267. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Unlimited Medical Supply Services in an amount to be determined at trial, but in no event less than $28,000.00.

1268. On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1269. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

### ONE HUNDRED FIFTH CLAIM FOR RELIEF

### AGAINST IOSIF VALDMAN, MAJOR MARKET MERCHANDISE INC., MEM WHOLESALE INC., DEVONIAN INC., MICHAEL ZAVRAZHIN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1270. The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

1271. At all times relevant herein, V+B Magic Recovery Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1272. From, in or about 2000 through the date of the filing of this Complaint, Defendants Valdman, Major Market Merchandise, MEM Wholesale, Devonian, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, knowingly conducted and participated in the affairs of the V+B Magic Recovery Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1273. At all relevant times mentioned herein, Defendant Valdman, together with others unknown to Plaintiffs, exerted control over and directed the operations of the V+B Magic Recovery Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills

and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1274. On information and belief, Defendants Major Market Merchandise, MEM Wholesale, Devonian, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Major Market Merchandise, MEM Wholesale, Devonian and one or more of the ABC Corporations furnished documents that Defendant Valdman required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1275. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant Zavrazhin and one or more of the John Does 9 through 20, through one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1276. The racketeering acts set forth herein were carried out on a continued basis for more than a twelve-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Valdman, Major Market Merchandise, MEM Wholesale, Devonian, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1277. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as V+B Magic Recovery Supply continues to pursue collection on the fraudulent billing to the present day.

1278. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Valdman, with the knowledge and intent of Defendants Major Market Merchandise, MEM Wholesale, Devonian, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the V+B Magic Recovery Supply enterprise based upon materially false and misleading information.

1279. Through the V+B Magic Recovery Supply enterprise, Defendant Valdman submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant Valdman, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Valdman, Major Market Merchandise, MEM Wholesale, Devonian, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the V+B Magic Recovery Supply enterprise through the filing of this Complaint.

1280. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant

332

Valdman, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1281. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1282. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1283. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $438,000.00, the exact amount to be determined at trial.

1284. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Valdman, Major Market Merchandise, MEM Wholesale, Devonian, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### ONE HUNDRED SIXTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS IOSIF VALDMAN AND V+B MAGIC RECOVERY SUPPLY INC.

### (Common Law Fraud)

1285. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1286. Defendants Valdman and V+B Magic Recovery Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs

Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company for payment.

1287.  On information and belief, each and every bill and supporting documentation submitted by Defendants Valdman and V+B Magic Recovery Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1288.  On information and belief, Defendants Valdman and V+B Magic Recovery Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts V+B Magic Recovery Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Valdman, through V+B Magic Recovery Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Valdman, through V+B Magic Recovery Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1289. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant V+B Magic Recovery Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1290. Defendants Valdman and V+B Magic Recovery Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1291. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a

result of the acts of fraud and deception of Defendants Valdman and V+B Magic Recovery Supply.

1292. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant V+B Magic Recovery Supply's claims for No-fault insurance benefits submitted in connection therewith.

1293. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Valdman and V+B Magic Recovery Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1294. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $320,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

### ONE HUNDRED SEVENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS IOSIF VALDMAN AND V+B MAGIC RECOVERY SUPPLY INC.

#### (Unjust Enrichment)

1295. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1296. By reason of their wrongdoing, Defendants Valdman and V+B Magic Recovery Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company

that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1297. Plaintiffs are therefore entitled to restitution from Defendants Valdman and V+B Magic Recovery Supply in the amount by which they have been unjustly enriched.

1298. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $320,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

**ONE HUNDRED EIGHTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS MAJOR MARKET MERCHANDISE, INC., MEM
WHOLESALE INC., DEVONIAN INC., MICHAEL ZAVRAZHIN, ABC
CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20**

**(Aiding and Abetting)**

1299. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1300. On information and belief, the Wholesale Defendants (Major Market Merchandise, MEM Wholesale, Devonian, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company by Defendants Valdman and V+B Magic Recovery Supply.

1301. On information and belief, the acts taken by the Wholesale Defendants (Major Market Merchandise, MEM Wholesale, Devonian, Zavrazhin, one or more of the ABC

337

Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Valdman and V+B Magic Recovery Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Valdman and V+B Magic Recovery Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Valdman, through V+B Magic Recovery Supply, to V+B Magic Recovery Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through V+B Magic Recovery Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between Valdman through V+B Magic Recovery Supply and the No-fault Clinics.

1302. On information and belief, the conduct of the Wholesale Defendants (Major Market Merchandise, MEM Wholesale, Devonian, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Valdman and V+B Magic Recovery Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

1303. On information and belief, the Wholesale Defendants (Major Market Merchandise, MEM Wholesale, Devonian, Zavrazhin, one or more of the ABC Corporations 1

through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1304. On information and belief, the conduct of the Wholesale Defendants (Major Market Merchandise, MEM Wholesale, Devonian, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company and Allstate Vehicle & Property Insurance Company to pay money based upon the fraudulent charges submitted through V+B Magic Recovery Supply in an amount to be determined at trial, but in no event less than $320,000.00.

1305. On information and belief, the Wholesale Defendants' (Major Market Merchandise, MEM Wholesale, Devonian, Zavrazhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1306. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

**ONE HUNDRED NINTH CLAIM FOR RELIEF**

**AGAINST VLADIMIR NAZAROV, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20**

**(RICO, pursuant to 18 U.S.C § 1962(c))**

1307. The allegations of paragraphs 1 through 285 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1308.  At all times relevant herein, Vladenn Medical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1309.  From, in or about 2008 through the date of the filing of this Complaint, Defendant Nazarov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Vladenn Medical Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1310.  At all relevant times mentioned herein, Defendant Nazarov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Vladenn Medical Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1311.  On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Nazarov required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for

340

fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1312. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 9 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1313. The racketeering acts set forth herein were carried out on a continued basis for more than a four-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Nazarov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1314. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Vladenn Medical Supply continues to pursue collection on the fraudulent billing to the present day.

1315. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Nazarov, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Vladenn Medical Supply enterprise based upon materially false and misleading information.

1316. Through the Vladenn Medical Supply enterprise, Defendant Nazarov submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were

341

purportedly (but not actually) provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendant Nazarov, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Nazarov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Vladenn Medical Supply enterprise through the filing of this Complaint.

1317. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Nazarov, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1318. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

1319. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

1320. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have been injured in its business and property and Plaintiffs has been damaged in the aggregate amount presently in excess of $6,000.00, the exact amount to be determined at trial.

1321. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Nazarov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## ONE HUNDRED TENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS VLADIMIR NAZAROV AND VLADENN MEDICAL SUPPLY CORP.

#### (Common Law Fraud)

1322. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1323. Defendants Nazarov and Vladenn Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company for payment.

1324. On information and belief, each and every bill and supporting documentation submitted by Defendants Nazarov and Vladenn Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1325. On information and belief, Defendants Nazarov and Vladenn Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Vladenn Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME

and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Nazarov, through Vladenn Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Nazarov, through Vladenn Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1326. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Vladenn Medical Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1327. Defendants Nazarov and Vladenn Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1328. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Nazarov and Vladenn Medical Supply.

1329. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Vladenn Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

1330. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Nazarov and Vladenn Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1331. By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $6,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

### ONE HUNDRED ELEVENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS VLADIMIR NAZAROV AND VLADENN MEDICAL SUPPLY CORP.

#### (Unjust Enrichment)

1332. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1333. By reason of their wrongdoing, Defendants Nazarov and Vladenn Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1334. Plaintiffs are therefore entitled to restitution from Defendants Nazarov and Vladenn Medical Supply in the amount by which they have been unjustly enriched.

1335. By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $6,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED TWELFTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1336. The allegations of paragraphs 1 through 285 are hereby repeated and realleged as though fully set forth herein.

1337. On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company and Allstate Indemnity Company by Defendants Nazarov and Vladenn Medical Supply.

1338. On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Nazarov and Vladenn Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Nazarov and Vladenn Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Nazarov, through Vladenn Medical Supply, to Vladenn Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally

inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Vladenn Medical Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between Nazarov through Vladenn Medical Supply and the No-fault Clinics.

1339. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Nazarov and Vladenn Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

1340. On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1341. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) caused Plaintiffs Allstate Insurance Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through Vladenn Medical Supply in an amount to be determined at trial, but in no event less than $6,000.00.

1342. On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20) extensive fraudulent

347

conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1343. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE,** Plaintiffs demand judgment as follows:

i)      Compensatory damages in an amount in excess of $2,200,000.00, the exact amount to be determined at trial, together with prejudgment interest;

ii)     Punitive damages in such amount as the Court deems just;

iii)    Treble damages, costs and reasonable attorneys' fees on the First, Fifth, Ninth, Thirteenth, Seventeenth, Twenty-First, Twenty-Second, Twenty-Sixth, Thirtieth, Thirty-Fourth, Thirty-Fifth, Thirty-Ninth, Forty-Third, Forty-Seventh, Fifty-First, Fifty-Fifth, Fifty-Sixth, Sixtieth, Sixty-Fourth, Sixty-Eighth, Seventy-Second, Seventy-Sixth, Eightieth, Eighty-Fourth, Eighty-Eighth, Ninety-Second, Ninety-Sixth, Ninety-Seventh, One Hundred First, One Hundred Fifth and One Hundred Ninth Claims for Relief, together with prejudgment interest;

iv)     Compensatory and punitive damages on the Second, Sixth, Tenth, Fourteenth, Eighteenth, Twenty-Third, Twenty-Seventh, Thirty-First, Thirty-Sixth, Fortieth, Forty-Fourth, Forty-Eighth, Fifty-Second, Fifty-Seventh, Sixty-First, Sixty-Fifth, Sixty-Ninth, Seventy-Third, Seventy-Seventh, Eighty-First, Eighty-Fifth, Eighty-Ninth, Ninety-Third, Ninety-Eighth, One Hundred Second, One Hundred Third, One Hundred Sixth and One Hundred Tenth Claims for Relief, together with prejudgment interest;

v)      Compensatory damages on the Third, Seventh, Eleventh, Fifteenth, Nineteenth, Twenty-Fourth, Twenty-Eighth, Thirty-Second, Thirty-Seventh, Forty-First, Forty-Fifth, Forty-

Ninth, Fifty-Third, Fifty-Eighth, Sixty-Second, Sixty-Sixth, Seventieth, Seventy-Fourth, Seventy-Eighth, Eighty-Second, Eighty-Sixth, Ninetieth, Ninety-Fourth, Ninety-Ninth, One Hundred Third, One Hundred Seventh and One Hundred Eleventh Claims for Relief, together with prejudgment interest;

vi)     Compensatory and punitive damages on the Fourth, Eighth, Twelfth, Sixteenth, Twentieth, Twenty-Fifth, Twenty-Ninth, Thirty-Third, Thirty-Eighth, Forty-Second, Forty-Sixth, Fiftieth, Fifty-Fourth, Fifty-Ninth, Sixty-Third, Sixty-Seventh, Seventy-First, Seventy-Fifth, Seventy-Ninth, Eighty-Third, Eighty-Seventh, Ninety-First, Ninety-Fifth, One Hundredth, One Hundred Fourth and One Hundred Twelfth Claims for Relief, together with prejudgment interest; and

vii)    Costs, reasonable attorneys' fees and such other relief that the Court deems just and proper.

Dated: New York, New York,
      June 20, 2013

                                Stern & Montana, LLP


                         By:

                         Robert A. Stern (RAS-1282)
                         Sandra P. Burgos (SB-6856)
                         James McKenney (JM-6164)
                         Tina R. Karkera (TK-8565)
                         Attorneys for Plaintiffs
                         Trinity Centre
                         115 Broadway
                         New York, New York 10006
                         (212) 532-8100

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------- X

ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE NEW JERSEY INSURANCE COMPANY, ALLSTATE NEW JERSEY PROPERTY AND CASUALTY INSURANCE COMPANY, ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY AND NORTHBROOK INDEMNITY COMPANY,

PLAINTIFFS,

-AGAINST-

FOTIMA ABUTOVA, IVAN BATIASHVILI, SAM (SEMYON) BLINDER, MICHAEL BORUKHOV, YURIY DENISOV, KONSTANTIN DZHAGINOV, ALEKSANDR FIRAYNER, VLADIMIR GEYKHMAN, MOYSEY IFRAIMOV, VLADIMIR KAMINSKY, ARIEL KANDHOZOV A/K/A ARIEL KANDHOROV AND ARIEL KAND, RUSLAN KAPUSTA, GABRIEL KOHEN, ALEXANDER KONVISER, SERGEY LAZAREV, DANIEL LYANDRES, OLGA MULLAKANDOVA, VLADIMIR NAZAROV, YEVGENY (EUGENE) NEMETS, SERGE OGAN, SEMYON POGREBIZHSKY, YEVGENY SPEKTOR, INNA TKACHENKO, MAKSYM TKACHENKO, RENATA TKACHENKO, IOSIF VALDMAN, DAVID ZILBER, NISA ZULUNOV, ADVANCED MEDICAL SUPPLY INC., B & Y SURGICAL SUPPLIES INC., BIG APPLE ORTHO PRODUCTS, INC., EXCEL MEDICAL SUPPLIES, INC., FIVE BORO MEDICAL EQUIPMENT, INC., G & A MEDICAL SUPPLY LLC, GOLDSTAR EQUIPMENT INC., HEALTH AID MEDICAL SUPPLY INC., IG MEDICAL SUPPLY, LLC, INFINITY MEDICAL SUPPLY INC. D/B/A KUN MEDICAL SUPPLY, LENDER MEDICAL SUPPLY INC., LONGEVITY MEDICAL SUPPLY, INC., MULTI SERVICE OF NY INC., NEW WAY MEDICAL SUPPLY, CORP., NEXT CENTURY ENTERPRISES, INC., ORTHOPLUS PRODUCTS, INC., OS ORTHO SERVICES INC., PREMIER DME CORP., PRODME, INC., QUALITY SERVICE SUPPLIES INC., SIX STAR SUPPLY, INC., SOHO MEDICAL SUPPLIES INC., SVP MEDSUPPLY INC., TAM MEDICAL SUPPLY CORP., TSM MEDICAL SUPPLY & ORTHOCARE INC., ULTIMATE HEALTH PRODUCTS INC., ULTRA ORTHO PRODUCTS INC., UNLIMITED MEDICAL SUPPLY SERVICES INC., V+B MAGIC RECOVERY SUPPLY INC., VIP MEDICAL SUPPLIES, INC., VLADENN MEDICAL SUPPLY CORP., MARGARITA AKMALOVA, SHIMON INDICTOR, OLEG SIMAKOV, VADIM ZALOGIN, MICHAEL ZAVRAZHIN, A TO Z WHOLESALE INC., AMERICAN MOBILITY MEDICAL, INC., ANY CHOICE SUPPLY, INC., DEVONIAN INC., EASY HILL WHOLESALE MEDICAL SUPPLY INC., IDEL INTERNATIONAL TRADING INC., IG&NAT SERVICES, INC., IMPREZZA NYC INC., MAJOR MARKET MERCHANDISE INC., MEM WHOLESALE INC., MIKOS TRADING, INC., MIKS TRADING, INC., NEW STEP SERVICES INC., ONE STOP WHOLESALE, INC., ROPA INC., VZ GROUP INC., JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20,

DEFENDANTS.

-------------------------------------------------------------------------------- X

## COMPLAINT

STERN & MONTANA, LLP
ATTORNEYS FOR PLAINTIFFS
ALLSTATE INSURANCE COMPANY
TRINITY CENTRE
115 BROADWAY
NEW YORK, NEW YORK 10006
TELEPHONE: (212) 532-8100